Inge De Bruyn
inge.debruyn@modo-law.com
MODO LAW, P.C.
4218 Via Padova
Claremont, CA 91711
Phone: 323-983-2188
Fax: 323-693-0881

Attorney for Plaintiff, Jocelyn Susan BUNDY.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOCELYN SUSAN BUNDY, an individual, | Case No: 2:21-cv-03621 |
| Plaintiff. | |
| vs. | **COMPLAINT FOR:** |
| NIRVANA L.L.C., a Washington Limited Liability Company; LIVE NATION MERCHANDISE, LLC, a Delaware Limited Liability Company; MERCH TRAFFIC LLC, a Delaware Limited Liability Company; SILVA ARTIST MANAGEMENT, LLC, a California Limited Liability Company, | **1. COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)** |
| | **2. COPYRIGHT INFRINGEMENT (UNDER U.K. LAW)** |
| | **3. COPYRIGHT INFRINGEMENT (UNDER GERMAN LAW)** |
| Defendants. | **4. VIOLATION OF INTEGRITY OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. § 1202)** |
| | |
| | **DEMAND FOR JURY TRIAL** |

COMPLAINT                                                                                          - 1 -

Plaintiff Jocelyn Susan Bundy ("Ms. Bundy"), for its Complaint against Defendants Nirvana L.L.C. ("Nirvana"), Live Nation Merchandise, LLC ("Live Nation"), Merch Traffic LLC ("Merch Traffic"), and Silva Artist Management, LLC ("SAM"), alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

## SUMMARY OF ACTION

1. Plaintiff is the legal owner of the copyright in the Illustration depicted below (the "Illustration"). A true and correct copy of the original dyeline image is attached hereto as Exhibit 1.



2. Plaintiff brings this action seeking injunctive and monetary relief for Defendants' intentional infringement of Plaintiff's copyright in this Illustration, both in the U.S. and abroad, and for their repeated violations of 17 U.S.C. § 1202.

3. It appears that Defendants, without authorization from, much less compensation to, Plaintiff or her predecessors-in-right, have been manufacturing, selling, promoting, distributing, and licensing Nirvana-branded merchandise depicting an image virtually identical to Plaintiff's Illustration throughout the world – some of them for decades. In addition, they also stripped the Illustration from its copyright management information and replaced it with a false copyright notice identifying "Nirvana" as its owner.

4. All Defendants named herein (collectively "Defendants") are responsible in some manner for the infringements, whether it be by directly committing the

infringing acts, by providing the means and instructions to do so, or by acting in concert and active participation with each other to commit such acts, by profiting of such acts, and/or by their right and ability to supervise persons within their control to prevent such acts.

5. Plaintiff sues for Defendants' copyright infringement under 17 U.S.C. § 101 *et seq*. as well as under foreign copyright laws and seeks all remedies afforded under the applicable laws, including permanent injunctive relief, Plaintiff's damages, and Defendants' profits from their willfully infringing conduct, and other monetary relief.

## JURISDICTION AND VENUE

6. This is a civil action arising under the Copyright Act 17 U.S.C. §§ 101 *et seq.* This Court, therefore, has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), as well as supplemental jurisdiction under 28 U.S.C. § 1367 over any state and foreign law claims asserted herein.

7. In addition, pursuant to 28 U.S. Code § 1350, the Court also has original jurisdiction over the claims regarding Defendants' foreign acts of copyright infringement committed in violation of international treaties of the United States, namely the Berne Convention for the Protection of Literary and Artistic Works (1886) and the Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS) (1994).

8. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(a) in that, *inter alia*, Defendants may be found in this district, and a substantial portion of the events described herein took place in this district.

## THE PARTIES

9. Plaintiff Jocelyn Susan Bundy is a U.K. citizen.

10. On information and belief, Defendant Nirvana is a limited liability company organized and existing under the laws of the State of Washington that

1   handles the licensing and sale of Nirvana-branded merchandise, and that does

2   business in this judicial district.

3        11. On information and belief, Defendant Silva Artist Management is a

4   limited liability company organized and existing under the laws of the State of

5   California that handles the careers, estates, and business interests of both active

6   and "legacy" musical acts, one of which is Nirvana, and that does business in this

7   judicial district.

8        12. On information and belief, Defendant Live Nation Merchandise is a

9   limited liability company organized and existing under the laws of the State of

10  Delaware that is a subsidiary of Live Nation Entertainment, Inc., that is in the

11  business of selling garments and other music-related merchandise, and that does

12  business in this judicial district.

13       13. On information and belief, Defendant Merch Traffic is also a limited

14  liability company organized and existing under the laws of the State of Delaware

15  that is also a subsidiary of Live Nation Entertainment, Inc., that is also in the

16  business of selling apparel and other music-related merchandise, and that also does

17  business in this judicial district.

18                          **FACTUAL ALLEGATIONS**

19       14. Plaintiff is the sole surviving relative and sole successor-in-title to the

20  copyright in the works created by her late grandfather C.W. Scott-Giles ("Mr.

21  Scott-Giles"). Mr. Scott-Giles was a U.K. citizen. He died on February 8, 1982.

22       15. One of the works created by Mr. Scott-Giles is a drawing of Upper Hell

23  as described by Italian philosopher and poet Dante Alighieri in his literary trilogy

24  "*The Divine Comedy*." This Illustration, as pictured in ¶ 1 above, is wholly original

25  to Mr. Scott-Giles and constitutes copyrightable subject matter under the laws of

26  the United States, as well as under the national laws of all other 178 countries that

27  are members of the Berne Convention for the Protection of Literary and Artistic

28  Works and of the 164 countries that are members of the World Trade Organization.

COMPLAINT                                                          - 4 -

16. Mr. Scott-Giles drew the Illustration in or about 1949 to accompany an English translation of the first volume of the Dante Trilogy ("*Hell*") by his close friend Dorothy L. Sayers.

17. The Sayers translation, containing the Illustration and nine other drawings by C.W. Scott-Giles, was first published in the U.K. on November 16, 1949, without a U.S. copyright notice (Exhibit 2). On information and belief, there was no U.S. publication in 1949 (Exhibit 4).

18. On or about January 20, 2021, Plaintiff discovered that Defendants Nirvana and Live Nation Merchandise are (and have been) licensing, promoting, selling, manufacturing, and distributing vinyl records, t-shirts, sweaters, hoodies, key fobs, mugs, patches, buttons, and other merchandise items depicting an image virtually identical to the Illustration (the "Infringing Products") both in the U.S. and abroad.

19. On or about March 11, 2021, Plaintiff discovered that, sometime after February 13, 2021, Defendant Merch Traffic also started promoting, licensing, selling, and distributing Infringing Products in the U.S. and abroad.

20. A few samples of Defendants' Infringing Products are shown below, and discovery of Defendants' business and sales records is likely to uncover more:



COMPLAINT                                                                                                      - 5 -



21. Further research revealed that some of the unauthorized uses of the Illustration on Nirvana-branded merchandise date as far back as 1989.

22. Further research also revealed that over the years, the band Nirvana and parties acting on its behalf have routinely made false claims of ownership of the copyright in the Illustration by placing false copyright notices on the Infringing Products in substantially this form "© [Year] Nirvana" – as shown in the examples below:



23. Finally, in documents filed in two other copyright actions before this Court, Defendant Nirvana has implied that Kurt Cobain created the Illustration or, in the alternative, that the Illustration is in the public domain in the United States, and that, therefore, Nirvana and its licensees are free to use it without authorization

or compensation.[1] Nirvana and some of the other Defendants have maintained this position in their responses to Plaintiff's continuing requests to cease their wrongful conduct in the U.S. and abroad. True copies of the correspondence between Plaintiff and those Defendants are attached hereto as Exhibits 5 thru 16 (attachments omitted).

24. Defendants' allegations are false. The Illustration is protected under both U.S. copyright laws and foreign national copyright laws, Plaintiff owns the copyright in it, and Defendants are infringing upon Plaintiff's exclusive rights by, *inter alia*, manufacturing, selling, distributing, and promoting the Infringing Products, and by licensing the Illustration for the manufacture, sale, distribution, and promotion of Infringing Products by third parties in the U.S. and abroad.

**<u>Copyright Protection under 17 U.S.C. § 101 *et seq.*</u>**

25. As a work created by a British citizen and first published in the United Kingdom, the Illustration is a "foreign work" for the purposes of U.S. copyright laws.

26. Courts in the Ninth Circuit have repeatedly held that a foreign publication of a foreign work, before January 1, 1978, without notice of United States copyright, did not put the foreign work into the public domain in the U.S., provided that, under the laws of the country where publication first took place, the

---

[1] It concerns the cases *Nirvana L.L.C. v. Marc Jacobs International, L.L.C et. al.*, 2:18-cv-10743-JAK-SK (C.D. Cal. Dec. 28, 2018) (the "*Marc Jacobs* action") and *Nirvana L.L.C. v. Fisher*, No. 2:20-cv-10324-JAK-SK (C.D. Cal. Nov. 11, 2020) (the "*Fisher* action") that both revolve around Nirvana's claims of copyright ownership of the "Happy Face," another illustration used on Nirvana-branded merchandise since the early 90s (as can be seen on the bottom of the coffee mug and on one of the buttons pictured in ¶ 20). In both actions Nirvana continues to advance the misleading claim, based on statements provided by Nirvana band member Krist Novoselic and Nirvana manager John Silva, that "the 'Happy Face' t-shirt is similar to *another t-shirt Kurt Cobain had previously created called the 'Seven Circles of Hell' t-shirt*" (emphasis added), referring to a t-shirt containing the Illustration of Upper Hell that is at issue here. *See, e.g.*, ECF 99, p. 2:11-16; p. 3:13-15; ECF 100, Decl. Krist Novoselic, ¶¶4-5 and ECF 100, Decl. John Silva, ¶¶5-6 in the *Marc Jacobs* action; *see also* ECF 17, p. 19:10-12 in the *Fisher* action. Confronted with the falsity of that claim, Nirvana, without entirely abandoning it, pivoted to its alternative claim that the Illustration is in the public domain. *See* ECF 135, p. 1:25-2:7 in the *Marc Jacobs* action.

lack of copyright notice did not result in putting the work into the public domain there. *Twin Books Corporation v. the Walt Disney Co.*, 83 F.3d 1162, 1167 (9th Cir. 1996); *Societe Civile v. Renoir*, 549 F.3d 1182, 1186-1187 (9th Cir. 2008).

27. Under the U.K. Copyright Act of 1911, which governed the protection of the Illustration when it was first published in 1949, publication without a copyright notice in the U.K. did not put the Illustration in the public domain there. Therefore, the Illustration did not fall into the public domain in the U.S. either, and continues to enjoy copyright protection under 17 U.S.C. 303(a) as a "work created before January 1, 1978, but not theretofore in the public domain or copyrighted." *See Renoir*, 549 F.3d 1182, at 1187.

28. As such, copyright protection in the Illustration endures for the term provided in 17 U.S.C. § 302, which is the author's life and 70 years after the author's death. The Illustration is thus protected by U.S. copyright until 2052.

29. Alternatively – should this Court disregard governing precedent in this Circuit and determine that, at some point before 1989, the Illustration would have fallen into the U.S. public domain for non-compliance with notice, registration, renewal, or any other formalities imposed by the 1909 U.S. Copyright Act – U.S. copyright in it would have been restored automatically by the 1994 Uruguay Round Agreements Act. In other words, the Illustration has certainly not been in the U.S. public domain since January 1, 1996.  In addition, none of the Defendants would be able to claim status as a reliance party in the sense of 17 U.S.C. § 104(A), because (a) none of them were even in existence when copyright would have been restored in 1996, and (b) none of them ever relied on the purported public domain status of the work for its use, but on false claims of copyright ownership in violation of 17 U.S.C. § 1202.

30. As the sole heir of the copyright in her late grandfather C.W. Scott-Giles' works, Plaintiff Ms. Bundy is the legal owner of the copyright in the Illustration. Any exploitation of the Illustration without her consent constitutes

copyright infringement in the U.S. and in most other countries around the world in which Defendants are selling the Infringing Products.

31. Ownership of a U.S. Copyright Registration is not a prerequisite to filing a copyright suit for infringement of a foreign copyright-protected work.

## **Copyright Protection under foreign national laws**

32. Causes of action for copyright infringement may be brought in any court that has jurisdiction over a Defendant, and a copyright owner may proceed against an infringer in United States courts for infringements that occurred in another country. Under the territoriality principle, the other nation's copyright law will govern the action in the United States. *See London Film Productions v. Intercontinental Comm.,* 580 F. Supp. 47 (S.D.N.Y. 1984) (citing 3 *Nimmer on Copyright* (1982) at §17.03); *see also Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 637 (S.D.N.Y. 2000) (citing *Nimmer* at §17.03 and 3 *Goldstein, Copyright Principles, Law Practice,* at § 16.2) and *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1095 n.10 (9th Cir. 1994) (citing *London Film* that "actions under the copyright laws of other nations may be brought in United States courts," while rejecting the argument that the application of foreign copyright laws by American courts would be unrealistic).

33. Although Defendants are selling the Infringing Products on a global scale, the bulk of their infringing activities outside of the U.S. appears to be concentrated in the United Kingdom and Germany.

34. In the **United Kingdom**, the situation is governed by the Copyright, Designs and Patents Act of 1988 (the "CDPA"), which provides copyright protection automatically and without any formalities until 70 years after the author's death. As such, the Illustration is protected by U.K. copyright until 2052.

35. Section 16 of the CDPA states in relevant part that "[c]opyright in a work is infringed by a person who without the license of the copyright owner does, or authorises another to do, any of the acts restricted by the copyright," regardless

of whether he does so "directly or indirectly." Restricted by copyright in the U.K. are, *inter alia*, the acts of copying the work, issuing copies of the work to the public, showing the work in public, communicating the work to the public, making an adaptation of the work, or do any of the preceding regarding an adaptation.

36. On information and belief, Defendants are either directly or indirectly engaging in acts restricted by U.K. Copyright and are authorizing others to engage in such acts by licensing, manufacturing, marketing, selling, and/or distributing the Infringing Products in the U.K. without Plaintiff's consent.

37. In **Germany**, the Illustration is protected by copyright under the Copyright and Neighbouring Rights Act of 1965 (the "UrhG"). According to Section 65 of the UrhG, the duration of copyright protection in Germany is 70 years after the author's death. Therefore, the Illustration is also protected by German copyright until 2052.

38. Sections 15 thru 24 of the UrhG identify the exploitation rights that are reserved for the copyright owner and include the exclusive rights of reproduction, distribution, and presentation and the rights to make the protected work available to the public and transform or adapt the work.

39. On information and belief, Defendants are infringing upon Plaintiff's German copyright in the Illustration by licensing, manufacturing, marketing, selling, and/or distributing the Infringing Products in Germany without Plaintiff's consent and by authorizing, instigating, and actively assisting third parties to undertake any of these infringing activities.

### Defendants' Wrongful Conduct

40. On information and belief, Defendant Nirvana L.L.C. is the entity that manages the business interests and activities of former rock band Nirvana, and that handles and directly profits from the licensing and sale of Nirvana-branded merchandise. Since its formation in 1997, Nirvana L.L.C. has been selling Infringing Products throughout the world that feature an image virtually identical

1    to Plaintiff's Illustration as shown in ¶ 1 above.

2         41. As a side-by-side comparison shows, the image depicted on the

3    Infringing Products is an identical copy of the Illustration as it was first published

4    in the U.S. in 1984:[2]

  

13        42. Defendant Silva Artist Management, LLC was formed in 1999 and, on

14   information and belief, has been supervising and managing the business affairs of

15   Nirvana L.L.C. since. On information and belief, SAM oversees and directly

16   profits from Nirvana's merchandising activities.[3]

17        43. On information and belief, Defendant Live Nation Merchandise, LLC

18   was formed in 2007 and has been the worldwide exclusive distributor and licensee

19   of Nirvana-branded merchandise since 2012.[4]

20        44. On information and belief, Defendant Merch Traffic LLC was formed

---

[2] It is clear that Nirvana lifted the image from Mark Musa's translation of "The Divine Comedy – Volume 1: Inferno," which was first published in the U.S. with the diagrams and maps of C.W. Scott-Giles in 1984 (Exhibit 3). The earlier 1971 publication of this translation was illustrated by Richard M. Powers and did not contain the C.W. Scott-Giles graphics. The negligible differences between the 1949 and the 1984 Illustration are the result of small differences in translation of the poem, but obviously do not take away from the extrinsic or intrinsic similarity.

[3] In the *Marc Jacobs* action, John Silva, the owner and principal of Silva Artist Management, was designated by Nirvana L.L.C. to serve as its 30(b)(6) witness, and, as such, most competent to discuss its merchandise business. *See* ECF 120-20 in the *Marc Jacobs* action.

[4] In the *Marc Jacobs* action, Bruce Fingeret submitted a declaration that he has been handling Nirvana merchandise for Live Nation Merchandise, LLC since he was appointed President of the company in 2012. *See* ECF 161-1, Decl. Bruce Fingeret, ¶¶ 4-5 in *the Marc Jacobs* action.

in 2016 and is currently also involved in the sales, promotion, and distribution of Nirvana-branded merchandise.

45. On information and belief, Defendants' Infringing Products are (or were) sold online and at retail, both in the U.S. and abroad, including but not limited to major retailers such as H&M, Hot Topic, and Walmart.

46. Defendants' actions as described above are unauthorized by Plaintiff or her predecessors-in-right, and the facts decidedly show that Defendants' wrongful conduct was willful, flagrant, and intentional:

47. First, any alleged good faith belief regarding any alleged public domain status of the Illustration that Defendant Nirvana L.L.C. now purports is refuted by Nirvana's false claims of copyright ownership throughout the years and the world, as shown in ¶¶ 22 and 50.

48. Second, Defendants – either directly or through their agents, parents, subsidiaries, or licensees – have been selling the Infringing Products around the globe, and particularly in countries where there was absolutely no reason to ever assume that the Illustration would be in the public domain because copyright protection in those countries has always been automatic and not subject to any formalities.

49. Third, although Plaintiff has requested that Defendants cease and desist from all unlawful activities immediately and that they confirm as much in writing, Nirvana, with the other Defendants in tow, has indicated that it intends to continue its worldwide infringing activities for at least another year without consent or compensation – *apparently even in those countries where it does not dispute the copyright infringement under local laws* (Exhibits 8 thru 16). Also, it seems that, since Plaintiff's demand letter, Nirvana has only widened the scope of its infringing conduct by pulling in Defendant Merch Traffic as a new or additional distribution partner.

50. Further, although Defendants are admittedly aware that C.W. Scott-

Giles is the author of the Illustration and that Nirvana does not own any copyright in it, they continue to affix copyright notices on the Infringing Products identifying Nirvana as the owner, as shown in ¶ 22 and in the samples below:






51. On information and belief, Defendants are also distributing so-called "Nirvana Style Guides" to third-party vendors and manufacturers of Nirvana merchandise that contain digital copies of the Illustration bearing similarly false copyright notices. These guides authorize and even instruct third parties to label all materials produced pursuant to the guide, including materials depicting the Illustration, with a "© Nirvana" copyright notice.

52. As a result of Defendants' actions described above, Plaintiff has been directly harmed and continues to be harmed by the unauthorized reproduction, sale, distribution, and public display of the Infringing Products, as well as by the repeated and ongoing violations of the integrity of the copyright management information conveyed with the Illustration. Defendants have never accounted or

compensated Plaintiff or her predecessors-in-right for their decades-long use of the Illustration, nor have they shown any intent to do so now.

53. Defendants acts are causing, and unless restrained, will continue to cause damage and irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### (For Copyright Infringement under 17 U.S.C. § 501 & Injunctive Relief – against all Defendants)

54. Plaintiff repeats and realleges paragraphs 1 through 53 hereof, as if fully set forth herein.

55. The Illustration is an original work of visual art containing copyrightable subject matter for which copyright protection exists under 17 U.S.C. § 101 *et. seq*. Plaintiff is the exclusive owner of the copyright in and to the Illustration. Since the Illustration is a foreign work, Plaintiff can file suit for infringement in the U.S. without having been issued a U.S. copyright registration certificate for the work.

56. Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, public display, and sale in the U.S. of the Infringing Products, which all contain an image virtually identical to Plaintiff's Illustration, without Plaintiff's permission, Defendants have directly infringed Plaintiff's exclusive rights in the Illustration in violation of 17 U.S.C. § 501.

57. Also, Defendants have authorized, incited, facilitated, and failed to exercise their right and ability to supervise persons within their control to prevent infringement. They did so with the intent to further their own financial interests in the infringement of the Illustration's copyright. Accordingly, Defendants have contributorily and/or vicariously infringed Plaintiff's copyrighted work.

58. On information and belief, Defendants' infringing conduct alleged herein was, and continues to be, willful and has enabled Defendants to obtain

substantial profits therefrom illegally.

59. As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Under 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, including from any sales of all Infringing Products, and an accounting of and a constructive trust with respect to such profits.

60. As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain a substantial and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless this Court enjoins Defendants' infringing conduct, Defendants will continue to infringe the Illustration. Plaintiff, therefore, is entitled to permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

## SECOND CLAIM FOR RELIEF

**(For Copyright Infringement under U.K. copyright law & Injunctive Relief – against Defendants Nirvana, Live Nation Merchandise and Merch Traffic)**

61. Plaintiff repeats and realleges paragraphs 1 through 60 hereof, as if fully set forth herein.

62. The Illustration is copyrightable subject matter for which copyright protection exists in the United Kingdom under the U.K. Copyright, Designs, and Patents Act of 1988 (the "CDPA"). As the exclusive owner of the copyright in and to the Illustration, Plaintiff can file suit in the U.S. against the Defendants for their infringing activities in the U.K.

63. Through Defendants' conduct alleged herein, which includes selling, reproducing, distributing, and publicly displaying the Infringing Products in the U.K. without Plaintiff's consent and/or authorizing others to engage in such acts in the U.K., Defendants have directly or accessorily infringed Plaintiff's exclusive

rights in the Illustration in violation of Section 16 of the CDPA *et seq.*

64. On information and belief, Defendants' infringing conduct alleged herein was and continues to be flagrant, and substantial benefits have accrued to Defendants because of the infringement.

65. As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to the remedies provided for in Chapter VI of the CDPA, including compensatory and additional damages or recovery of Defendants' profits attributable to Defendants' infringing conduct in the U.K., in an amount to be proven at trial, as well as permanent injunctive relief enjoining Defendants' ongoing infringing conduct.

## THIRD CLAIM FOR RELIEF

**(For Copyright Infringement & Injunctive Relief under German copyright law – against Defendants Nirvana, Live Nation Merchandise and Merch Traffic)**

66. Plaintiff repeats and realleges paragraphs 1 through 65 hereof, as if fully set forth herein.

67. The Illustration is copyrightable subject matter for which copyright protection exists in Germany under the German Copyright and Neighbouring Rights Act of 1965 (the "UrhG"). As the exclusive owner of the copyright in and to the Illustration, Plaintiff can file suit in the U.S. against the Defendants for their infringing activities in Germany.

68. By selling, manufacturing, publicly displaying, and/or distributing the Infringing Products in Germany without Plaintiff's consent, or by instigating, assisting, and authorizing others to do so, Defendants have directly or contributorily infringed Plaintiff's exclusive rights in the Illustration in violation of Section 15 of the UrhG *et seq.*

69. As such, Plaintiff is entitled to relief under § 823 of the German Civil Code ("BGB") and to the remedies stated in Section 97 of the UrhG – which

include injunctive relief as well as damages in the form of either (a) disgorgement of the profits that Defendants obtained from the infringing conduct, (b) the reasonable compensation that Defendants would have owed to Plaintiff for the use of the Illustration, had they obtained her permission or (c) restitution under general principles of unjust enrichment (§812 BGB), in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### (For violation of 17 U.S.C. § 1202 – Integrity of Copyright Management Information – against all Defendants)

70. Plaintiff repeats and realleges paragraphs 1 through 69 hereof, as if fully set forth herein.

71. Section 1202(a) of the Copyright Act prohibits any person from knowingly providing or distributing copyright management information ("CMI") that is false, with the intent to induce, enable, facilitate, or conceal infringement.

72. Also, section 1202(b) of the Copyright Act prohibits any person who has reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement, from removing or altering CMI, or from distributing works with the knowledge that the CMI was removed or altered without the authority of the copyright holder.

73. Copyright management information ("CMI") includes, *inter alia*, any of the following information conveyed in connection with copies or displays of a work: the title and other information identifying the work, the name of the author of the work, the name of the copyright owner of the work ("*including the information set forth in a notice of copyright*"), and the terms and conditions for the use of the work. 17 U.S.C. 1202(c).

74. All authorized publications of the Illustration contain a conspicuous author's credit in substantially this form "Maps and diagrams drawn by C.W. Scott-Giles." This credit also appeared in the 1984 Mark Musa translation of *The Divine Comedy,* from which Nirvana lifted the Illustration, as shown in Exhibit 3.

75. No author's credit whatsoever appears on (and was thus "removed" from) any of the Infringing Products or images that were licensed, manufactured, distributed, and/or sold by Defendants or for their account. Moreover, the Illustration's title ("Upper Hell") was also omitted from all Infringing Products and from all digital files distributed to third parties to design and manufacture those.

76. Instead, Defendants renamed the Illustration "Vestibule" or "(Seven) Circles of Hell" and affixed, and instructed third parties to affix, copyright notices that falsely identify Nirvana as the copyright owner of the Illustration, thereby also modifying the terms and conditions for its use. In effect, by providing a false "© Nirvana" copyright notice, Defendants indicate to the world that the use of the Illustration is subject to *Nirvana's* consent rather than Plaintiff's, the actual copyright owner. This, in turn, allowed the infringement to go unnoticed and escape Plaintiff's attention for decades.

77. Adding to the deception are statements made by Nirvana's officers, agents, and counsel in sworn declarations and other court filings that the t-shirt bearing the Illustration was "created" by Kurt Cobain (see ¶ 23 and footnote 1).

78. Nirvana acknowledges that it does not own the copyright in the Illustration, that C.W. Scott-Giles created it, and that Nirvana never asked for or received consent from the copyright owner to use it. It is thus irrefutable that by placing the false copyright notices on the Infringing Products and distributing them for sale, Nirvana *knowingly* provided and distributed false CMI in violation of 17 U.S.C. § 1202(a) and *intentionally* removed and altered the correct CMI without the authority of the copyright owner in violation of 17 U.S.C. § 1202(b).

79. Equally undeniable is that Nirvana did so with the intent to induce, enable, facilitate, or conceal infringement. The false copyright notices are meant to instill confidence in third-party licensees (and in the public at large) that Nirvana is the owner of the copyright in both the Infringing Products and in the digital images that it authorizes third parties to use for the design and manufacture of Infringing

Products – even though this is not the case.[5] Relying on these false notices, third-party licensees, as well as the public, are likely to forego any due diligence regarding the ownership of the copyright in the Illustration, much less would they think to reach out to Plaintiff to secure permission for its use. The sheer volume of third parties currently infringing on Plaintiff's copyright in the Illustration on a worldwide scale sufficiently illustrates that the resulting copyright infringement is not some remote possibility but fact.

80. Defendant SAM has been working with Nirvana L.L.C. since its own formation in 1999. Also, SAM's owner and principal John Silva has been the band's manager since 1990 and, in a related proceeding, was designated by Nirvana L.L.C. as its 30(b)(6) witness and most competent to testify about its merchandising activities. On information and belief, SAM is instrumental in any contract negotiations and licensing deals concerning Nirvana merchandise and benefits financially from those activities. When the band started affixing "(c) Nirvana" copyright notices to the Illustration in 1992, Mr. Silva knew this information to be false, yet he approved the practice anyway. As the principal officer in SAM and agent for Nirvana L.L.C., his knowledge and actions may be imputed to both Defendants.

81. On information and belief, both Live Nation Merchandise, LLC and Merch Traffic LLC (the "Live Nation Defendants") are subsidiaries of the global entertainment company Live Nation Entertainment, Inc.

82. The Live Nation Defendants have indicated to Plaintiff that they should not be differentiated from Defendant Nirvana L.L.C. and that they are also relying on the alleged public domain status of the Illustration to justify their infringing conduct (Exhibit 15).

---

[5] Moreover, on information and belief, the "Nirvana Style Guides" contain a general instruction to affix a "© Nirvana" copyright notice on *all* Nirvana merchandise, even on those items bearing images that it does not own the copyright to. As such, the violations in this case appear to be part of a pattern and Defendants' standard business practice.

83. As such, the Live Nation Defendants admittedly were also aware that Nirvana does not own any copyright in the Illustration and that any copyright notices identifying Nirvana as the owner of the Illustration are false. Yet, they (a) conveyed this false CMI to third parties in connection with the Illustration and instructed them to include it, and (b) distributed products containing the false CMI, both in violation of 17 U.S.C. §1202(a).

84. In addition, Bruce Fingeret, President of Live Nation Merchandise, LLC, has provided a sworn declaration in a related proceeding that he has been personally involved in merchandising products for Nirvana since 1995 when he was Vice President at Brockum and when Nirvana subsequently signed with FEA. This further corroborates a finding that Live Nation Defendants acted with actual knowledge that the Nirvana copyright notices are false. See also picture 1 in ¶ 22.

85. By assisting Nirvana in removing and altering the correct CMI and replacing it with false CMI, Live Nations Defendants knew – or at the very least should have had reasonable grounds to know – that they are equally responsible for inducing, enabling, facilitating, or concealing copyright infringement. In fact, by licensing the Illustration with the false CMI to third-party licensees worldwide, this is precisely what they achieved.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment as follows:

1. That all Defendants have violated Plaintiff's exclusive copyrights in the Illustration in the U.S. under 17 U.S.C. § 501.

2. That all Defendants have violated the integrity of the Illustration's copyright management information, as outlined in 17 U.S.C. § 1202.

3. That Defendants Nirvana L.L.C., Live Nation Merchandise, LLC and Merch Traffic LLC have violated Plaintiff's exclusive copyrights in the Illustration in the United Kingdom and Germany, as outlined in Section 16 of the CDPA *et*

1    *seq.* and in Section 15 of the UrhG *et seq.* respectively.

2              4. That all Defendants, their employees, agents, officers, directors,

3    successors, affiliates, subsidiaries, and assigns, and all of those in active concert

4    and participation with any of these persons and entities who receive actual notice

5    of the Court's order by personal service or otherwise, be permanently enjoined

6    from:

7         (a)    manufacturing, distributing, marketing, advertising, promoting,

8                displaying, and selling, and from authorizing any third party to

9                manufacture, distribute, market, advertise, promote, display,

10               perform, or sell the Infringing Products and any products, works,

11               or other materials that include, copy, are derived from, or

12               otherwise embody the Illustration or any other image

13               substantially similar thereto;

14        (b)    reproducing, distributing, or publicly displaying the Illustration,

15               creating any derivative works based on the Illustration, or

16               engaging in any activity that infringes Plaintiff's rights in the

17               Illustration; including falsifying, removing or altering the

18               Illustration's copyright management information; and

19        (c)    aiding, assisting, or abetting any other individual or entity in

20               doing any act prohibited by sub-paragraphs (a) or (b).

21             5. That all Defendants be ordered to provide an accounting of Defendants'

22   profits attributable to their infringing conduct, including their profits from the

23   worldwide sales, distribution, and licensing of the Infringing Products and from

24   any products, works, or other materials that include, copy, are derived from, or

25   otherwise embody the Illustration or any other image substantially similar thereto.

26             6. That all Defendants be ordered to destroy all materials in their

27   possession, custody, or control used in connection with their infringing conduct,

28   including without limitation all remaining inventory of the Infringing Products and

any products and works that embody the Illustration or any other image substantially similar thereto.

7. That Plaintiff be awarded, to the extent allowed by law:

    (a)    any losses, compensatory and additional damages sustained by Plaintiff as a result of Defendants' infringing conduct, in an amount to be proven at trial;

    (b)    all profits obtained by Defendants as a result of their infringing conduct, in an amount to be proven at trial, including but not limited to all profits from sales, licensing, distribution, and other exploitation of the Infringing Products and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Illustration or any other image substantially similar thereto; or in the Court's discretion, such amount as the Court finds to be just and proper;

    (c)    should Plaintiff so elect with respect to the infringement of any Defendant, statutory damages as available under 17 U.S.C. § 504(c) and/or 17 U.S.C. § 1203 instead of actual damages or profits;

    (d)    restitution for Defendants' unjust enrichment, in an amount to be proven at trial; and

    (e)    interest, including pre-judgment and post-judgment interest, on the preceding sums.

8. That Defendants be ordered to pay Plaintiff punitive damages for their fraudulent, oppressive, and malicious conduct.

9. That Defendants be ordered to pay Plaintiff's cost of suit and reasonable attorneys' fees under 17 U.S.C. §1203(b)(4) and §1203(b)(5), and to the extent otherwise allowed by law.

10. That Plaintiff be awarded such other and further relief as the Court

deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial on all issues so triable.

DATED: April 28, 2021          By:    /s/ Inge De Bruyn

Inge DE BRUYN

inge.debruyn@modo-law.com

Attorney for Plaintiff,

Jocelyn Susan BUNDY