# EXHIBIT 6

**RIMÔN LAW**
www.rimonlaw.com

March 2, 2021

**VIA ELECTRONIC MAIL**
inge.debruyn@modo-law.com

Inge De Bruyn
Modo Law
4218 Via Padova
Claremont, California 91711

    Re:    *Jocelyn Bundy v. Nirvana, L.L.C., et al.* Cease & Desist Letter

Dear Ms. De Bruyn:

    This letter responds to your correspondence and email dated February 19, 2021. To answer the first question in your email, we will represent Nirvana, L.L.C. ("Nirvana") in this matter until further notice.

    To answer the second question in your email, we agree to accept service of summons and complaint on behalf of our clients, should you insist on filing a complaint herein.

    However, we strongly urge you not to do so, because such a complaint would be frivolous and expose you and your client to sanctions and liability for malicious prosecution. The copyright infringement claim made in that draft complaint is contrary to US copyright law, and admissions in that very pleading and all other evidence available to Nirvana confirms that the "Seven Circles of Hell" image used on the front of a Nirvana t-shirt is and always has been in the public domain for copyright purposes. Further, we believe the allegations made in that complaint are so far removed from the facts and the law that it cannot be asserted in good faith. Should you and your client insist on filing such a complaint for copyright infringement against Nirvana in these circumstances, Nirvana will be forced to seek sanctions against you for filing suit without conducting an adequate investigation pursuant to Rule 11 of the Federal Rules of Civil Procedure, and upon dismissal of that complaint, will file suit against you and your client for malicious prosecution. We say that for the following reasons.

    Your draft complaint admits that the work in which your client claims a copyright interest, namely C.W. Scott-Giles' illustration of "Upper Hell," was first published in England in 1949. In fact, it was included as an illustration to Dorothy L. Sayers' translation of Dante's *Divine Comedy* published that year in England. See Dorothy L. Sayers, Tr., *The Comedy of Ante Alighieri the Florentine*, Cantica I Hell (l"inferno) (Penguin Books, Harmondsworth-Middlesex UK). You can view that work and that illustration at page 84 of that English publication at https://archive.org/details/in.ernet.dli.2015.247916/page/n5/mode/2up.

RIMÔN LAW
www.rimonlaw.com

That edition affirmatively states that it was "[m]ade and printed in Great Britain[,]" that Ms. Sayers' translation was "first published in 1949[,]" and that the "maps and diagrams" within it were "specially drawn for this edition by C.W. Scott-Giles." Id. As review of that edition demonstrates and your draft complaint admits, however, it contains no copyright notice in the name of any person. Id.

Our own investigation has revealed that US "publication" of the *Divine Comedy* (that is, sales of copies to the public in the US) began some time in 1949, and it has been published here continuously ever since. The prefatory information in that US publication edition was largely the same as in the British one, except that beginning at some point it includes a copyright notice stating "Copyright 1949 by Dorothy L. Sayers." (See Exhibit 1 attached to this letter.) However, that US publication was still "[p]rinted and bound in Great Britain…" (See Exhibit 1.) Further, a search of Copyright Office records reveals that no initial US copyright registration for that work, and no renewal registration for that work, were ever filed with the Copyright Office.

Why is the above significant? Because it establishes that the above work, and the Scott-Giles maps and diagrams within it, have been in the public domain since 1949, for many reasons.

The Sayers translation of the *Divine Comey* is what US copyright law calls a "foreign work," which your complaint admits was first published in England in 1949. In its year of publication, namely 1949, foreign works originating in the United Kingdom could only qualify for US copyright protection if they complied with the International Copyright Act of 1891, see 26 Stat. 1106, March 3, 1891, as amended and codified in the Copyright Act of 1909. See 17 U.S.C. § 1 et seq (1909) (repealed December 31, 1977).

To qualify for copyright protection under the Copyright Act of 1909 as it existed in 1949, a foreign work: 1) had to be published with a copyright notice by the purported copyright owner; 2) had to be "printed from type set within the limits of the United States," 26 Stat. 1107 (1891), 17 U.S.C. §16 (1909); and 3) had to be registered and deposited with the Copyright Office in Washington D.C., either "on or before the day of publication in this or any foreign country," International Copyright Act of 1891, or later, within 30 days of its US printing and publication. 17 U.S.C. § 16. Publication without compliance with all of these statutory requirements injected the foreign work into the public domain for failure to comply with the 1909 Act's statutory formalities. Id.

Even if a foreign copyright owner complied with all of the above statutory requirements, he or she would acquire only the term of protection afforded all copyright owners under the Copyright Act of 1909, and in 1949, that term was 28 years from publication with notice or registration. 17 U.S.C. § 23 (1909). A copyright owner could thereafter file a renewal registration within the time contemplated by the statute to receive an additional 28 years of protection. Id. However, if the copyright owner did not file a timely renewal registration, the work was injected into the public domain 28 years after its first publication with notice or registration. Id.

RIMÔN LAW
www.rimonlaw.com

Against this legal background, The *Divine Comedy* and the Scott-Giles illustration within it for which your client claims copyright infringement are in the public domain as a matter of law, for many reasons.

First, "publication" (which the 1909 Act defines as the distribution of copies of a work) in the US of the first foreign edition printed in England in 1949 would immediately inject that work, including the Scott Giles illustrations in that work, into the public domain for violation of the manufacturing clause and other provisions of the 1909 Act applicable to foreign works in 1949 cited above.

Second, any concurrent US publication of US printed versions of the *Divine Comedy* would not be sufficient to qualify that work for copyright in the US unless there was complete compliance with all the requirements for foreign works as described above, and here there was no such compliance. Neither your letter nor your proposed complaint purports to identify any US printing of the *Divine Comedy* in 1949 that complies with foreign work requirements of the Copyright Act of 1909, our own investigation has not revealed any US printing in 1949, and a search of Copyright Office records confirm that there was no initial copyright registration for that work. Each of those failures alone is fatal to US copyright protection for such a foreign work, and those combined failures make US copyright protection for that foreign work impossible.

Third, the fact that US publications of the *Divine Comedy* were published at some point in 1949 or 1950 with a copyright notice as described above is not only insufficient to establish US protection for that foreign work, but further establishes that the Scott-Giles illustrations within it were injected into the public domain upon publication here.

That notice states "Copyright 1949 by Dorothy L. Sayers" as described above. (See Exhibit 1.) Even if that notice provided copyright protection to Ms. Sayers in 1949, which it did not do because of the lack of compliance with other requirements for protecting foreign works as described above, it provides *no* protection to Mr. Scott-Giles, because it does not give notice of any copyright owned *by* Ms. Scott-Giles. The only claimed copyright owner is Ms. Sayers. Although C.W. Scott-Giles is identified as drawing the "maps and diagrams" in that work, he claims no copyright in those maps or diagrams, and thus he provides no copyright notice of any rights in those maps and diagrams. Your proposed complaint admits this, acknowledging that the British edition it references, which contains exactly the same language regarding Mr. Scott-Giles' "maps and drawings," contains no copyright notice. See the link to that British edition above.

Such a lack of notice by Mr. Scott-Giles is not surprising, as it is consistent with industry practice at the time; illustrators generally created their works on a "work made for hire" basis for inclusion into the literary works of authors or publishers, pursuant to which copyright in such illustration would in the first instance be owned by the author (in this case, Ms. Sayers, the translator), or the publisher, rather than the illustrator (in this case, Mr. Scott-Giles.).

Regardless whether that was the case here, the US publication in the *Divine Comedy* of Mr. Scott-Giles' maps and diagrams without a copyright notice by Mr. Scott-Giles is itself fatal to his heirs' present claim to own a copyright in those maps and diagrams, which instead were injected into the public domain when they were published without such a copyright notice in Mr. Scott-Giles name in the US in 1949.

Fourth, Ms. Sayers' copyright notice, even if sufficient to provide her with a US copyright in her translation of the *Divine Comedy* under the Copyright Act of 1909 (which it was not as described above), would not benefit your client for another reason. Ms. Sayers passed away in 1957, and a search of Copyright Office records reveals that no renewal registration was filed in the name of Ms. Sayers or her heirs in 1977 as required to extend her 28-year term of copyright protection under the Copyright Act of 1909. A search of Copyright Office records likewise reveals no renewal registration in the name of Mr. Scott-Giles for his illustrations in the *Divine Comedy*. This means that whatever copyright Ms. Sayers ever possessed in the *Divine Comedy* containing Mr. Scott-Giles' illustrations, and whatever unmeritorious copyright ownership claim Mr. Scott-Giles could ever have made in his illustrations in the *Divine Comedy* based on Ms. Sayers' copyright notice, ended in 1977, upon expiration of the initial 28-year term of that hypothetical but non-existent copyright, injecting that work into the public domain for that independent reason. 17 U.S.C. § 23 (1909).

Thus, the Scott-Giles illustration on the front of Nirvana's t-shirt was never protected by copyright in the US. It has been in the public domain since 1949, when the *Divine Comedy* including it was first published here without compliance with the statutory formalities of the Copyright Act 1909, especially those involving foreign works. Its public domain status was underscored when no original registration was filed with the Copyright Office in 1949 and no renewal registration was filed with the Copyright Office in 1977. And, it was in the public domain when Kurt Cobain decided to use it on the front of a Nirvana t-shirt in 1989 or 1990. The public domain status of the *Divine Comedy* and Scott-Giles illustrations is so obvious that a copy of it has been made freely available on the "Archive.org" website as a public domain work for years. See https://archive.org/details/in.ernet.dli.2015.247916/page/n5/mode/2up. Literally no evidence, and no law, supports your copyright infringement claim.

Finally, your draft complaint's ignoring the relevant Scott-Giles illustration's 70+ year US publication history, and instead implying that it was unpublished in the US and somehow retained US copyright protection based on Mr. Scott-Giles' 1982 death, not only lacks merit as described above, it is so obviously contrary to easily discoverable facts and basic principles of US copyright law we can only conclude that it is not made in good faith for the reasons described at length above. Should you insist on filing such a frivolous complaint, we will pursue sanctions and file suit for malicious prosecution against you and your client as described above.

Govern yourselves accordingly.

Sincerely,

RIMON, P.C.

Mark Lee

MSL:CL

# Exhibit 1

# The Comedy of Dante Alighieri
## The Florentine

### Cantica I

# Hell

(*l'Inferno*)

*Translated by* DOROTHY L. SAYERS

PENGUIN BOOKS

PENGUIN BOOKS

Published by the Penguin Group
Penguin Books Ltd, 80 Strand, London WC2R 0RL, England
Penguin Group (USA) Inc., 375 Hudson Street, New York, New York 10014, USA
Penguin Books Australia Ltd, 250 Camberwell Road, Camberwell, Victoria 3124, Australia
Penguin Books Canada Ltd, 10 Alcorn Avenue, Toronto, Ontario, Canada M4V 3B2
Penguin Books India (P) Ltd, 11 Community Centre, Panchsheel Park, New Delhi – 110 017, India
Penguin Books (NZ) Ltd, Cnr Rosedale and Airborne Roads, Albany, Auckland, New Zealand
Penguin Books (South Africa) (Pty) Ltd, 24 Sturdee Avenue, Rosebank 2196, South Africa

Penguin Books Ltd, Registered Offices: 80 Strand, London WC2R 0RL, England

www.penguin.com

This translation of Dante's *Inferno* first published 1949

060

Copyright 1949 by Dorothy L. Sayers
All rights reserved

Printed and bound in Great Britain by Clays Ltd, Elcograf S.p.A.
Set in Monotype Bembo

Except in the United States of America, this book is sold subject
to the condition that it shall not, by way of trade or otherwise, be lent,
re-sold, hired out, or otherwise circulated without the publisher's
prior consent in any form of binding or cover other than that in
which it is published and without a similar condition including this
condition being imposed on the subsequent purchaser

ISBN-13: 978-0-140-44006-5

www.greenpenguin.co.uk



Penguin Books is committed to a sustainable
future for our business, our readers and our planet.
This book is made from Forest Stewardship
Council™ certified paper.

TO THE
OF THE A
CHARLE

*E quant' io l'abbi*
*convien che nella*