# EXHIBIT 7

# modo law

Rimôn Law
Attn. Mark Lee
2029 Century Park East, Suite 400N
Los Angeles, CA 90067

BY EMAIL:     mark.lee@rimonlaw.com

RE:     JOCELYN BUNDY v. NIRVANA, L.L.C. ET AL. || CEASE & DESIST
        REPLY TO YOUR LETTER DATED MARCH 2, 2021

March 9, 2021

Dear Mr. Lee,

I am in receipt of your response letter dated March 2, 2021.

Obviously, I regret your client's decision to decline the opportunity to voluntarily cease and desist its unauthorized use of the Upper Hell illustration, which leaves my client with no other choice than to file suit.

I equally regret that, in your firm's professional judgement, threatening opposing counsel and her client with a baseless Rule 11 motion and malicious prosecution claim is considered an appropriate and acceptable strategy in the furtherance of your client's goals. Sadly, in light of our prior interactions, I cannot feign surprise.

I assume that when you advised your client regarding the merits of this strategy, you made sure to point out that Rule 11 motions are highly disfavored and considered uncivil, and that Rule 11 applies to all pleadings and dispositive motions in a case, including your client's. As such, Rule 11 motions can easily backfire – let's say when your client and its counsel were to continue to advance these false public domain claims in court filings.

I also imagine that you are fully aware that your theory is legally inaccurate and will not hold up in court. To the extent, however, that the oversight of certain legal considerations in your lecture was not intentional, you may want to be mindful of them before you start drafting a Rule 11 motion in this case. I have outlined them here.

    A.  Work-for-hire status is determined under the law of the country of origin of the work, in this case the U.K. Under Section 5, (1), (b) of the 1911 U.K. Copyright Act, which governs this situation, work for hire only applies to a traditional employer-employee relationship, referred to as a "contract *of*

MODO LAW • 4218 Via Padova • Claremont, CA 91711
+1 424-832-6118 • inge.debruyn@modo-law.com
www.modo-law.com

service." This is not to be confused with a "contract *for* service," which refers to an independent contractor situation that does not trigger any work-for-hire determinations. I can confirm that, during his life, Mr. Scott-Giles never entered into a "contract *of* service" with anyone, let alone with Ms. Dorothy L. Sayers. So, whatever work-for-hire argument that you believe can be made under U.S. copyright law, does not apply here.

B.  In addition, any rights that Mr. Scott-Giles may have granted to his personal friend Ms. Sayers for her use of his illustrations in her book most certainly did not inure to the benefit of your client, who never asked permission from anyone. Moreover, any such grant would have also been governed by the 1911 U.K. Copyright Act. You will find that Section 5, (2), §2 of this Act declares as inoperative any assignment of, and any grant of interest in, the copyright of a work beyond the expiration of 25 years from the death of its author. In other words, even if Mr. Scott-Giles would have granted any rights to the copyright in these illustrations to anyone in writing – which, based on our investigation, does not seem to have been the case – that grant would no longer be valid anyway, and all copyrights would have automatically devolved to his heirs in 2007.

C.  Further, and most importantly, your public domain analysis completely ignores governing precedent in the Ninth Circuit regarding copyright protection of foreign works, as fully set out in the cease & desist letter and draft complaint. This precedent may not be convenient to your client, but it is governing law, nonetheless. Your silence on this point speaks volumes.

D.  Finally, your analysis also falls remarkably short on the fact that, as of January 1, 1996, as a result of the 1994 Uruguay Round Agreements Act, copyright was automatically restored in foreign works that had previously fallen into the public domain for non-compliance with registration, renewal or other formalities imposed by the 1909 U.S. Copyright Act. So, even if we were to ignore Ninth Circuit precedent, and assume *arguendo* that the Upper Hell illustration had fallen into the public domain in the U.S. some time prior to 1988, it has clearly not been in the U.S. public domain since 1996.

Moreover, it is evident from the false copyright notices that your client has affixed to the illustration throughout the years, that it never relied on any public domain status of the work, as you now allege, but, instead, has always used the illustration under a false claim of ownership.[1] As such, your client's use of the Upper Hell illustration is in line with what appears to be a very successful business model

---

[1] In fact, I understand from your filings in the *Marc Jacobs* case that, until recently, your client was not even aware of Mr. Scott-Giles' authorship of the Upper Hell illustration, much less of the circumstance that the image was first published in the UK on November 16, 1949 and that the first edition of Ms. Sayers' book was never printed, sold or otherwise "published" in the U.S. in 1949.
From the version of the image that Nirvana is using on its merchandise, it is clear that it was lifted from a 1984 U.S. publication of Mark Musa's copyrighted translation, not from the earlier Dorothy Sayers translation. So, when Nirvana started using the 1984 image in 1989, it had no reason to assume that the illustration was in the U.S. public domain. And it had even less reason to believe that the image was in the public domain in all other countries where it was, and still is, selling its goods, and where no copyright formalities were ever imposed.

MODO LAW • 4218 Via Padova • Claremont, CA 91711
+1 424-832-6118 • inge.debruyn@modo-law.com
www.modo-law.com

that it has employed for decades – to claim authorship and ownership of, and make millions of dollars from, merchandise designs that it did not create or pay for.[2]

So, you see, Mr. Lee, I did conduct a very thorough prefiling investigation and I am not worried about my liabilities in this area, much less my client's, who would moreover be immune to monetary sanctions insofar as you are alleging a violation of Rule 11(b)(2) on my part.

I also do not believe that you are doing your client any favors by offering up this strategy as a viable defense to its wrongful conduct. In fact, the odds dramatically favour your client paying your firm a lot more in legal fees to litigate your threatened Rule 11 motion and malicious prosecution claim than it would stand to gain from such actions.

My client has a very legitimate expectation of being able to enforce her copyrights in the Upper Hell illustration here in the U.S. in the same way that she can enforce them in all other countries that are members to the Berne Convention and/or to the WTO, and where your client is also selling its goods without her consent. There is absolutely nothing about her intent to enforce her rights here that would call for sanctions, or that would constitute malice.

In fact, it is ironic that you would point to an upload of Ms. Sayers' book on the website "Internet Archive" by an anonymous user in India as evidence that both the book and the illustration are in the public domain in the U.S. Not only is "Internet Archive" currently answering in federal court to allegations of mass copyright infringement – coincidentally for making copyrighted books available for download under the false pretense that they are in the public domain[3] – you are also getting your "information" from a user who openly counsels other users of that website on how to "rip" content and "dump" it on the internet. One would be hard-pressed to consider these reliable sources.

It is unfortunate that your client's bravado and boundless sense of entitlement is, yet again, obscuring the lack of factual and legal merit of its claims. Should you conclude in hindsight that it would be more beneficial for your client to have a constructive conversation instead, I remain at your disposal.

All rights reserved.

Sincerely,

Inge De Bruyn

---

[2] Aside from the known issues with the Happy Face and Upper Hell illustrations, our prefiling investigation has also revealed false copyright notices, false copyright registrations and/or false claims of ownership in L.L.C. documents with respect to at least two other images used by Nirvana on band merchandise since the early 90s, namely the "T.A.M." image / "In Utero Angel" and the "Sliver" image.
[3] *See* https://www.npr.org/2020/06/03/868861704/publishers-sue-internet-archive-for-mass-copyright-infringement and https://assets.documentcloud.org/documents/6935704/4388-1.pdf

MODO LAW • 4218 Via Padova • Claremont, CA 91711
+1 424-832-6118 • inge.debruyn@modo-law.com
www.modo-law.com