# EXHIBIT 11

# modo law

Rimôn Law
Attn. Mark Lee
2029 Century Park East, Suite 400N
Los Angeles, CA 90067


<u>BY EMAIL:</u>          mark.lee@rimonlaw.com


<u>RE:</u>          <u>JOCELYN BUNDY v. NIRVANA, L.L.C. ET AL.</u> || <u>CEASE & DESIST</u>
          <u>REPLY TO YOUR EMAIL/LETTER DATED MARCH 29, 2021 (RECEIVED MARCH 31, 2021)</u>


April 9, 2021

Dear Mr. Lee,

I have reviewed your latest response to my client's request that Nirvana cease its infringing conduct both in the U.S. and abroad, and that it provide my client with an accounting over its proceeds from the infringement. From your letter, I must conclude that, to this day, despite the voluminous back and forth, your client has no intention whatsoever to comply with that request. As a result, we can at least agree on one thing: that there is no basis to continue our discussions, which merely delay the inevitable judicial resolution of the matter.

As for the other points raised in your letter, I can comment as follows:

First, concerning the evidence that you request, there was no reason for my client to disclose personal documents showing her chain of title to the copyright, as long as Nirvana categorically denied infringing on *anyone's* copyright. Since your client now appears to acknowledge at least the infringements under foreign copyright laws, please find those documents attached. C.W. Scott-Giles' estate passed in equal parts to his two children Giles Wilfrid Scott-Giles and Erica Rosemary Bundy. Both their estates passed to my client, Jocelyn Susan Bundy, C.W. Scott-Giles' only grandchild. Exhibit 1.

Second, also on the subject of evidence, I believe that you misunderstand the burden of proof in the situation:

1)  If Nirvana wants to allege that the copyright in the illustration is not owned by my client but by Ms. Sayers, Nirvana should support that allegation, not my client. Moreover, I have already explained at length why this is not the case. I refer to my letter of March 9, 2021.

MODO LAW, P.C. • 4218 Via Padova • Claremont, CA 91711
+1 424-832-6118 • inge.debruyn@modo-law.com
www.modo-law.com

2)  Similarly, if Nirvana wants to argue that the illustration was published in the U.S. within 30 days of its publication in the U.K., Nirvana should provide such evidence. Our research shows otherwise. In the interest of moving this case along, I can share with you that:

    a)  The 1949 edition of the Sayers translation does not contain any reference to a U.S. publication as later versions do. In fact, it is clear from the cover of that edition, which lists the book price solely in British shillings/pence (2/6), as well as from the credits on the opening pages, that there was no U.S. publication of that first edition in 1949. Exhibit 2.

    b)  Also, the history of Penguin Books is such that it did not have any U.S. operations in 1948 and 1949 due to a conflict between its U.S. representatives and its U.K. owners. As a result, Penguin did not start up its U.S. operations again until sometime in 1950 when it set up Penguin Books, Inc. in Baltimore. Exhibit 3.

Third, as I have clarified before, my client's infringement claim is not based on restoration of copyright under the U.R.A.A. It is based on binding precedent in the Ninth Circuit that the illustration did not enter the public domain to begin with and is protected under 17 U.S.C. § 303(a). That precedent is not "unidentified," as you mockingly state, but clearly referenced in both my letters and the draft Complaint, which I suggest you review. Therefore, issues such as the illustration's non-compliance with U.S. copyright formalities or Nirvana's alleged status as a reliance party are inconsequential.

Fourth, whatever reliance status your client feels that it could invoke under the U.R.A.A. is disputed and tainted with bad faith. It is crudely apparent that your client never relied on any alleged public domain status of the work in its decades of exploitation. Instead, it relied on and continues to rely on false claims of ownership, which you conveniently ignore.

Equally disturbing are the ethics underlying your latest argument: that Nirvana should not even cease or account for its undisputed copyright infringements abroad, simply because you consider it unlikely that a U.S. court would exercise jurisdiction over those foreign acts. You could not have illustrated your client's attitude more perfectly...

Should your client, in taking that gamble, decide to rely on the cases that you have cited, I would urge you to revisit them:

1)  Contrary to what you state ("court declines to exercise jurisdiction over claims of copyright infringement in the United Kingdom under English law"), the court in *X17 Inc. v. Hollywood TV Inc.*, 2008 WL 4527865 (C.D. Cal. 2008) did the exact opposite. In fact, not only did the U.S court exercise jurisdiction over the claim for infringement of the author's *economic* rights, it also exercised jurisdiction over the alleged infringement of the author's *moral* rights under U.K. law. Exhibit 4.

2)  As for *Music Sales Ltd. v. Charles Dumont & Son, Inc.*, you also misrepresent the court's ruling there. The court did not "decline to consider [a] foreign copyright claim," as you allege. In fact, no copyright claim under foreign law was ever made in that case. Instead, the plaintiff sought to vindicate foreign acts of infringement under U.S. copyright law and tried to establish federal question jurisdiction on that basis. Also, you are taking one sentence in this ruling out of context to suggest that U.S. courts would not have

MODO LAW, P.C. • 4218 Via Padova • Claremont, CA 91711
+1 424-832-6118 • inge.debruyn@modo-law.com
www.modo-law.com

the power to provide relief for violations of foreign law. I trust that you know this to be highly inaccurate. It is generally accepted that U.S. courts may adjudicate disputes involving the conduct of its citizens, regardless of the location of their conduct.[1] This includes foreign copyright infringement by U.S. entities.

3) That is also why the situation here differs significantly from the situation in *I.T.S.I. T.V. Prods., Inc. v. California Authority of Racing Fairs*, where the court dismissed an action against a <u>foreign</u> defendant for lack of subject matter jurisdiction for its alleged infringement of <u>U.S. copyright law</u> resulting from acts committed outside of the U.S., *because it failed to find a violation of <u>U.S.</u> copyright law*. As for the plaintiff's subsequent request for leave to amend to state a cause of action under foreign copyright law, the court merely expressed its reluctance to apply foreign law "<u>without an urgent reason to do so</u>." That urgent reason is evident here. My client does not seek redress in the U.S. against a foreign entity for acts solely performed abroad. She asserts a claim against U.S. defendants for their worldwide infringement of her rights in perhaps the only country where they are subject to personal jurisdiction and from which they are authorizing the infringement. In addition, my client is bringing her claim in the forum that, based on the information available to her, appears to be the most convenient, the Central District of California.

In any event, since your client remains unpersuaded that it should voluntarily cease and account for its infringements of my client's copyrights under U.S. and foreign laws, and, moreover, continues to affix false copyright notices to the illustration, I have added a separate cause of action for violation of 17 U.S.C. § 1202. I have adjusted the draft Complaint accordingly.

Please be advised that if you do not confirm to me by Wednesday, April 14, 2021, that Nirvana will comply with my client's requests to (a) cease its infringing conduct in the U.S. and abroad and (b) account for its profits, I have instructions to file suit. My client is not inclined to grant any further extensions or allow any further delays.

Once again, all rights reserved.

Sincerely,

Inge De Bruyn

---

[1] Restatement of Law (Third), Foreign Relations of the United States (1987), § 421; Restatement of Law (Fourth), Foreign Relations of the United States (2018), Introductory Note to Chapter 2 ("With the significant exception of various forms of immunity, modern customary international law generally does not impose limits on jurisdiction to adjudicate"). *See also Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1095 n.10 (9th Cir. 1994).

MODO LAW, P.C. • 4218 Via Padova • Claremont, CA 91711
+1 424-832-6118 • inge.debruyn@modo-law.com
www.modo-law.com