Mark S. Lee (SBN: 94103)
RIMON, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA   90067
Telephone/Facsimile: 310.561.5776
mark.lee@rimonlaw.com

Zia F. Modabber (SBN: 137388)
Leah E.A. Solomon (SBN: 275347)
KATTEN MUCHIN ROSENENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:  310.788.4400
zia.modabber@katten.com
leah.solomon@katten.com

Attorneys for Defendant NIRVANA, L.L.C.

Attorneys for Defendants LIVE NATION MERCHANDISE LLC, MERCH TRAFFIC LLC, AND SILVA ARTISTS MANAGEMENT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOCELYN SUSAN BUNDY, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>NIRVANA, L.L.C. a Washington Limited Liability Company; LIVE NATION MERCHANDISE LLC, a Delaware Limited Liability Company; MERCH TRAFFIC LLC, a Delaware Limited Liability Company; SILVA ARTIST MANAGEMENT, LLC, a California Limited Liability Company,<br><br>        Defendants. | Case No. 2:21-cv-03621-DSF (MAAx)<br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ORDERS:**<br><br>1) **DISMISSING COMPLAINT FOR** ***FORUM NON CONVENIENS*** **(F.R.C.P. 12(B)(3); AND THE COMMON LAW); AND**<br><br>(2) **ALTERNATIVELY, DECLINING SUPPLEMENTAL JURISDICTION OVER ENGLISH AND GERMAN COPYRIGHT INFRINGEMENT CLAIMS (28 U.S.C. § 1367(C)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(Filed concurrently with Declarations of Mark S. Lee, Michael Skrein, Alexander Klett, John Silva and Joel M. Bennett) |

Date:   October 18, 2021
Time:   1:30 p.m.
Courtroom:  Courtroom 7D
The Honorable Dale S. Fischer

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on October 18, 2021, at 1:30 p.m. in the courtroom of the Honorable Dale S. Fisher, located at 350 W 1st Street, Los Angeles, CA 90012-4565, Courtroom 7D, Defendants will and hereby do move for orders: 1) dismissing the entirety of Plaintiff's complaint for *forum non conveniens*, and 2) alternatively, dismissing the English and German law copyright infringement claims in said complaint.

Said motions are made pursuant to Fed. R. Civ. Proc. 12(b)(3), 2 U.S.C. § 1367(c) and the common law on the grounds that: 1) the United Kingdom is a more appropriate forum for this suit by a British citizen claiming copyright infringement under U.S., English and German law because England is an adequate alternative forum and relevant private and public factors favor adjudicating this dispute there, and 2) alternatively, this Court should decline to exercise supplemental jurisdiction over Plaintiff's English and German copyright infringement claims because they raise complex legal issues that substantially predominate over Plaintiff's tenuous, if not frivolous, U.S. copyright infringement claims.

The motion is based upon this notice of motion and motion, the concurrently filed declarations of Mark S. Lee, Michael Skrein , Alexander Klett, John Silva and Joel M. Bennett and in support thereof as well as the exhibits submitted therewith, upon the records and pleadings submitted herein, of which the Court is respectfully requested to take judicial notice, and upon such other and further matters as may be presented at any hearing on this motion.  This motion is made following the meeting of counsel pursuant to Local Rule 7-3 that took place on July 8, 2021. All other signatories listed and on whose behalf the filing is submitted, concur in the filings'

content and have authorized the filing. Local Rule 5-4.3.4(a)(2)(i).

1   Dated:  August 9, 2021                    RIMON, P.C.

2

3

4                                   By: /s/ Mark S. Lee

5                                       Mark S. Lee
                                        RIMON, P.C.
6                                       2029 Century Park East, Suite 400N
                                        Los Angeles, CA   90067
7                                       Telephone/Facsimile: 310.561.5776
8                                       mark.lee@rimonlaw.com

9                                       Attorneys for Defendant *NIRVANA, L.L.C.*

10

11  Dated:  August 9, 2021                    KATTEN MUCHIN ROSENENMAN LLP

12

13

14                                  By: /s/ Zia F. Modabber

15                                      Zia F.  Modabber
                                        Leah E.A Solomon
16                                      KATTEN MUCHIN ROSENENMAN LLP
                                        2029 Century Park East, Suite 2600
17                                      Los Angeles, CA 90067
                                        Telephone:
18                                      zia.modabber@katten.com
19                                      leah.solomon@katten.com

20                                      Attorneys for Defendants *LIVE NATION*
21                                      *MERCHANDISE LLC, MERCH TRAFFIC*
                                        *LLC, AND SILVA ARTISTS*
22                                      *MANAGEMENT, LLC*

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    SUMMARY OF RELEVANT FACTS ....................................................... 1

    A.     Plaintiff and the Illustration at Issue. ........................................... 1

    B.     All of Plaintiff's Claims Rely on Copyright Ownership Under
English or German Law. ................................................................ 2

    C.     Facts Surrounding Creation of the Illustration. ............................. 3

    D.     U.S. Publication of the *Divine Comedy*. ..................................... 4

    E.     Defendants' Alleged Infringement. ............................................... 6

III.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ON
*FORUM NON CONVENIENS* GROUNDS. ........................................... 7

    A.     Bundy's Selection of This U.S. Forum is Entitled to Little Weight. ....... 8

    B.     England is An Adequate Alternative Forum. .................................. 8

    C.     Private Interest Factors Favor an English Forum. .......................... 9

    D.     Public Interest Factors Favor an English Forum. ......................... 13

IV.    ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFF'S
ENGLISH AND GERMAN COPYRIGHT INFRINGEMENT CLAIMS. ... 14

    A.     Plaintiff's Foreign Law Claims Require Adjudication of Complex
Foreign Law Issues. .................................................................... 15

    B.     Foreign Law Issues Substantially Predominate Over Plaintiff's
Tenuous U.S. Copyright Infringement Claims. ........................... 19

        1.     The 1949 and 1950 U.S. Publications of Sayers' *Divine
Comedy* Had to Comply with U.S. Copyright Law's
Statutory Formalities to Obtain U.S. Copyright Protection. ...... 19

        2.     The *Divine Comedy's* U.S. Publication Violated the
Manufacturing Clause of the 1909 Act. .................................... 20

        3.     The Illustration's U.S. Publication without a Copyright
Notice in the Name of Scott-Giles Injected It into the
Public Domain. ......................................................................... 21

        4.     The *Divine Comedy's* Lack of a Renewal Registration
Injected the Illustration into the Public Domain. ...................... 21

        5.     Plaintiff Has No Copyright Claim under the URAA. ................. 22

i

V.    CONCLUSION ................................................................................................25

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Ayco Farm, Inc. v. Ochoa*,
  862 F.3d 945 (9th Cir. 2017) ................................................................. 14

*Boston Telecomms. Grp. v. Wood*,
  588 F.3d 1201 (9th Cir.2009) ............................................................. 9, 13

*Daniels-Hall v. National Educ. Ass'n*,
  629 F. 3d 992 (9th Cir. 2010) ................................................................. 1

*de Borja v. Razon*,
  835 Fed. Appx. 184 (9th Cir. November 3, 2020) ................................... 8

*De Fontrune v. Tofsy*,
  838 F.3d 992 (9th Cir. 2016) ................................................................... 2

*Farr v. Bristol Farms*,
  2020 WL 6562244 (C.D. Cal. 03/05/2020) ............................................ 2

*Global Digital Media, LLC v. Pitt*,
  2014 WL 12579789 (C.D. Cal. March 27, 2014) ................................... 18

*Hayley v. Parker*,
  2002 WL 925322  (C.D. Cal. March 15, 2002) ..................................... 18

*La Cienega Music Co. v. ZZ Top*,
  53 F.3d 950 (9th Cir. 1995) ..................................................................... 6

*Lickerish, Inc. v. Alpha Media Group.*,
  2014 WL 12589641 (January 2, 2014) ................................................. 18

*Mars Inc. v. Nippon Conlux Kabushiki Kaisha*,
  825 F. Supp. 73 (D. Del. 1993) ............................................................ 18

*Neuralstem, Inc v. ReNeuron, Ltd.*,
  365 Fed. Appx. 770 (9th Cir. 2010) ........................................................ 8

*Olympia Press v. Lancer Books, Inc.*,
  267 F. Supp. 920 (S.D.N.Y.1967) ........................................................ 20

*Ranza v. Nike, Inc.*,
  793 F. 3d 1059 (9th Cir. 2015) ............................................................ 14

*Seigel v. Time Warner Inc.*,
  496 F. Supp. 2d 1111 (C.D. Cal. 2007) ............................................... 19

iii

*Societe Civile v. Renoir*,
   549 F. 3d 1182 (9th Cir. 2008) ........................................................................... 6

*Society of Lloyd's v. Blackwell*,
   127 Fed. Appx. 961 (9th Cir. 2005) ................................................................. 12

*Soc'y of Lloyd's v. Ashenden*,
   233 F.3d 473 (7th Cir.2000) ............................................................................. 13

*Soc'y of Lloyd's v. Turner*,
   303 F.3d 325 (5th Cir.2002) ............................................................................. 12

*Troll Co. v. Uneeda Doll Co.*,
   483 F.3d 150 (2d Cir. 2007) ............................................................................. 23

*Twin Books Corporation v. The Walt Disney Co.*,
   83 F. 3d 1162 (9th Cir. 1996) ............................................................................. 6

*Vivendi SA v. T-Mobile USA, Inc.*,
   586 F.3d 689 (9th Cir. 2009) ............................................................... 1, 2, 8, 14

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ........................................................................... 1

**Statutes**

17 U.S.C. § 1 .............................................................................................................. 19

17 U.S.C. § 101 .......................................................................................................... 19

17 U.S.C. § 104A(d)(2)(A) ..................................................................................... 7, 23

17 U.S.C. § 104A(d)(3) .............................................................................................. 23

17 U.S.C. § 104A(e)(2)(B) .......................................................................................... 23

17 U.S.C. § 104A(h)(4) ........................................................................................ 22, 23

17 U.S.C. § 104A(h)(6) .............................................................................................. 22

17 U.S.C. § 23 (1909) ........................................................................................... 19, 22

17 U.S.C. §§ 16, 23 .................................................................................................... 19

17 U.S.C. §§16, 22 (1909) .......................................................................................... 20

17 U.S.C. §411(a) ......................................................................................................... 2

17 U.S.C.A. § 16 (1909) ............................................................................................. 20

2 U.S.C. § 1367(c) ........................................................................................................ 2

28 U.S.C. § 1367(C) ............................................................................................... 1, 15

28 U.S.C. §16 ............................................................................................................ 5

Cal. Civ. Proc. Code   § 1716 (a)–(d) .................................................................... 12

Rules

F.R.C.P. 12(B)(3) ..................................................................................................... 1

Fed. R. Civ. Proc. 12(b)(6) ................................................................................... 19

Fed. R. Civ. Proc. 28 (b) ...................................................................................... 11

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

A British citizen asks this California Court to decide U.S., English and German copyright infringement claims that involve alleged copyright-creating conduct in England by other British citizens. Resolving the claims will require determinations of complex English and German copyright law issues based on decades-old documents and witnesses in England.  Plaintiff's U.S. copyright infringement claims, in contrast, allege infringement of a work in the public domain in the U.S. since as early as 1949.

Defendants Nirvana, L.L.C. ("Nirvana"), Live Nation Merchandise LLC ("Live Nation"), Merch Traffic LLC and Silva Artists Management (jointly, "Defendants") move to dismiss the entirety of plaintiff's complaint on the grounds of *forum non conveniens*, and alternatively move for an order declining supplemental jurisdiction over and dismissing the English and German copyright infringement claims for the reasons described below.

### II.   SUMMARY OF RELEVANT FACTS
#### A. Plaintiff and the Illustration at Issue.

Plaintiff Jocelyn Susan Bundy ("Bundy") is a U.K. citizen who claims to own the copyright in a drawing of the "Circles of Hell" she says her late grandfather C.W. Scott-Giles created. (Complaint filed April 28, 2021["Complaint"], Dkt. No. 1 herein, ¶¶ 2, 9.)[1]  She claims Scott-Giles created the "Circles of Hell" drawing (the

---

[1] On these *forum non conveniens* and supplemental jurisdiction motions, this Court can accept as true the factual allegations of Plaintiff's complaint, *Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 691 n.3 (9th Cir. 2009), but it is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n,* 629 F. 3d 992, 998 (9th Cir. 2010) (internal citations and quotations omitted).  Similarly, this Court need not accept a complaint's legal conclusions. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).

"Illustration"] to accompany Dorothy L. Sayers' English language translation of Volume 1 of Dante Alighieri's *Divine Comedy,* first published in England by Penguin Books Ltd. in 1949. (Dkt. No. 1 ¶ 17 and Ex. 2 thereto.)  Plaintiff alleges that "[a]s the sole heir of the copyright in her late grandfather C.W. Scott-Giles' works, Plaintiff Ms. Bundy is the legal owner of the copyright in the ["Circles of Hell"] Illustration." (Dkt. No. 1 ¶ 30.)

## B. All of Plaintiff's Claims Rely on Copyright Ownership Under English or German Law.

Plaintiff's Complaint does not allege a U.S. copyright registration, which is generally needed to file suit for copyright infringement under U.S. law. 17 U.S.C. §411(a). Nor does she allege that Sayers' translation of the *Divine Comedy* in which the Illustration was first published ever included a copyright notice in the name of Mr. Scott-Giles, because it did not. The exhibits attached to her Complaint instead establish that, while Mr. Scott-Giles was always credited with creating the maps and drawings in that volume, its only copyright notice is in the name of translator Dorothy L. Sayers. (Cf. Dkt. No. 1 Ex. 2, p. 6 and Ex. 6, p. 9.)

Plaintiff instead alleges that "[a]s a work created by a British citizen and first published in the United Kingdom, the Illustration is a 'foreign work' for the purposes of U.S. copyright laws[,]"  and she sues to protect that "foreign copyright-protected work." (Dkt. No. 1 ¶ 23.)  Thus, her U. S. and English law copyright infringement claims require this Court to determine whether Bundy owns the

---

Courts may consider attorney declarations on foreign law, even though those are legal rather than factual questions. *De Fontrune v. Tofsy*, 838 F.3d 992 (9th Cir. 2016). Courts also may consider declarations and other evidence relevant to *forum non conveniens* and jurisdiction motions. *Vivendi SA v. T-Mobile USA, Inc.*, supra (granting *forum non conveniens* motion based on declarations submitted with it); *Farr v. Bristol Farms*, 2020 WL 6562244 (C.D. Cal. 03/05/2020) (court considers declarations and other evidence to grant motion to decline supplemental jurisdiction over claims before it). The present motion cites Plaintiff's Complaint and provides declaration and exhibit evidence to support its motion for these reasons.

copyright in the Illustration under the foreign law that created it, namely English law. (Dkt. No. 1 ¶ 23; Declaration of Michael Skrein ["Skrein Decl."] ¶¶ 4-7.) Her German copyright infringement claim, in contrast, requires this Court to determine whether Bundy owns the German copyright at issue under German law. (Declaration of Alexander Klett ["Klett Decl."] ¶¶ 5-8.)

### C. Facts Surrounding Creation of the Illustration.

Plaintiff's complaint tersely asserts that the Illustration is "wholly original to Mr. Scott-Giles[,]" (Dkt. No. 1 ¶¶ 1, 15), but a series of letters and drawings translator Dorothy L. Sayers sent to Scott-Giles in 1946 raise doubts about Scott-Giles' contributions to and copyright ownership of the Illustration.  (Declaration of Mark S. Lee ["Lee Decl."] ¶ 7 and Ex. 1.) They show that Ms. Sayers or publisher Penguin Books Ltd. ("Penguin"): (i) engaged Mr. Scott-Giles to create the book's illustrations (Ex. 1 pp. 7, 8); (ii) agreed to pay Scott-Giles for his work, while warning him that "it won't mean much money!") (Ex. 1 p. 13); (iii) Ms. Sayers drew in pencil the originals of at least a number of and perhaps all of the drawings credited to Scott-Giles, and she engaged Scott-Giles principally because of his skill in inking and lettering Ms. Sayers' pencil drawings (Ex. 1 pp. 9, 18-21); (iv) Ms. Sayers drew in pencil the images of "Hell" on which Scott-Giles relied for his inked final drawings of "Hell" (Ex. 1 pp. 8-13, 16-18); (v) Ms. Sayers and Penguin supervised, approved, and exercised control over what Scott-Giles created and what images were used in the *Divine Comedy* (Ex. 1 pp. 8-13, 16-19);  and (vi) Ms. Sayers alone negotiated with Penguin over the drawings published in the *Divine Comedy* to which she contributed (Ex. 1 p. 20, 21). Ms. Sayers' copyright notice in her name of the entirety of the *Divine Comedy* (Complaint Ex. 6, p. 9), which necessarily includes the Illustration, is fully consistent with her personally creating, commissioning, and supervising creation of the Illustrations credited to Scott-Giles as revealed in these letters.

Copyright ownership under the English and German law that governs thus

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

will have to be decided based on the above facts, and whatever other facts and documents may be discovered from British third parties in discovery in these circumstances. Those entities, and extant relevant documents concerning these 70+ year old events, are located in England.  (Lee Decl. ¶¶ 7-12; Declaration of Joel M. Bennett ["Bennett Decl."] ¶ 5.)

**D. U.S. Publication of the *Divine Comedy*.**

Although Plaintiff's counsel previously acknowledged that the *Divine Comedy* "was published in 1949,"[2] Plaintiff's Complaint states that it was first published in England in 1949, but adds that "[o]n information and belief, there was no U.S. publication in 1949," based on Exhibit 4 to the Complaint. (Dkt. No. 1 ¶ 17 and Ex. 4 thereto.) The Complaint does not allege when the *Divine Comedy* **was** first published in the U.S. (Dkt. No. 1.)

The Complaint's exhibits indicate otherwise. The referenced Exhibit 4 not only provides no "information" to support Plaintiff's purported "belief" that there was no U.S. publication in 1949, it and another exhibit affirmatively support a 1949 U.S. publication date.  Page 6 of Exhibit 4 of Bundy's Complaint states that "[a]n American branch of Penguin Books Ltd. was established in 1939," while page 5 of that same Exhibit 4 lists "1.86 million" total book sales by Penguin in 1949 "including U.S.A.[,]" consistent with a 1949 U.S. publication date. Page 9 of Exhibit 6 to the Complaint is a copy of the copyright notice page of a U.S. paperback edition of the *Divine Comedy* which states, "first published 1949" and "Copyright 1949 by Dorothy L. Sayers[,]" indicating  a U.S. publication in 1949. See "How To Tell If A Book Is A First Edition," https://bookriot.com/first-edition/

---

[2] See Dkt. No. 106 p. 3 in *Nirvana, L.L.C. v. Marc Jacobs International L.L.C.* et al, Case No. 2:18-cv-10743-JAK-JK. (the "*Marc Jacobs*" Action). Plaintiff's counsel referenced that drawing there as she was trying to intervene in the *Marc Jacobs* action on behalf of one Robert Fisher, another plaintiff who decided to assert copyright interests in Nirvana works decades after Nirvana began exploiting them.

("The first thing you do" if you want to tell if a book is a first edition "is check the copyright date!  If the copyright date is the same as the year the book was published, then that is a good first sign…")

Other evidence supports a 1949 U.S. publication. The inner sleeve of *The Letters of Dorothy L. Sayers,* Vol. Three, states that "[w]hen her [that is, Dorothy L. Sayers'] translation of *Inferno* was published in 1949 the first issue of 50,000 copies was immediately sold out," consistent with a simultaneous "first publication" in both the U.K. and U.S. (Lee Decl. ¶ 6 and Ex. 1, p. 3.) The world's largest online cooperative of college and university libraries, known as the "World Catalog" or "OCLC" (acronym for "Online Computer Library Center"), states that the "Publisher" of the 1949 edition of the *Divine Comedy* was "Penguin Books" in "Baltimore." (Lee Decl. ¶ 12; Ex. 2.) The paperback "Penguin Classics Reprint" edition of the *Divine Comedy,* from which page 9 of Complaint Exhibit 6 was copied, was first published and has been available in the U.S. since June 30, 1950. (Lee Decl. ¶ 2; Ex. 3.) That also implies an earlier U.S. hardcover publication, because "[b]y the end of the 1940's…pretty much all paperbacks were reprints of hardcover titles."  Oliver Carlett, "A Short History of Paperbacks," *IOBA Standard,* December 6, 2001, https://www.ioba.org/standard/2001/12/a-short-history-of-paperbacks/.

These 1949 and 1950 U.S. publication dates and other admissions in the Complaint's exhibits underscore the frivolous nature of Plaintiff's U.S. copyright infringement claims, as they show publication without compliance with then-existing U.S. copyright law formalities that injected the work into the public domain in the U.S.[3]  (Complaint Exs. 2 and 6 p. 9, Dkt. No.1.)

---

[3] Among other things, they show that (i) the copies published in the U.S. were printed in England, thereby violating the "manufacturing clause" in the Copyright Act of 1909, 28 U.S.C. §16; and (ii) the Illustration was published without copyright notice in the name of alleged copyright owner Scott-Giles in the U.S. (Complaint

After Nirvana pointed out these deficiencies to Plaintiff before she filed suit. (Complaint Exs. 6, 8 and 10, Dkt. No.1), Plaintiff revised her Complaint to add the "information and belief" statement that there was "no U.S. publication" in 1949, add irrelevant case law concerning foreign publication,[4] add references to the Uruguay Round Agreements Act of 1994 ("URAA") to claim that copyright in the Illustration was "restored" by the URAA in 1996, and add the other named Defendants herein (Cf. Lee Decl. ¶ 2, Ex.  5 and Complaint ¶¶ 26, 29, and Ex. 5 thereto, Dkt. No.1.) Plaintiff also added English and German copyright infringement claims, apparently hoping those foreign law claims would make summary dismissal of her Complaint more difficult, since in 1949 those countries did not have the disqualifying copyright formalities formerly present in U.S. copyright law. (Cf. Lee Decl.  Ex. 5 and Complaint ¶¶ 61-69 and Ex. 9 p. 2, Dkt. No. 1.)

**E. Defendants' Alleged Infringement.**

Bundy's complaint alleges that Nirvana and the other Defendants (who,  as Nirvana's management company and merchandise licensee, are alleged to have facilitated merchandise sales for Nirvana) infringed her copyright in the Illustration by using it on a Nirvana t-shirt and other merchandise beginning "as far back as

---

Exhibits 2 and 6 p. 9, Dkt. No. 1.)  The *Divine Comedy* also was never registered with the Copyright Office even though it was published here, injecting it into the public domain on that basis as well under then-extant law. See Sections VI B.1-5, infra.

[4] Plaintiff cites *Twin Books Corporation v. The Walt Disney Co*., 83 F. 3d 1162, 1166-67 (9th Cir. 1996) and *Societe Civile v. Renoir,* 549 F. 3d 1182, 1186-87 (9th Cir. 2008) to "support" her claim that the Illustration remains protected by copyright in the U.S. (Dkt. No. 1 ¶ 26), but both cases address only *foreign* publication's effect on U.S. copyright protection. Id. As *Twin Books* itself recognizes, "a publication of a work in the United States without the statutory notice of copyright fell into the public domain, precluding forever any subsequent copyright protection of the published work." 83 F. 3d at 1166, citing with approval *La Cienega Music Co. v. ZZ Top*, 53 F.3d 950 (9th Cir. 1995).

1   1989." (Complaint ¶¶ 20-21, Dkt. No. 1.) Plaintiff now claims that Nirvana and the

2   other defendants infringed her rights in the Illustration in the U.S. and

3   internationally, including in England and Germany. (Complaint ¶¶ 32-39, 62-69,

4   Dkt. No. 1.) Although the *Divine Comedy* never included a copyright notice in the

5   name of Scott-Giles as described above, Plaintiff also now alleges that Nirvana's

6   use of a copyright notice on its t-shirt and "removal" of references to Ms. Scott-

7   Giles that were never on the Illustration violate the copyright management

8   provisions of the Copyright Act (Complaint ¶¶ 71-85, Dkt. No 1).

9          Other evidence confirms that Kurt Cobain of Nirvana created and Nirvana

10  began selling the t-shirt on which the "Circles of Hell" Illustration appears in 1989,

11  and has done so continuously since. (Declaration of Krist Novoselic ¶ 4-5, Dkt. No

12  100 in the *Marc Jacobs* action referenced in Plaintiff's Complaint, Dkt. No. 1 p. 7,

13  fn. 1; Declaration of John Silva (["Silva Decl."] ¶¶ 4-5.)  Defendant Nirvana did not

14  stop selling it until Nirvana received Bundy's letter complaining about that use on or

15  about February 19, 2021. (Silva Decl. ¶¶ 5-6.)  Although Nirvana rejects Bundy's

16  copyright infringement claims, after receiving that letter it decided to stop selling its

17  "Circles of Hell" t-shirt, and it so advised Bundy in writing before she filed suit.

18  (Complaint Ex. 8 p. 3; Silva Decl. ¶¶ 7-8.)  All sales of the Nirvana t-shirt have now

19  stopped. (Silva Decl. ¶¶ 7-8; Bennett Decl. ¶ 7.) That makes Bundy's present U.S.

20  copyright infringement claims against Nirvana under the URAA both premature and

21  impossible as described below.[5]  17 U.S.C. § 104A(d)(2)(A).

22  ## III.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

23         This Court has discretion to dismiss this action if it determines that (1) an

24  adequate alternative forum exists, and (2) the balance of relevant private and public

25  interest factors favors dismissal of the U.S. action, so that suit may be filed in the

26

27  _____

28  [5] See Section VI B.5, infra.

alternative forum. *Vivendi SA v. T-Mobile USA Inc*., 586 F. 3d 689, 694 (9th Cir. 2009). This Court should dismiss this action on *forum non conveniens* grounds for the following reasons.

### A.     Bundy's Selection of This U.S. Forum is Entitled to Little Weight.

Although a plaintiff's choice of forum is entitled to great weight when she sues in her home forum, it is entitled to little weight when she sues somewhere else for forum shopping purposes. ("[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice of forum commands." *Vivendi SA v. T-Mobile USA Inc*., supra, 586 F. 3d at 695; see also, *de Borja v. Razon*, 835 Fed. Appx. 184 (9th Cir. November 3, 2020) (trial court properly gave "very little deference" to Plaintiff's choice of forum "because the case lacked ties to the forum and Plaintiffs participated in forum-shopping.")

Here, Bundy's home forum is the U.K., not the U.S. She appears to have filed suit here rather than in her native England for forum shopping purposes to, inter alia, make more difficult and uncertain Defendants' ability to obtain additional evidence to further refute Plaintiff's claims of copyright ownership in the Illustration. (Dkt. No. 1) Thus, the fact that she filed suit in California is not important to the *forum non conveniens* analysis.

### B. England is An Adequate Alternative Forum.

England is U.K. citizen Bundy's home forum and provides adequate due process and legal remedies for the wrongs alleged in her complaint. Courts routinely find England to be an adequate alternative forum when deciding *forum non conveniens* motions. See, e.g., *Neuralstem, Inc v. ReNeuron, Ltd.*, 365 Fed. Appx. 770 (9th Cir. 2010) ("the district court properly found that England is an adequate alternative forum"); *Globatrac LLC v. JB Squared Ltd,* 2016 WL 90454579, *4 (C.D. Cal. 02/05/2016) (granting motion to dismiss for *forum non conveniens* because, inter alia, "England is an adequate alternative forum for Plaintiff's

claim…")

### C. Private Interest Factors Favor an English Forum.

Private interest factors to consider in evaluating a *forum non conveniens* motion include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Boston Telecomms. Grp. v. Wood,* 588 F.3d 1201, 1206–07 (9th Cir.2009)**.**  These private interest factors favor a *forum non conveniens* determination here.

**1) Residence**- At least the following parties and key witnesses reside in the U.K.:

**a) Plaintiff Bundy**- Plaintiff, a U.K. citizen, presumably will testify concerning her status as the successor-in-interest to Ms. Scott-Giles and other facts she contends supports her claim to copyright ownership of the Illustration;

**b) Penguin Books Ltd**.-*The Divine Comedy's* publisher could have information about or documentation of any written agreement between Mr. Scott-Giles and Penguin or Ms. Sayers concerning copyright and other rights concerning the Illustration*,* as well as information or documentation concerning the U.K. and U.S. publication history of *The Divine Comedy*;

**c) D**orothy L. Sayers' successor-in-interest- Ms. Sayers reportedly died in 1957, while her son and sole heir John Anthony Fleming reportedly passed away in 1984.  See https://www.sayers.org.uk/biography; https://www.wikitree.com/wiki/Sayers-795. Her successors-in-interest could have information about and/or documentation of the Sayers drawings on which Scott-Giles' drawings were based, and on any agreement between Mr. Scott-Giles and Penguin or Ms. Sayers concerning copyright and other rights in the Illustration, as well the U.K. and U.S. publication history of *The Divine Comedy.*

**d) Barbara Reynolds' successor-in-interest**-Ms. Reynolds was Dorothy L. Sayers' goddaughter, student, biographer, co-translator of the third volume of *The Divine Comedy* after Ms. Sayers' death, first president of the Dorothy L. Sayers Society, and editor of *The Letters of Dorothy L. Sayers* from which Exhibit 1 was taken. See https://www.sayers.org.uk/news-page/2015/4/29/rip-dr-barbara-reynolds?rq=Barbara%20Reynolds. She reportedly passed away in 2015. https://www.sayers.org.uk/news-page/2015/4/29/rip-dr-barbara-reynolds. Her successor-in-interest could have information about the Sayers drawings, documentation of any agreement between Mr. Scott-Giles and Penguin or Ms. Sayers concerning copyright in the Illustration, and the publication history of the *Divine Comedy*.

**e) The Dorothy L. Sayers Society**-A charity under U.K. law formed in 1976 to promote the study of the life and work of Dorothy L. Sayers. See https://www.sayers.org.uk/about-us; https://www.sayers.org.uk/contact. It published the volume of *The Letters Dorothy L. Sayers* that Barbara Reynolds edited that included the letters discussed above. (Ex. 1.) It also could have the Sayers drawings or any written agreement between Mr. Scott-Giles and Penguin or Ms. Sayers concerning copyright in the Illustration in *The Divine Comedy*.

**f) Defendant Live Nation's U.K. employees**- Defendant Live Nation Merchandise LLC ("Live Nation") handles the sales of Nirvana merchandise on a worldwide basis. (Bennett Decl. ¶¶ 3-4.)  It has an office of about 10 employees in London, at least four of whom have been directly involved in the marketing and sales of Nirvana merchandise featuring the "Circles of Hell" t-shirt in Europe, including the U.K. and Germany. Those employees include a financial director responsible for all financial aspects of Live Nation's business in the United Kingdom and Europe, and a head of sales who oversees all sales to retailers or distributors located in the United Kingdom and Germany.  (Bennett Decl. ¶ 5.) These witnesses obviously have information relevant to sales of the Nirvana t-shirt

10

in the U.K. and Germany.

    **2) Access to and Expense of Discovery**- It obviously would be easier and less expensive to obtain witness testimony and documents from British residents and entities in an English legal proceeding than it would be in this U.S. action, if it could be obtained in this action at all. Obtaining in U. S. litigation discovery from third parties in England is a difficult, time-consuming, and expensive process with an uncertain result. It requires that parties follow discovery procedures laid out in the *Hague Convention for the Taking Evidence Abroad in Civil and Commercial Matters*, a multilateral convention to which the U.S. and U.K. are both signatories. (the "*Hague Evidence Convention*.") See Fed. R. Civ. Proc. 28 (b); https://www.hcch.net/en/instruments/conventions/full-text/?cid=82.)  Under this Convention, Nirvana would first need to ask this Court to issue a Hague Evidence Convention-compliant Letter Rogatory for written testimony, and Letter of Request for documents to the Central Authority for the United Kingdom to request the taking of such evidence. Id.

    Once those Letters are obtained, Nirvana would need to initiate separate proceedings in England pursuant to the U.K's "Evidence (Proceedings in Other Jurisdictions) Act of 1975" (the "U.K. Evidence Act") to seek an order to permit the taking of  the evidence identified in the Letters. See https://www.legislation.gov.uk/ukpga/1975/34#:~:text=An%20Act%20to%20make%20new,effective%20throughout%20the%20United%20Kingdom.  (Skrein Decl. ¶.)  Nirvana could not undertake third-party discovery in England except to the extent that the English Court issues an order permitting it. (Skrein Decl. ¶¶ 47-52.)

    The nature and extent of the evidence that could be obtained through this proceeding is uncertain, because the U. K.'s Evidence Act limits the ability of a foreign litigant to obtain it as described above.

    English Courts will reject a Letter of Request that seeks general, rather than specific, disclosure of relevant documents. An English Court will only compel a

witness to produce "the particular documents specified in the order[,]" and that phrase is construed strictly; the documents sought in the Letter of Request must be described precisely and as individual documents, rather than as a type or class. (U.K. Evidence Act Sec. 2(4); *Rio Tinto Zinc Corp. v. Westinghouse Electric Corp.* [1978] A.C. 547 at 609, 635, 644; *Panayiotou v. Sony Music* [1994] Ch. 142. The taking of all such evidence is presided over by a barrister or solicitor. (CPR 34.18(1).)

In contrast, it would be simpler, faster, and less expensive to obtain evidence from British third parties in an English proceeding under the U.K.'s domestic disclosure laws and rules. (Skrein Decl. ¶ 52.)

**3) Witness Convenience at Trial.** It also would be less expensive and more convenient to bring U.K. resident witnesses to a trial in the U.K. than it would to California, if unpredictable Covid-related travel restrictions permitted travel to the U.S. for such purposes at all. Further, U.K. witnesses can be compelled to testify in England, while they cannot be compelled to travel to the U.S. for such purposes. (Lee Decl. ¶ 15.)[6]

**4) Enforceability of English Judgment**. California generally enforces foreign judgments that are issued by impartial tribunals that afford due process. Cal. Civ. Proc. Code § 1716 (a)–(d). English judgments easily meet this standard, and are routinely enforced in California for this reason. See, e.g., *Society of Lloyd's v. Blackwell*, 127 Fed. Appx. 961 (9th Cir. 2005) (English procedure comported with American standards of due process, and thus English judgments were properly enforceable under California law). Other circuits hold similarly. *See Soc'y of*

---

[6] The only significant U.S. connection to this action is that some of the Defendants reside in California, but that should not be significant to the analysis because those witnesses have nothing to do with the overriding copyright ownership issues, and they are willing to have this dispute resolved in an English court. (Silva Decl. ¶ 9.)

*Lloyd's v. Turner,* 303 F.3d 325 (5th Cir.2002); *Soc'y of Lloyd's v. Ashenden,* 233 F.3d 473 (7th Cir.2000)

### D.   Public Interest Factors Favor an English Forum.

The public interest factors related to the interests of the respective fora include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms.,* supra, 588 F.3d at 1211.

These factors also favor a finding of *forum non conveniens* here. The frivolous nature of the U.S. copyright infringement claims as described below[7] means that the local California interest in the present suit is limited, especially concerning the alleged infringements in England and Germany.  England's interest in determining the copyright ownership of a work created by one or more British subjects in the U.K. that allegedly has been infringed in the U.K. and Germany, in contrast, is significant.

A U.K. court obviously would be more familiar with the governing English copyright law that will determine the copyright ownership here. Such familiarity is especially important in this action, given the complex set of facts from which copyright ownership must be determined and the limited English case law available to aid in that determination.[8]

Relative judicial congestion favors dismissal of this action. Statistics for the Central District of California from March 2016 through March 2021 indicate that this Court has seen the number of filings, vacant judgeship months, and cases pending before it increase significantly over that period. (Lee Decl. ¶ 15; Ex. 6.) Similar statistics prepared by the House of Commons for courts in England and

---

[7] See Sections VI B.1-5, infra.

[8] See Sections VI B.1-5, infra.

1   Wales do not reveal similar consistent increases, with both upward and downward

2   caseload movement over a similar period. (Lee Decl. ¶ 16; Ex.7.)

3       Finally, the additional cost involved in conducting discovery in England for

4   this U.S. legal action favors dismissal of this action.

5       Case law affirms the propriety of a *forum non conveniens* dismissal on these

6   facts.  See *Ayco Farm, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017)(affirmed the

7   *forum non conveniens* dismissal of a California suit between a Florida-based

8   plaintiff and Mexican defendant because the crux of the dispute was in Mexico,

9   many witnesses were in Mexico, and Mexican law would likely apply);  *Ranza v.*

10  *Nike, Inc*., 793 F. 3d 1059, 1078-79 (9th Cir. 2015) (private and public factors

11  favored dismissal of an Oregon suit against an Oregon defendant by a U.S. plaintiff

12  residing in the Netherlands, because the Netherlands was a more convenient forum

13  for trial and Netherlands law would govern); *Vivendi SA v. T-Mobile USA, Inc.*, 586

14  F. 3d 689, 695-96 (9th Cir. 2009) (affirmed dismissal of a complaint by a foreign

15  plaintiff on *forum non conveniens* grounds because the foreign plaintiff engaged in

16  forum shopping and the private and public interest factors, including international

17  discovery factors, favored of dismissal).

18      This action should be dismissed under the above holdings. As in *Ranza,* this

19  foreign plaintiff's suit against local defendants should be dismissed because England

20  is a more convenient forum and English and German law will govern the most

21  important issues in the case. As in *Tyco*, the crux of the dispute is in England, many

22  witnesses are in England, and the English witnesses cannot be compelled to testify

23  at trial in the U.S. As in *Vivendi*, this foreign plaintiff is engaged in forum-shopping

24  and relevant public and private factors, including international discovery factors,

25  favor dismissal.

26  **IV.   ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFF'S**
    **ENGLISH AND GERMAN COPYRIGHT INFRINGEMENT CLAIMS.**

27  Should the Court elect to retain this action, it nevertheless should decline

28

supplemental jurisdiction over the English and German copyright infringement claims alleged in Plaintiff's Complaint. This Court may decline to exercise supplemental jurisdiction over foreign copyright infringement claims if it determines that they raise complex issues, or if it finds that the foreign law claims substantially predominate over the claims brought under U.S. law. 28 U.S.C. §1367(c). Both factors are present here as described below.

### A. Plaintiff's Foreign Law Claims Require Adjudication of Complex Foreign Law Issues.

All of Bundy's copyright infringement claims require a determination whether she owns the copyright in the Illustration under English or German law as described above. That issue is both factually and legally complex based on applicable English or German law.

In 1949, copyright law in England was governed by the Imperial Copyright Act of 1911 (the "1911 Act"), see https://www.legislation.gov.uk/ukpga/Geo5/1-2/46/enacted; Skrein Decl. ¶¶ 4-7.  Copyright ownership was determined by Section 5 of the 1911 Act. Consideration of how that statute applies to the facts surrounding creation of the Illustration gives rise to a number of issues, including but not limited to the following:

1) Section 5.1) (a) of the 1911 Act provides that "in the case of an engraving…the person by whom such plate or other original was ordered shall be the first owner of the copyright…"  Here, Mr. Scott-Giles appears to have inked and lettered Ms. Sayers' pencil drawings as described above. Given Ms. Sayers' involvement, would the printed inked drawings qualify as "engravings" and make Ms. Sayers, rather than Mr. Scott-Giles, the original copyright owner under the 1911 Act? (See Skrein Decl. ¶ 9.)

2) Similarly, could Ms. Sayers qualify as the first copyright owner of the Illustration under Section 5.1) (a) of the 1911 Act if she "ordered" it from Mr. Scott-Giles? (See Skrein Decl. ¶¶ 10-15.)

3)  Section 5.1) (b) of the 1911 Act provides that if the author was "employed" by another and created the work in the course of employment, "the person by whom the author was employed" shall own the copyright absent an agreement otherwise.  Was Mr. Scott-Giles "employed" by Ms. Sayers or Penguin, as "employment" was contemplated by that statute?

4)  Section 5.2 of the 1911 Act states that a copyright may be assigned by an agreement in writing.  Was there such a written agreement between Ms. Sayers and Mr. Scott-Giles?  Between Penguin and Mr. Scott-Giles?  If so, what does it say about copyright ownership?  (See Skrein Decl. ¶¶ 10-15.)

5)  In addition to the above, Section 6(3)(a) of the 1911 Act provides that "[i]f a name purporting to be that of the author of the work is printed or otherwise indicated thereon in the usual manner, the person whose name is so printed or indicated shall, unless the contrary is proved, be presumed to be the author of the work." Under English law, does the presence of a copyright notice in the name of Dorothy L. Sayers in the U.S. publication of the *Divine Comedy* (Dkt. No. 1 Ex. 6 p. 9) mean that Ms. Sayers is the presumptive copyright owner of the Illustration under English law?

6)  Finally, Mr. Scott-Giles and Ms. Sayers' joint activities in creating the illustration evidenced from the presently incomplete set of facts described above also creates the possibility that the Illustration is a joint work, which raises complex ownership, standing and damages issues under English law. (Skrein Decl. ¶¶ 16-21.)

Determination of the above English law copyright ownership issues is complicated by the fact that few reported decisions have addressed them, and those that have done so did not involve similar or easily analogous factual settings. See, e.g., *James Arnold & Co. v. Miafern*, [1980] R.P.C. 397 (1980) (discussing "engraving" in Section 5. 1) (a) of the 1911 Act); *Milligan v. Broadway Cinema Productions Ltd.,* 1923 S.L.T. 35 (13 December 1922) (discussing "employment" in

16

Section 5.1) (b) of the 1911 Act).

Determination of copyright ownership under the England's 1911 Act is fact-intensive under English law (Skrein Decl. ¶¶12-15). The complexity and incomplete nature of the presently understood facts, the unpredictability of what future discovery might uncover, and the lack of on-point case authority in the United Kingdom makes the questions concerning copyright ownership of the Illustration here unsettled, complex, and unpredictable under English law.

Other complex copyright issues under English law will further complicate the determination of liability and damages on the English law copyright infringement claim.  Those include issues involving equitable versus legal title in the Illustration (Skrein Decl. ¶¶ 22-27), separation of ownership interests in the Illustration (Skrein Decl. ¶¶ 28-37), liability for infringement on the facts presented (Skrein Decl. ¶28), and, given the decades of delay in asserting rights manifest in the complaint, acquiescence and laches (Skrein Decl. ¶¶ 40-45). An English court is better suited to grapple with these complex English law issues.  (Skrein Decl. ¶ 52.)

German copyright law issues are also complex here. A German court would not look to English law to determine ownership of copyright of the Illustration, but instead would determine authorship, ownership and protectability under German law. (Klett Decl. ¶¶ 5-8.) Like English law, German law provides that "[t]he person designated as the author in the usual manner on the copies of a released work…shall be regarded as the author of the work in the absence of proof to the contrary…" Section 10 of the German Copyright Act of 9 September 1965 (Federal Law Gazette I, p. 1272), viewable in official English translation at https://www.gesetze-im-internet.de/englisch_urhg/englisch_urhg.html. Does that mean that the successors-in-interest of Dorothy L. Sayers, the copyright claimant identified in the copyright notice in the U.S. edition of the *Divine Comedy*, rather than Mr. Scott-Giles, is the presumptive owner of the German copyright in the Illustration?

Other complex German copyright law issues arising from the facts present

here include: 1) the creativity and protectability of the Illustration under German copyright law; 2) the share of creative contribution between Mr. Scott-Giles and Ms. Sayers, and thus the share of entitlement plaintiff Bundy has in this matter; 3) whether and to what extent an employment relationship between Ms. Scott Giles and Ms. Sayers or Penguin may alter the rights of use and exploitation in the Illustration, as opposed to copyright ownership itself; and 4) questions regarding estoppel and the statute of limitations applicable to the wrongs alleged. (Klett Decl. ¶¶ 9-23.)  Other complex issues unique to German copyright law involving whether informal rights of use or exploitation were granted by Mr. Scott-Giles are also present. (Klett Decl. ¶¶ 24-27.)  Finally, yet other German copyright law issues involving the availability of relief to Plaintiff herein are complex and support deciding those issues in Germany.  (Klett Decl. ¶¶ 28-32.)

This Court should decline to exercise supplemental jurisdiction over Bundy's foreign copyright infringement claims in these circumstances, as case law affirms. *Global Digital Media, LLC v. Pitt*, 2014 WL 12579789 (C.D. Cal. March 27, 2014) (granting motion to dismiss Canadian and UK copyright infringement claims because they raised unsettled and complex copyright issues under those foreign laws); *Mars Inc. v. Nippon Conlux Kabushiki Kaisha,* 825 F. Supp. 73, 76 (D. Del. 1993), *aff'd sub nom. Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994) (court declined supplemental jurisdiction over Japanese patent infringement claims because they raised novel and complex issues involving substantive Japanese patent law and  the extent of discovery in Japan); *Lickerish, Inc. v. Alpha Media Group.,* 2014 WL 12589641 (January 2, 2014) (English copyright infringement claim dismissed because plaintiff's complaint gave rise to complex copyright issues under U.K. law); *Hayley v. Parker*, 2002 WL 925322, *12  (C.D. Cal. March 15, 2002) (same).

### B.   Foreign Law Issues Substantially Predominate Over Plaintiff's Tenuous U.S. Copyright Infringement Claims.

In contrast to the complex and unsettled English and German law issues involving British subjects described above, the U.S. copyright infringement allegations are easily dispensed with as described below.[9]

### 1.   The 1949 and 1950 U.S. Publications of Sayers' *Divine Comedy* Had to Comply with U.S. Copyright Law's Statutory Formalities to Obtain U.S. Copyright Protection.

In 1949 and 1950, U.S. copyright law was governed by the Copyright Act of 1909 ("1909 Act"). 17 U.S.C. § 1 et seq (1909) (repealed). To qualify for copyright protection under the 1909 Act, a work: 1) had to be "printed from type set within the limits of the United States[;]" 2) had to be published with a copyright notice by the copyright owner; and 3) had to be registered and deposited with the U.S. Copyright Office within 30 days of its U.S. printing and publication.[10] 17 U.S.C. §§ 16, 23 et seq. (1909). Publication without compliance with these statutory requirements injected a foreign work into the public domain. Id.

Even if a foreign copyright owner complied with the above statutory requirements, he or she would only acquire a 28-year term of protection from publication with notice.  17 U.S.C. § 23 (1909). A copyright owner thereafter could file a renewal registration to receive an additional 28 years of protection, but if she

---

[9] Indeed, Nirvana did not move to dismiss those claims pursuant to Fed. R. Civ. Proc. 12(b)(6) only because Plaintiff changed her complaint to omit disqualifying facts concerning the *Divine Comedy's* first U.S. publication before she filed it as described above.

[10] "Publication" means "the distribution of copies… of a work to the public by sale or other transfer of ownership…" 17 U.S.C. § 101(definition of "publication" under the Copyright Act of 1976); *Seigel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1149-50 (C.D. Cal. 2007) ("the definition for publication contained in section 101 to the 1976 Act is seen as generally codifying the meaning of the concept as developed by the case law under the 1909 Act.")

did not do so, the work was injected into the public domain 28 years after first publication with notice and registration. Id.

The Illustration within Sayer's translation of the *Divine Comedy* complied with none of those statutory requirements, and the Illustration therefore was injected into the public domain upon its U.S. publication in 1949 or 1950 as described below.

### 2. The *Divine Comedy's* U.S. Publication Violated the Manufacturing Clause of the 1909 Act.

Subject to limited exceptions that do not apply here,[11] the 1909 Act required that any English language book published in the U. S. be printed and bound within the U.S., or no copyright in the book could be obtained or enforced.  17 U.S.C.A. § 16 (1909); *Olympia Press v. Lancer Books, Inc*., 267 F. Supp. 920, 923 (S.D.N.Y.1967) (denying preliminary injunction for copyright infringement because foreign-printed work violated the manufacturing clause and its copyright was invalid); H.R. Rep. No. 1476, 94th Cong., 2d Sess. 164 (1976) (failure to comply with the manufacturing clause in the 1909 Act placed foreign-printed works in the public domain); see also, "The Manufacturing Clause: Copyright Protection to the Foreign Author," *Columbia Law Review*, vol. 50, no. 5, 1950, pp. 686–699 (manufacturing clause under the Copyright Act of 1909 the "principal barrier" to obtaining U.S. copyright protection for English language books printed abroad.)

The exhibits to Plaintiff's Complaint establish that both the U.K. and U.S. editions of Sayers' *Divine Comedy* were "made and printed in Great Britain for Penguin Books Ltd" (Dkt. No. 1 Ex. 2 p. 6,) or "[p]rinted and bound in Great

---

[11] Under the 1909 Act as amended in 1949, an English language book first printed abroad could obtain *ad interim* copyright protection by depositing one copy, with a request for *ad interim* protection, with the Copyright Office within six months of initial foreign publication. *Ad interim* protection was available for five years. 17 U.S.C. §§16, 22 (1909) This exception does not apply here because no *ad interim* request was filed with the Copyright Office. (Lee Decl. ¶¶ 5-6, Ex. 4.)

Britain" for "Penguin Books."  (Dkt. No. 1 Ex. 6 p. 9.)  That U.S. publication of foreign-printed books immediately injected Sayers' *Divine Comedy* and the Illustration within it into the public domain upon first publication in the U. S., independent of the other statutory failures described below. Thus, the Illustration fell into the public domain in 1949 or 1950, and was in the public domain in the U.S. for four decades when Kurt Cobain decided to use it as an element of the Nirvana "Circles of Hell" t-shirt in 1989.

### 3. The Illustration's U.S. Publication without a Copyright Notice in the Name of Scott-Giles Injected It into the Public Domain.

In addition to the manufacturing clause, the 1909 Act required that a work be published with a copyright notice in the name of the copyright owner as described above. And there was, in fact, a copyright notice in the name of Dorothy L. Sayers in the U.S. edition of the *Divine Comedy* as described above. (See Complaint Ex. 6 p. 9, Dkt. No. 1.)

However, that notice does not establish U.S. copyright protection for the Illustration if Ms. Sayers was not its author. It also provides no protection to Mr. Scott-Giles, because it does not give notice of any copyright owned by Mr. Scott-Giles. If Scott-Giles was the Illustration's author, the U.S. publication of the Illustration without a copyright notice in his name injected it into the public domain in 1949 or 1950.

### 4. The *Divine Comedy's* Lack of a Renewal Registration Injected the Illustration into the Public Domain.

Ms. Sayers' copyright notice, even if sufficient to provide her with a U.S. copyright in her translation of the *Divine Comedy* under the Copyright Act of 1909 (which it was not because of the manufacturing clause violation described above), could not benefit Ms. Bundy for another reason. A search of Copyright Office records reveals that no renewal registration was filed in the names of either Ms. Sayers or Mr. Scott-Giles or their heirs, as required to extend the initial 28-year term

of copyright protection under the Copyright Act of 1909. (Lee Decl. ¶¶ 5-6, Ex. 4.) This means that whatever copyright Ms. Sayers ever possessed in the *Divine Comedy* containing Mr. Scott-Giles' illustrations, and whatever claim Mr. Scott-Giles could ever have made in his illustrations in the *Divine Comedy* based on Ms. Sayers' copyright notice, ended upon expiration of the initial 28-year term of that hypothetical, non-existent copyright, injecting that work into the public domain for this additional independent reason.  17 U.S.C. § 23 (1909).

### 5.  Plaintiff Has No Copyright Claim under the URAA.

Bundy's alternative claim that even if the Illustration fell into the public domain, copyright in it was "restored" in 1996 pursuant to the URAA (Dkt. No. 1 ¶¶ 26, 29) lacks merit for two independent reasons.

First, The URAA only applies to "restored works," and its definition of "restored works" excludes "works published in the US within 30 days after its initial foreign publication." 17 U.S.C. § 104A(h)(6) (defining "restored work").  Here, evidence indicates that the U.S. publication of the *Divine Comedy* may have occurred within 30 days of its initial U.K. publication in 1949 as described above. If it did, it is specifically excluded from the URAA.  And if the URAA does not apply, the Illustration remains in the public domain in the U.S. and no copyright infringement claim can be based on it under U.S. law. Id.

Second, Bundy could not succeed on her copyright infringement claims even if she could prove her ownership and that the URAA applied, because she has not complied with the statutory prerequisites to filing suit under the URAA. Nirvana qualifies as a "reliance party" under the URAA  because it has continuously used the Illustration on the Nirvana t-shirt since 1989, years before the enactment of the URAA.[12] 17 U.S.C. § 104A(h)(4).  A URAA copyright infringement action

---

[12] More precisely, Defendant Nirvana, L.L.C.  and its predecessors Nirvana Inc. and the Nirvana partnership continuously exploited that merchandise beginning in 1989.

involving the Illustration can only be commenced against a "reliance party" like Nirvana after a Notice of Intent to Enforce the copyright in the Illustration ("NIE") has either been filed with the Copyright Office or served on Nirvana. 17 U.S.C. § 104A(h)(4).

Bundy has never filed such an NIE with the Copyright Office. (Lee Decl. ¶¶ 5-6 and Ex. 4.) Bundy's February 19, 2021 demand letter does not qualify as an NIE because it does not include all of the information the statute requires, cf. Complaint Ex. 3 and 17 U.S.C. § 104A(e)(2)(B), but Bundy's complaint would be improper even if it did. Under the URAA, a restored copyright owner must wait twelve months after serving an NIE to file suit based on the restored copyright, and then can only recover for infringements that occur after that twelve-month period. 17 U.S.C. § 104A(d)(2)(A).[13] Thus, if Bundy's February 19, 2021, letter qualified as an NIE, Bundy could only file suit and could only recover damages for infringements that occurred after February 19, 2022.[14]

_____

(Silva Decl. ¶¶1, 4-6.)  As a successor who maintained continuous sales begun by its predecessors, Nirvana qualifies as a "reliance party" under the URAA. See *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158-160 (2d Cir. 2007) (successor entity could acquire "reliance party" status if it continued sales of allegedly infringing goods begun by its predecessor).

[13] Further, a copyright owner can ***never*** sue for copyright infringement against the creators of "existing derivative works" like Nirvana, and can only seek reasonable compensation for uses that continue more than 12 months after service of an NIE. 17 U.S.C. § 104A(d)(3).  The Nirvana "Circles of Hell" t-shirt obviously is a derivative work consisting of an original combination of the Nirvana name, the "Circles of Hell" image, and original text on the back. (Cf. Complaint ¶ 20 and Ex. 1 thereto.) However, this Court need not decide that issue, since Nirvana elected to stop sales within twelve months as permitted by 17 U.S.C. § 104A(d)(2)(A), and therefore is immune from liability under the URAA.

[14] Plaintiff's "copyright management information" claims would also be barred for the following independent reasons:  1) there is nothing improper in Nirvana claiming copyright in a derivative t-shirt that included a public domain image; 2) the Scott-Giles references in the *Divine Comedy* were not copyright references because copyright was instead always claimed by Dorothy L. Sayers; and 3) the Illustration

1    Here, Bundy's U.S. copyright infringement complaint self-evidently fails to

2  comply with those provisions. Bundy's April 2021 Complaint was filed less than

3  three months after she sent her February 2021 cease-and-desist letter, and seeks to

4  recover for alleged infringements occurring less than twelve months after she sent

5  her February 2021 "NIE."  Indeed, she alleges infringements occurring years before

6  she sent  her arguable NIE to Nirvana, beginning "as far back as 1989." (Dkt. No. 1

7  ¶ 20-21.) Thus, her U.S. copyright infringement claims are premature, and seek

8  damages barred by the URAA. (Cf. Complaint face page and Complaint Ex. 3, Dkt.

9  No. 1.)

10    Finally, Nirvana's actions have forever barred Bundy's URAA-based claims

11  under the URAA's own provisions. Nirvana elected to cease distribution of the

12  Nirvana "Circles of Hell" t-shirt for business reasons as described above, and all

13  sales were stopped before Defendants filed this motion, less than six months after

14  Bundy's February 19, 2021 letter. (Dkt. No. 1 Ex. 10; Silva Decl. ¶¶ 7-8; Bennett

15  Decl. ¶ 7.) As under the URAA Bundy can recover only for infringing activity

16  beginning twelve months after February 2021, that is, February 2022, and as

17  Defendants stopped all allegedly infringing uses of the Illustration more than six

18  months before the date when liability can begin, Defendants can never be liable for

19  copyright infringement of the Illustration, and U. S. copyright infringement claims

20  can never be asserted against them, under the URAA.  Plaintiff's URAA-based

21  copyright infringement claims are not only premature, they are literally, impossible.

22    Absent viable U.S. copyright infringement claims, Bundy's English and

23  German copyright infringement claims substantially predominate over her frivolous

24  U.S. copyright infringement claims, and this Court should decline supplemental

25  jurisdiction over what is ultimately a foreign dispute.

26

27  itself never included a copyright notice, and none was removed from it.

28

## V.  CONCLUSION

Plaintiff's complaint should be dismissed, or alternatively, Plaintiff's English and German law copyright infringement claims should be dismissed, for the reasons described above.

Dated:  August 9, 2021                    RIMON, P.C.


By: /s/ Mark S. Lee
   Mark S. Lee
   RIMON, P.C.
   2029 Century Park East, Suite 400N
   Los Angeles, CA   90067
   Telephone/Facsimile: 310.561.5776
   mark.lee@rimonlaw.com

   Attorneys for Defendant *NIRVANA, L.L.C.*
   Mark Lee

Dated:  August 9, 2021                    KATTEN MUCHIN ROSENENMAN LLP


By: /s/ Zia F. Modabber
   Zia F.  Modabber
   Leah E.A Solomon
   KATTEN MUCHIN ROSENENMAN LLP
   2029 Century Park East, Suite 2600
   Los Angeles, CA 90067
   Telephone:  310.788.4400
   zia.modabber@katten.com
   leah.solomon@katten.com

   Attorneys for Defendants *LIVE NATION MERCHANDISE LLC, MERCH TRAFFIC LLC, AND SILVA ARTISTS MANAGEMENT, LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-4(a)(2)(i), I, Mark S. Lee, attest that concurrence in the filing of this document has been obtained.

/s/ Mark S. Lee

Mark s. Lee

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS