Inge De Bruyn (SBN 327912)
inge.debruyn@modo-law.com
MODO LAW, P.C.
4218 Via Padova
Claremont, CA 91711
Telephone: + 1 323-983-2188
Facsimile: +1 323-693-0881

*Attorney for Plaintiff,*
*Jocelyn Susan Bundy*

Mark S. Lee (SBN 94103)
mark.lee@rimonlaw.com
RIMON P.C.
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone: +1 310-361-5776

*Attorney for Defendant Nirvana L.L.C.*

Zia F. Modabber (SBN 137388)
zia.modabber@katten.com
Leah E.A. Solomon (SBN 275347)
leah.solomon@katten.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: + 1 310-788-4400
Facsimile: +1 310-788-4471

*Attorneys for Defendants Live Nation*
*Merchandise, LLC, Merch Traffic LLC, and*
*Silva Artist Management, LLC.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOCELYN SUSAN BUNDY, an individual,<br><br>    Plaintiff.<br><br>    vs.<br><br>NIRVANA L.L.C., a Washington Limited Liability Company; LIVE NATION MERCHANDISE, LLC, a Delaware Limited Liability Company; MERCH TRAFFIC LLC, a Delaware Limited Liability Company; SILVA ARTIST MANAGEMENT, LLC, a California Limited Liability Company,<br><br>    Defendants. | Case No. 2:21-cv-03621-DSF-MAA<br><br>**JOINT RULE 26(f) REPORT**<br><br>The Honorable Dale S. Fischer<br><br>**Scheduling Conference:**<br><br>Date:   September 13, 2021<br>Time:   11:00 am<br><br>Courtroom: 7D |

Pursuant to Federal Rule of Civil Procedure 26(f), Central District Local Rule 26-1, this Court's Standing Order and the August 10, 2021 Order Setting Scheduling Conference, on August 23, 2021, the following counsel for the parties met and conferred via videoconference concerning the topics outlined in this Joint Rule 26(f) Report and discovery plan:

- Inge De Bruyn, counsel for Plaintiff Jocelyn Susan Bundy ("Plaintiff")
- Mark S. Lee, counsel for Defendant Nirvana L.L.C.
- Leah E.A. Solomon, counsel for Defendants Merch Traffic LLC, Live Nation Merchandise, LLC, and Silva Artist Management, LLC (collectively "Defendants")

**A.  STATEMENT OF THE CASE**

    **1.  Plaintiff's contentions**

This case concerns the infringement by Defendants of the copyright in an illustration created by British citizen C.W. Scott-Giles and first published in the United Kingdom in 1949 (the "Illustration"). Specifically, Plaintiff claims that Defendants created and exploited unauthorized merchandise products depicting an image that is virtually identical to the Illustration, and licensed third parties around the world to do the same. Plaintiff also contends that Defendants attached false copyright notices to the Illustration, identifying Nirvana as its owner, in violation of 17 U.S.C. § 1202. Plaintiff alleges that she is the granddaughter and sole heir of C.W. Scott-Giles and now owns and controls the copyright in the Illustration.

Plaintiff contends that, for purposes of U.S. copyright law, the Illustration is a foreign work and that, under governing Ninth Circuit precedent, the Illustration as a foreign work never entered the U.S. public domain for failure to comply with the formalities imposed by the 1909 Copyright Act. Plaintiff further contends that, even if it had, copyright in it would have automatically been restored by the 1994 Uruguay Round Agreements Act ("URAA"), as reflected in 17 U.S.C. § 104A.

Plaintiff refutes Defendants' allegations that there was a simultaneous publication of the Illustration in the United States in 1949 and/or that they qualify as reliance parties under 17 U.S.C. § 104A. Plaintiff contends that none of the Defendants or their alleged predecessors-in-right existed on the date on which reliance status could have been acquired. Plaintiff also contends that Defendants did not act in reliance on the alleged public domain status of the work but on false claims of authorship and ownership, as evidenced by the false copyright notices affixed to the Illustration and Defendants' concurrent exploitation of infringing products in territories where the Illustration was admittedly never ejected into the public domain. Plaintiff also refutes Defendants' allegation that the infringing products are derivative works and that, as such, Defendants were entitled to affix the said copyright notices to the Illustration.

## 2.  Defendants' contentions

Plaintiff alleges copyright infringement of an Illustration that had been in the public domain in the U.S. for 40 years when Defendants began using it as an element of a t-shirt in 1989. A British citizen, Plaintiff asks this California Court to decide U.S., English and German copyright infringement claims that involve alleged copyright-creating conduct in England by other British citizens in the 1940s. Resolving the claims will require determinations of complex English and German copyright law issues based on decades-old documents and witnesses in England.

Defendants have moved to dismiss Plaintiff's complaint on *forum non coveniens* grounds, and alternatively have moved to dismiss the English and German copyright infringement claims on the grounds that they raise complex foreign law issues that predominate over the U.S. infringement claims, and thus are more properly resolved in a foreign court.

## B.  SUBJECT MATTER JURISDICTION

Plaintiff's main claims for U.S. copyright infringement and violation of the

integrity of copyright management information arise under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*). Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). The Court also has discretion to exercise supplemental jurisdiction over claims arising under the copyright laws of England and Germany pursuant to 28 U.S.C. § 1367(a); Defendants have asked this Court to exercise its discretion to decline supplemental jurisdiction for the reasons stated in a pending motion to dismiss.

### C. LEGAL ISSUES

#### 1. Plaintiff's legal issues

Plaintiff's key legal issues are:

- Whether Plaintiff has an enforceable copyright in the Illustration under U.S. copyright law.

- Whether Defendants are directly and/or secondarily liable under 17 U.S.C. § 501 for infringing Plaintiff's copyright in the Illustration by creating, manufacturing, marketing, selling, and distributing merchandise products in the U.S. and abroad containing images virtually identical to the Illustration, and by licensing and inciting third parties to do the same.

- Whether Defendants are liable for violations of 17 U.S.C. § 1202 concerning the integrity of copyright management information by, *inter alia*, affixing copyright notices to the Illustration that identify Nirvana as the owner of the Illustration and/or by instructing third parties to do the same.

- If Defendants are found liable, whether their conduct was willful, and the type and amount of damages that Plaintiff is entitled to.

- Whether Plaintiff is also entitled to damages under U.S. law for Defendants' infringing conduct abroad.

- If no remedy is available under U.S. law for Defendants' conduct

abroad, whether Defendants are liable for copyright infringement under U.K. and German copyright laws for their activities in England and Germany respectively.

- If Defendants are found liable for copyright infringement under U.K. and German copyright laws, the type and amount of damages that Plaintiff is entitled to under U.K. and German law respectively.

The parties agree that, for the purposes of applying U.S. copyright law, copyright ownership needs to be established under U.K. law. Plaintiff does not agree with Defendants' contention that this is a difficult or particularly complex issue.

**2. <u>Defendants' legal issues</u>**

- Whether copyright in the contents of the book in which the Illustration at issue was first published, namely Dorothy L. Sayers' English language translation of Dante Alighieri's *The Divine Comedy*, was governed by the Copyright Act of 1909, 17 U.S.C. § 1, et seq. (1909) (the "1909 Act"), when it was first published in the U.S. in 1949 or 1950.

- Whether *The Divine Comedy* had to be "printed from type set within the limits of the United States" to qualify for U.S. copyright protection when it was first published in the U.S. 17 U.S.C. §§ 16, 22 (1909).

- Whether *The Divine Comedy* was injected into the public domain in the United States when it was first published here because the copies sold were printed in England. 17 U.S.C. §§ 16, 22 (1909).

- Whether *The Divine Comedy* had to include a copyright notice in the name of the copyright owner to qualify for copyright protection when it was first published in the United States. 17 U.S.C. § 23 (1909).

- Whether *The Divine Comedy's* lack of a copyright notice in the name C.W. Scott-Giles, Plaintiff's alleged grandfather, when it was first published in the United States injected the Illustration at issue into the public domain.

- Whether, under the 1909 Act, a copyright owner had to file a renewal registration 28 years after first publication to receive additional copyright protection. 17 U.S.C. § 23 (1909).

- Whether the lack of a renewal registration for *The Divine Comedy* injected it into the public domain. 17 U.S.C. § 23 (1909).

- Whether U.S. copyright in *The Divine Comedy* was "restored" in 1996 pursuant to the Uruguay Round Agreements Act ("URAA"), 108 Stat. 4809, codified in part at 17 U.S.C. § 104A.

- Whether the U.S. publication of *The Divine Comedy* occurred within 30 days of its initial U.K. publication in 1949, and is therefore specifically excluded from the URAA. 17 U.S.C. § 104A(h)(6).

- Whether  Defendants qualify as "reliance parties" under the URAA because  Nirvana has continuously used the Illustration on the Nirvana t-shirt since 1989, years before the enactment of the URAA. 17 U.S.C. § 104A(h)(4).

- Whether a URAA copyright infringement action involving the Illustration can only be commenced against a "reliance party" after a Notice of Intent to Enforce the copyright in the Illustration ("NIE") has either been filed with the Copyright Office or served on Defendants. 17 U.S.C. § 104A(h)(4).

- Whether, under the URAA, a restored copyright owner must wait twelve months after serving an NIE to file suit based on the restored copyright. 17 U.S.C. § 104A(d)(2)(A).

- Whether, under the URAA, a restored copyright owner can only recover for infringements that occurs after that twelve-month period. 17 U.S.C. § 104A(d)(2)(A).

- Whether the lack of restoration of any copyright in *The Divine Comedy*, Defendants' status as reliance parties, the lack of an NIE by Plaintiff, the failure to wait 12 months after filing or serving an NIE, and/or Nirvana's election to stop all sales of the allegedly infringing Illustration less than 12 months after receiving notice of Plaintiff's intent to claim copyright in the Illustration forever bars and makes impossible Plaintiff's claim under the URAA. 17 U.S.C. § 104A(d)(2)(A).

- Whether, in 1949 when *The Divine Comedy* was first published in England, copyright law in England was governed by the Imperial Copyright Act of 1911 (the "1911 Act").

- Whether *The Divine Comedy*'s translator Dorothy L. Sayers, rather than Plaintiff's grandfather C.W. Scott-Giles, is the original copyright owner of the Illustration under the 1911 Act given her involvement in creating pencil drawings of the illustrations within it, and C.W. Scott-Giles' apparent inking and lettering of Ms. Sayers' drawings, under Section 5.1) (a) of the 1911 Act.

- Whether Ms. Sayers qualifies as the first copyright owner of the Illustration under Section 5.1) (a) of the 1911 Act if she "ordered" it from Mr. Scott-Giles.

- Whether Mr. Scott-Giles was "employed" by Ms. Sayers or by publisher Penguin Books Ltd. ("Penguin"), as "employment" was contemplated by Section 5.1) (b) of the 1911 Act, and thus whether Ms. Sayers or Penguin was the original copyright owner of the Illustration under that provision.

- Whether there was a written agreement between Penguin or Ms. Sayers, on the one hand, and Mr. Scott-Giles, on the other hand, that assigned copyright in the Illustration to Penguin or Ms. Sayers as contemplated by Section 5.2 of the 1911 Act.

- Whether the presence of a copyright notice in the name of Dorothy L. Sayers on the first U.S. edition of *The Divine Comedy* means that Ms. Sayers, rather than Mr. Scott-Giles, is presumed to be the first copyright owner under Section 6(3)(a) of the 1911 Act.

- Whether Mr. Scott-Giles and Ms. Sayers' joint activities in creating the illustration evidenced from the presently incomplete set of facts described above means the Illustration is a joint work under the 1911 Act.

- Whether and how issues of equitable versus legal title, separation of ownership interests in the Illustration, liability, acquiescence and laches under English law affect Plaintiff's ownership of the Illustration under English law, which Plaintiff admits determines the question of copyright ownership under both English and U.S. law, and thus Plaintiff's standing to allege copyright infringement in this action.

- Whether copyright ownership in the Illustration for purposes of Plaintiff's German copyright infringement claim would be determined by German law.

- Whether, under German law, the presence of a copyright notice in the name of Dorothy L. Sayers in the first U.S. edition of *The Divine Comedy* means that the successor(s)-in-interest to Dorothy L. Sayers, rather than Plaintiff, is/are the first copyright owner(s) pursuant Section 10 of the German Copyright Act of 9 September 1965.

- ▪ Whether Mr. Scott-Giles' apparent inking and lettering of pencil drawings made by Ms. Sayers are sufficiently creative to be protectable under German copyright law.
- ▪ Whether and to what extent an employment relationship between Mr. Scott-Giles and Ms. Sayers or Penguin may alter the rights of use and exploitation in the Illustration, as opposed to copyright ownership itself, under the German Copyright Act of 1965.
- ▪ Whether and to what extent the German doctrine of estoppel, or Germany's statute of limitations, may affect Plaintiff's claims of ownership or ability to recover for infringement under German law.
- ▪ Assuming arguendo that Mr. Scott-Giles qualified as the first copyright owner under German law, whether he granted informal rights of use or exploitation that are unique to German law to Ms. Sayers or Penguin.
- ▪ Whether, on the facts presented, Plaintiff can recover any damages under German law.

**D.  PARTIES, EVIDENCE, ETC.**

**1.  Parties**

The presently identified parties are:

- Plaintiff Jocelyn Susan Bundy, an individual;
- Defendant Nirvana, L.L.C.;
- Defendant Silva Artist Management, LLC;
- Defendant Live Nation Merchandise, LLC;
- Defendant Merch Traffic LLC.

Plaintiff may wish to move to add additional defendants should discovery reveal the involvement of currently unknown parties in the chain of infringement

of the Illustration. It is likely an initial round of discovery will need to be obtained to discern these defendants' identities.

Defendants reserve the right to object to Plaintiff's proposed additions.

## 2.  Interested parties

For conflict purposes, Defendants identify the following individuals and entities who have a financial interest in one or more Defendants (but which includes persons and entities who have no involvement in this dispute):

- The owners of Defendant Nirvana, LLC, which are David Grohl, Krist Novoselic and The End of Music LLC.
- Courtney Love Cobain and Frances Bean Cobain, who own The End of Music LLC;
- John Silva, who owns Defendant Silva Artist Management, LLC;
- Merch Nation Holdings, LLC, the parent of Defendants Live Nation Merchandise, LLC and Merch Traffic LLC;
- Live Nation Worldwide, Inc., a parent of Merch Nation Holdings, LLC;
- Live Nation Entertainment, Inc., a publicly held corporation, which is the parent of Live Nation Worldwide, Inc.;
- Liberty Media Corporation, a publicly held corporation, which owns more than ten percent of the outstanding stock of Live Nation Entertainment, Inc.;
- Merch Holdings LLC, which owns an interest in Merch Nation Holdings, LLC;
- Thomas Bennett, who owns an interest in Merch Holdings LLC;
- Coran Capshaw, who owns an interest in Merch Holdings LLC.

## 3.  Percipient Witnesses

Plaintiff anticipates deposition testimony from the following witnesses:

- John Silva, owner of Silva Artist Management, who Defendants have

identified as a person with knowledge about, *inter alia*, the creation and exploitation in the U.S. and abroad of the allegedly infringing products and the individuals and entities involved therein.

- Joel Bennett, the Vice-President – Finance of Live Nation Worldwide, Inc., who Defendants have identified as a person with knowledge about, *inter alia*, (a) an alleged agreement between Nirvana and Live Nation Merchandise concerning the exploitation of the Illustration, (b) the involvement of Merch Traffic in the alleged infringement, (c) the profits made by Live Nation Merchandise and Merch Traffic from the alleged infringement in the U.S. and abroad, and (d) the third parties that were licensed and/or instructed by Defendants to create, manufacture, sell, and distribute the infringing products in the U.S. and abroad.

- Each Defendant's person most knowledgeable about any affirmative defenses that each defendant intends to raise.

- Each Defendant's person most knowledgeable about the gross profits that that defendant and any affiliated third parties made from the alleged infringement in the U.S. and abroad.

Plaintiff believes that all these witnesses are based in the U.S. and even in this district. Plaintiff does not anticipate seeking deposition testimony from any foreign-based witnesses.

Defendants anticipate the following witnesses, all of whom are located in England:

**a) Plaintiff Bundy** - Her status as the successor-in-interest to Mr. Scott-Giles and other facts she contends support her claim to copyright ownership of the Illustration;

**b) Penguin Books Ltd**. - Information about or documentation of any written agreement between Mr. Scott-Giles, on the one hand, and Penguin or Ms. Sayers, on the other hand, concerning copyright and other rights concerning the

Illustration, as well as information or documentation concerning the U.K. and U.S. publication history of *The Divine Comedy*;

      **c) D**orothy L. Sayers' successor-in-interest** - Information about and/or documentation of the Sayers drawings on which Mr. Scott-Giles' drawings were based, and on any agreement between Mr. Scott-Giles and Penguin or Ms. Sayers concerning copyright and other rights in the Illustration, as well the U.K. and U.S. publication history of *The Divine Comedy.*

      **d) Barbara Reynolds' successor-in-interest[1]** - Information about the Sayers drawings, documentation of any agreement between Mr. Scott-Giles and Penguin or Ms. Sayers concerning copyright in the Illustration, and the publication history of *The Divine Comedy*.

      **e) The Dorothy L. Sayers Society[2]** - Documentation concerning the Sayers drawings or any written agreement between Mr. Scott-Giles and Penguin or Ms. Sayers concerning copyright in the Illustration in *The Divine Comedy*.

      **f) Defendant Live Nation's U.K. employees** - Information concerning sales in the U.K. and Germany of Nirvana merchandise featuring the "Vestibule" design that Plaintiff alleges infringes on the Illustration.

    **4.**  **Key Documents**

Key documents already identified by <u>Plaintiff</u> are:

A. The following exhibits to Plaintiff's Complaint: (1) the original dyeline print of the Illustration made by C.W. Scott-Giles; (2) a copy of the first

---

[1] Ms. Reynolds was Dorothy L. Sayers' goddaughter, student, biographer, co-translator of the third volume of *The Divine Comedy* after Ms. Sayers' death, first president of the Dorothy L. Sayers Society, and editor of The Letters of Dorothy L. Sayers from which Exhibit 1 to Defendants' motion to dismiss was taken. *See* https://www.sayers.org.uk/news-page/2015/4/29/rip-dr-barbara-reynolds?rq=Barbara%20Reynolds. She reportedly passed away in 2015. https://www.sayers.org.uk/news-page/2015/4/29/rip-dr-barbara-reynolds.

[2] The Dorothy L. Sayers Society is a charity under U.K. law formed in 1976 to promote the study of the life and work of Dorothy L. Sayers. *See* https://www.sayers.org.uk/about-us; https://www.sayers.org.uk/contact. It published the volume of The Letters of Dorothy L. Sayers that Barbara Reynolds edited.

edition of Dorothy L. Sayers' translation *The Divine Comedy – Part I: Hell*, published in England in 1949, containing the Illustration; (3) a copy of the Mark Musa's translation *The Divine Comedy – Vol. I: Inferno*, published in the U.S. in 1984, containing the version of the Illustration exploited by Defendants; (4) a copy of the book *The Penguin Story* showing there was no publication of the Illustration in the U.S. in 1949; (5) Plaintiff's cease-and-desist letters to Defendants and all further correspondence between Plaintiff's counsel and Defendants' counsel prior to the commencement of this action.

B. The probate documents showing Plaintiff's status as the sole successor-in-interest to C.W. Scott-Giles' estate, as disclosed to Defendants on April 9, 2021.

Plaintiff anticipates that further key evidence will include (1) additional documentation confirming Plaintiff's title to the copyright in the Illustration, (2) additional documentation confirming that the Illustration is a foreign work for the purposes of U.S. copyright law, (3) additional documentation that refutes Defendants' anticipated affirmative defense that the Illustration is in the U.S. public domain and/or that they qualify as reliance parties under 17 U.S.C. § 104A, (4) Defendants' agreements, correspondence and other documents concerning the exploitation of the Illustration, (5) any "style guides" and similar instructions that Defendants gave third parties with respect to the use of the Illustration, the creation of new designs based on the Illustration, and the copyright notices attached thereto, (6) the declarations of John Silva and Krist Novoselic referenced in Defendants' motion to dismiss for *forum non conveniens* showing misattribution of the Illustration to Kurt Cobain, (7) documents evidencing Defendants' profits made from the allegedly infringing products.

Defendants are presently aware of the following documents that are relevant to this action:

1) the documents attached as exhibits to the motion to dismiss presently pending before this Court, including a) letters between Dorothy L. Sayers and C.W. Scott-Giles describing creation of the Illustration at issue; b) a World Catalog Listing that states *The Divine Comedy* was first published by Penguin in Baltimore in 1949; c) an Amazon.com listing that states that the paperback edition of *The Divine Comedy* was published in the U.S. on June 30, 1950; d) a copyright search report summarizing Copyright Office records concerning *The Divine Comedy* and noting that no original or renewal registration was filed for it; e) draft complaint prepared by Plaintiff herein; f) other Copyright Office summaries generated by the Copyright Office's online database; and g) CVs of English and German copyright law experts who submitted declarations herein.

2) Defendants are also aware of the following documents that are relevant to the issues raised by Plaintiff's complaint and are, to the best of Defendants' knowledge and belief, located primarily in England: a) any written agreement or agreements between Mr. Scott-Giles, on the one hand, and Penguin or Ms. Sayers, on the other hand, concerning copyright and other rights in the Illustration; b) documentation of the Dorothy L. Sayers drawings on which Mr. Scott-Giles' drawings were based; and c) documentation concerning the U.K. and U.S. publication history of *The Divine Comedy.*

E.  **DAMAGES**

1.  **Plaintiff's contentions**

Plaintiff believes that she is entitled to actual damages, including but not limited to Defendants' profits, for the unauthorized exploitation of the Illustration or images substantially similar thereto in the U.S. and abroad, to statutory damages and attorneys' fees for Defendants' violations of 17 U.S.C. § 1202, as well as to

any other relief that the Court may deem proper, such as permanent injunctive relief, pre-judgment interest, litigation costs, and punitive damages.

Plaintiff cannot state a specific damage amount at this time, because she has not yet obtained evidence showing the quantity of products created, produced, marketed, and sold by Defendants, or the profits made from the infringement, either in the U.S. or abroad.

### 2.   Defendants' contentions

Defendants believe Plaintiff is entitled to no damages on her U.S. copyright infringement claims because: 1) the Illustration at issue has at all times been in the public domain in the U.S.; 2) copyright in the Illustration was not and could not be restored under the URAA; and 3) Defendants qualify as "Reliance Parties" under the URAA, from whom damages can only be recovered for alleged infringements occurring 12 months after Plaintiff files and serves an NIE that complies with the URAA. Defendants stopped all sales containing the Illustration before expiration of that 12-month period, making any recovery from them impossible.

Defendants also believe Plaintiff is entitled to no damages on her English and German copyright infringement claims because she cannot prove copyright ownership or cognizable damages under applicable English and German law, and because her claims are barred by applicable statutes of limitations.

### F.   INSURANCE

### 1.   Plaintiff's contentions

Plaintiff does not have insurance coverage for the claims at issue.

### 2.   Defendants' contentions

American International Group Inc. has accepted coverage of this matter on behalf of defendants Live Nation Merchandise, LLC and Merch Traffic LLC, subject to a $2.5 million self-insured retention ("SIR").

//

//

### G. **MOTIONS**

#### 1. **Plaintiff's contentions**

Plaintiff may wish to move to add additional defendants should discovery reveal the involvement of currently unknown parties in the chain of infringement of Plaintiff's Illustration or other parties that profited therefrom. It is likely that an initial round of discovery will need to be obtained in order to discern the identities of these defendants.

Plaintiff also anticipates filing a Motion for Partial Summary Judgment on the issues of Defendants' liability for copyright infringement under 17 U.S.C. § 501 and for violation of the integrity of copyright management information under 17 U.S.C. § 1202.

#### 2. **Defendants' contentions**

Defendants have filed a motion asking this Court to dismiss the Complaint for *forum non conveniens* or, in the alternative, to decline supplemental jurisdiction over Plaintiff's copyright infringement claims under English and German law. That motion is currently being briefed and is scheduled for hearing on October 18, 2021.

Should this court retain this action or the U.S. claims within it, Defendants anticipate filing motions for summary or partial summary judgment on those claims.

### H. **STATUS OF DISCOVERY**

The parties have not yet commenced formal discovery. However, Plaintiff has already disclosed many of the key documents on which her allegations are based during pre-litigation communications and as exhibits to her Complaint. Defendants have already disclosed key documents on which some of their defenses are based in the motion to dismiss filed with this Court.

### I. **DISCOVERY PLAN**

The parties agree to conduct discovery to the full extent allowed under the Federal Rules of Civil Procedure, without modification thereto, including the

taking of depositions, the propounding of interrogatories, requests for admissions, and requests for documents. The parties also agree to conduct international discovery pursuant to the Hague Convention for the Taking of Evidence Abroad and the laws of the relevant foreign jurisdictions in which such discovery is sought, to the extent necessary.  However, nothing in this joint report impairs the right of any party to seek departures from the Federal Rules or Local Rules upon a showing of good cause.

The parties do not believe that discovery should be conducted in phases, or otherwise be limited. However, Defendants believe that no international discovery should commence before the Court has ruled on their pending motion to dismiss on *forum non conveniens* grounds.

## 1.  Plaintiff's anticipated discovery topics

Plaintiff, without prejudice to her rights to seek discovery on any relevant issue, contemplates seeking discovery concerning her copyright infringement claims and her claim under 17 U.S.C. § 1202 and Defendants' defenses to those claims, including but not limited to:

- The circumstances surrounding Defendants' creation of the allegedly infringing products.
- Defendants' access to and knowledge of Plaintiff's Illustration before or around the time that Defendants started creating and exploiting the allegedly infringing products.
- Defendants' distribution and sales of the allegedly infringing products in the U.S. and abroad, including the methods of distribution and sale and the persons to whom Defendants have distributed and sold the allegedly infringing products in the U.S. and abroad.
- Defendants' profits derived from sales of the allegedly infringing products in the U.S. and abroad.
- Any agreements between the Defendants and with any third parties

relating to the creation and/or exploitation of allegedly infringing products.

- Communications with third parties concerning the creation and/or exploitation of allegedly infringing products.

- The individuals responsible for Defendants' allegedly infringing conduct.

- The basis for each of Defendants' affirmative defenses in this case.

## 2.  **Defendants' anticipated discovery topics**

- C.W. Scott-Giles's status as the first copyright owner of the Illustration at issue, and Plaintiff's status as the successor-in-interest to C.W. Scott-Giles, and any efforts he made to establish or protect his alleged copyright in the Illustration under U.S. law.

- When *The* Divine *Comedy* was first published in the U.S., England and Germany.

- The circumstances surrounding the creation of the Illustration, including but not limited to the extent of *The Divine Comedy's* translator Dorothy L. Sayers' and C.W. Scott-Giles' respective involvement in the creation of the Illustration; whether Mr. Scott-Giles was employed  by Ms. Sayers or Penguin in connection with his involvement in the creation of the Illustration under English law; whether there was a written agreement between Penguin or Ms. Sayers and Mr. Scott-Giles that assigned copyright in the Illustration to Penguin or Ms. Sayers; whether and to what extent C.W. Scott-Giles does or does not qualify as the first copyright owner of the Illustration under English law, or as a co-author of a joint work with Dorothy L. Sayers under English law, and whether he granted informal rights of use or exploitation that are unique to German law to Ms. Sayers or Penguin.

- Facts to establish whether Plaintiff's English and German law claims

are barred under the English and German statutes of limitations or the English or German law equivalents of waiver, estoppel, acquiescence, and related doctrines, or other issues unique to English and German law.

- Other issues relating to liability and damages that may become apparent as discovery proceeds.

**3.** **Initial Disclosures**

The parties have agreed to serve their respective initial disclosures on or before September 7, 2021.

**4.** **Written Discovery**

Should this action remain before this Court, the parties anticipate issuing formal written discovery requests, including Special Interrogatories, Requests for Production of Documents, and Requests for Admission.

The parties anticipate propounding an initial round of written discovery by the end of October 2021.

As allowed by Federal Rules of Civil Procedure 5(b)(2)(E), the parties agree to accept documents by email service, such that transmission of a document to the email addresses listed below (subject to modification of the lists at any time by the parties by way of an email notice) shall qualify and be calculated as service by mail on the date transmitted (while voluminous exhibits to any documents served by email may be sent by overnight delivery to the office of opposing counsel if referenced in the email, and shall still receive the benefit of service on the date of transmission of the email):

For Plaintiff:                              inge.debruyn@modo-law.com

For Defendant Nirvana L.L.C.:    mark.lee@rimonlaw.com

For All Other Defendants:           zia.modabber@katten.com

                                               leah.solomon@katten.com

In addition, the parties agree that physical products, or any other discovery production that cannot be served electronically, will be served by Federal Express

or other registered mail.

**5.   Depositions**

At this time, the parties lack sufficient information to determine which individuals they will depose and how many depositions they will take. The parties anticipate that most of the percipient witnesses listed in section D.4 may be deposed and that said depositions shall take place after an initial round of written discovery.

The parties anticipate these depositions being completed by November 8, 2022 (other than any expert witness depositions). The parties agree that remote testimony via videoconferencing is equivalent to live testimony and will not oppose remote testimony when a deponent so requests.

**6.   Electronically Stored Information**

The parties have discussed the existence of electronically stored information ("ESI") in this matter and do not foresee any issues related to or arising out of ESI. The parties agree to follow the procedures outlined below for electronic discovery of ESI:

a) Besides Excel files, all ESI will be produced in PDF or TIF form created directly from the electronic file and each party agrees to maintain the native files without modification. Excel files will be produced in native format. To the extent possible, no information shall be omitted from a document as a result of the conversion of the native file to PDF or TIF.

b) Should the need arise, the parties will work to reach a mutually agreeable format for the production of three-dimensional documents that cannot be satisfactorily reproduced in PDF or TIF format.

c) Either party may make a reasonable request for the production or inspection of any original document and the producing party shall make reasonable efforts to accommodate any such reasonable request.

d) The parties reserve the right to object to producing ESI that is not

reasonably accessible, or which would be unduly burdensome or costly to produce or should not be produced for other reasons.

e) No discoverable ESI shall be destroyed, deleted, or otherwise discarded.

**7.   Privilege or Protection of Sensitive Information**

The parties plan on stipulating to a protective order for the production of information or documents containing proprietary or confidential information and submitting it for approval to the presiding magistrate judge.

**J.   DISCOVERY CUT-OFF**

In light of the need for discovery in other countries, the parties agree to a non-expert discovery cut-off date of November 8, 2022. *See* Proposed Dates in the attached Exhibit A for applicable discovery deadlines.

**K.   EXPERT DISCOVERY**

Plaintiff has not yet determined if she will utilize an expert witness in this case. Expert witness testimony may be desired on the topic of damages depending on the evidence produced in discovery.

Should the English and German law copyright infringement claims remain in this Court, Defendants anticipate engaging experts of English and German law issues.  Should the Court permit Plaintiff to seek damages under the URAA, English and German law, Defendants anticipate calling an expert on the issue of damages.

The parties propose an expert discovery cut-off of December 6, 2022, with initial expert disclosures to be exchanged by October 25, 2022, and rebuttal expert disclosures to be exchanged by November 15, 2022. *See* Proposed Dates in the attached Exhibit A for applicable discovery deadlines.

**L.   DISPOSITIVE MOTIONS**

The parties propose a deadline of February 27, 2023, to hear dispositive motions. *See* Proposed Dates in the attached Exhibit A for applicable motion deadlines.

### 1. **Plaintiff's contentions**

Plaintiff anticipates filing a Motion for Partial Summary Judgment on the issues of Defendants' liability for copyright infringement under 17 U.S.C. § 501 and for violation of the integrity of copyright management information under 17 U.S.C. § 1202. Plaintiff anticipates filing this motion after sufficient discovery has been completed. Plaintiff does not intend to seek bifurcation.

### 2. **Defendants' contentions**

Should the Court deny the pending motion to dismiss in whole or in part, Defendants anticipate filing motions for summary judgment or partial summary judgment on the claims remaining before this Court.

## M. **SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION**

Plaintiff offered the option of settlement in pre-litigation correspondence and remains open to the possibility but has not received any information from Defendants necessary for an early settlement.

The parties have agreed to appear before a neutral selected from the Court's Mediation Panel. L.R. 16-15.4. The parties believe the mediation session should occur after the parties have had an opportunity to engage in discovery, to facilitate productive settlement discussions. The parties propose an ADR deadline of March 14, 2023.

## N. **TRIAL ESTIMATE**

Plaintiff has requested a jury trial and estimates the trial in this matter to last between 3-4 court days.  Defendants concur with this estimate.

LEAD TRIAL COUNSEL

- For Plaintiff: Inge De Bruyn

- For Defendant Nirvana L.L.C.: Mark S. Lee

- For Defendants Silva Artist Management, LLC, Live Nation Merchandise, LLC and Merch Traffic LLC: Zia F. Modabber

*//*

**O.** **INDEPENDENT EXPERT OR MASTER**

The parties presently do not believe this case requires the Court to appoint a master pursuant to Rule 53 or an independent scientific expert.

**P.** **TIMETABLE**

*See* proposed schedule attached hereto as Exhibit A.

**Q.** **MAGISTRATE JUDGE**

The parties do not stipulate to the use of a magistrate judge unless specifically required under the applicable local rules.

**R.** **CLASS ACTIONS**

This is not a class action.

**S.** **OTHER ISSUES**

This case does not utilize the procedures of the Manual for Complex Litigation.

Defendants have filed a motion to dismiss for *forum non conveniens,* alleging that the resolution of this dispute involves difficult and complex issues of U.K. and German copyright law and extensive discovery in England and Germany. While Plaintiff acknowledges that some deference to U.K. and German copyright law is likely, she does not agree that the issues governed by U.K. or German copyright law are either difficult or complex, nor that they require extensive discovery abroad. On the contrary, due to the "public domain" and/or "reliance" defenses that Defendants seek to raise, Plaintiff contends that the resolution of this case will involve very technical and complex issues of U.S. copyright law that a U.S. court is better equipped to decide than any foreign court.

Defendants contend that the U.S. copyright infringement claims Plaintiff alleges are not viable and are easily dispensed with, while the discovery in England necessary for resolution of the U.S. and English copyright infringement claims, and the complexity and unsettled nature of the English and German copyright law issues those claims raise, demonstrate that those foreign law issues substantially

predominate over the U.S. copyright infringement claims for the reasons described in the pending motion.

Wheoupon, the parties, by and through their respective attorneys of record, hereby jointly submit this Joint Report.

Respectfully submitted,

Dated: September 2, 2021          MODO LAW, P.C.

By:      */s/ Inge De Bruyn*

Inge De Bruyn

*Attorney for Plaintiff, Jocelyn Bundy*

Dated: September 2, 2021          RIMON P.C.

By:      */s/ Mark S. Lee*

Mark S. Lee

*Attorney for Defendant Nirvana L.L.C.*

Dated: September 2, 2021          KATTEN MUCHIN ROSENMAN LLP

By:      */s/ Leah E.A. Solomon*

Leah E.A. Solomon

*Attorney for Defendants Live Nation*

*Merchandise, LLC, Merch Traffic LLC, and*

*Silva Artist Management, LLC*

## ATTESTATION OF SIGNATURES

I hereby attest that the concurrence in the filing of this document has been obtained from the signatory indicated by a "conformed" signature (*/s/*) within this e-filed document.

Executed on September 2, 2021.

*/s/ Inge De Bruyn*

Inge De Bruyn

*Attorney for Plaintiff, Jocelyn Bundy*