Inge De Bruyn (SBN 327912)
inge.debruyn@modo-law.com
MODO LAW, P.C.
4218 Via Padova
Claremont, CA 91711
Phone: 323-983-2188
Fax: 323-693-0881

*Attorney for Plaintiff, Jocelyn Susan Bundy.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOCELYN SUSAN BUNDY, an individual,<br><br>　　　　Plaintiff.<br><br>　　vs.<br><br>NIRVANA L.L.C., a Washington Limited Liability Company; LIVE NATION MERCHANDISE, LLC, a Delaware Limited Liability Company; MERCH TRAFFIC LLC, a Delaware Limited Liability Company; SILVA ARTIST MANAGEMENT, LLC, a California Limited Liability Company,<br><br>　　　　Defendants. | Case No. 2:21-cv-03621-DSF-MAA<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR ORDERS:**<br><br>**1) DISMISSING COMPLAINT FOR** *FORUM NON CONVENIENS*<br><br>**2) ALTERNATIVELY, DECLINING SUPPLEMENTAL JURISDICTION OVER ENGLISH AND GERMAN COPYRIGHT INFRINGEMENT CLAIMS.**<br><br>The Honorable Dale S. Fischer<br><br>Hearing Date: October 18, 2021<br>Hearing Time: 1:30 pm<br>Courtroom: 7D<br><br>*(Filed concurrently with Declaration of Inge De Bruyn; [Proposed] Order)* |

# TABLE OF CONTENTS

I.   BACKGROUND.................................................................................6

II.  LEGAL STANDARD ........................................................................9

III. ARGUMENT ...................................................................................10

   A.   DEFENDANTS DO NOT ESTABLISH THE EXISTENCE OF AN
      ADEQUATE ALTERNATIVE FORUM ...................................10

   B.   PLAINTIFF'S FORUM CHOICE IS NOT OPPRESSIVE OR
      VEXATIOUS ...........................................................................13

   C.   THE PRIVATE INTEREST FACTORS DO NOT STRONGLY FAVOR
      TRIAL IN THE U.K. ...............................................................14

      C.1.   Residence of the parties and witnesses...........................14

      C.2.   Access to physical evidence and other sources of proof ...............17

      C.3.   The forum's convenience to the litigants ........................19

      C.4.   Whether unwilling witnesses can be compelled to testify.............20

      C.5.   The cost of bringing witnesses to trial...........................21

      C.6.   The enforceability of the judgment ................................21

      C.7.   Other issues making trial easy, expeditious and inexpensive.........21

   D.   THE PUBLIC INTEREST FACTORS DO NOT STRONGLY FAVOR
      TRIAL IN THE U.K. ...............................................................23

      D.1.   Local interest of lawsuit ................................................23

      D.2.   The costs of resolving a dispute unrelated to this forum & the
           burden on local courts and juries...................................24

      D.3.   Congestion in the Court.................................................24

      D.4.   The Court's familiarity with governing law ...................25

   E.   SUPPLEMENTAL JURISDICTION OVER THE FOREIGN
      INFRINGEMENT CLAIMS IS APPROPRIATE .......................28

IV. CONCLUSION ................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Adidas Am., Inc. v. Athletic Propulsion Labs, LLC*, No. 3:16-cv-00415-HZ (D. Or. July 18, 2016)...................................................................................25

*Am. Civil Liberties Union of N. Cal. v. Burwell*, No. 16-cv-03539-LB (N.D. Cal. Apr. 28, 2017) .......................................................................................24

*Argus Media Ltd. v. Tradition Financial Services Inc.*, 09 Civ. 7966 (HB) (S.D.N.Y. Dec. 29, 2009) ............................................................................26

*Bean v. Matteucci*, 986 F.3d 1128 (9th Cir. 2021)...................................29

*Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624 (7th Cir. 2010) ...................25

*Calavo Growers of California v. Belgium*, 632 F.2d 963 (2d Cir. 1980)...............18

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011) .......passim

*Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983)...............................10

*Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800 (1976)...........................29

*Dagen v. CFC Group Holdings LTD*, 00 Civ 5682 (CBM), 89306 (S.D.N.Y. Nov. 7, 2003 ...............................................................................................16

*Doe v. Exxon Mobil Corp.*, 69 F. Supp.3d 75 (D.D.C. 2014) ................................10

*Dow Chemical Co. v. Castro Alfaro*, 786 S.W.2d 674 (Tex. 1990).......................22

*Federal Trade Commission v. Swedish Match North America*, 197 F.R.D. 1 (D.D.C. 2000) ..............................................................................................16

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) .............................................9, 25

*Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366 (Fed. Cir. 2016).............................................................................................................12

*In re Air Crash Over the Taiwan Strait on May 25*, 331 F. Supp. 2d 1176 (C.D. Cal. 2004) .......................................................................................................25

*In re Application for an Order for Judicial Assistance in a Foreign Proceeding in High Court of Justice, Chancery Div., England*, 147 F.R.D. 223 (C.D. Cal. 1993).............................................................................................................16

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001)...........................13, 29

*Leeson v. Wright Trucking Co.*, CV 19-0086 WJ/JHR (D.N.M. Jan. 28, 2020).....16

*Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339 (8th Cir. 1983).................15, 22

*Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir. 1991).................19

*Lucasfilm Ltd v Ainsworth [2011] UKSC 39* ...........................................11

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) .........................9, 14, 23

*Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62 (2d Cir. 1981)........23

*Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134 (C.D. Cal. 2005) ..13, 21, 24

*Norris v. Shiley, Inc.*, No. Civ.A. 97-1953, 1999 WL 1487499 (W.D. Pa., 1999) ..16

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ...........................................passim

*Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000) .........................9, 13, 14, 29

*Raynes v. Davis*, CASE NO.: CV 05-6740 ABC (CTx) (C.D. Cal. Nov. 19, 2007) ...........................................................................................................20

*Reid-Walen v. Hansen*, 933 F.2d 1390 (8th Cir. 1991)....................................18, 19

*See Carlenstolpe v. Merck Co., Inc.*, 638 F. Supp. 901 (S.D.N.Y. 1986)..............29

*Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987) ................................................16

*Stangvik v. Shiley Inc.*, 54 Cal.3d 744 (Cal. 1991)...........................................19

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994) ...........................................................................................................7, 29

*Tatung Co. v. Hsu*, 43 F. Supp. 3d 1036 (C.D. Cal. 2014).....................................9

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006)..................14

*U.S. v. Matus–zayas*, 655 F.3d 1092 (9th Cir. 2011) ............................................16

**Statutes**

17 U.S.C. § 104A ..............................................................................................26, 27

17 U.S.C. § 1202 ......................................................................................................20

17 U.S.C. § 501 ........................................................................................................20

**Other Authorities**

Foreign-Country Money Judgments Recognition Act ............................................21

UK's Oaths and Evidence (Overseas Authorities and Countries) Act of 1963.......16

**Rules**

Federal Rules of Civil Procedure 30(b)(4) ........................................................16

Federal Rules of Civil Procedure 30(b)(6) ........................................................21

Federal Rules of Civil Procedure 32 ................................................................16

Federal Rules of Civil Procedure 43(a)............................................................16

Federal Rules of Evidence 701........................................................................15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    BACKGROUND**

   *a) The Plaintiff and this Action*

   In the 1940s, Penguin Books, a British paperback publisher, engaged U.K. novelist Dorothy L. Sayers to complete a modern translation of Dante's trilogy *La Divina Commedia* for publication in its "Penguin Classics" series. (De Bruyn Decl. ¶ 18). *The Divine Comedy - Part I: Hell* (the "Sayers Translation") was published in England in 1949 and contained several "[m]aps and diagrams specially drawn for this edition by C.W. Scott-Giles." (Id. ¶ 11, Ex. 12.) One of those drawings was an image titled "Upper Hell," which is the work at issue here (the "Illustration"). (Id. ¶ 27, Ex. 27.)

   Plaintiff Jocelyn Bundy ("Mrs. Bundy") is C.W. Scott-Giles' grandchild and sole successor-in-title to the copyright in his works, including the Illustration. (Id. ¶ 56, Ex. 42.)

   On or about January 20, 2021, Mrs. Bundy discovered that Nirvana and Live Nation Merchandise were selling apparel and other products depicting an image virtually identical to the Illustration (the "Infringing Products") and were also licensing the image to third parties around the world for the creation, manufacture, and sale of their own Nirvana-branded products. (Compl. ¶¶ 18-20, Dkt. No. 1.) In addition, Mrs. Bundy also learned that Nirvana was misattributing the Illustration to Kurt Cobain and was claiming ownership of the copyright in it via copyright notices in the form "© [year] Nirvana." (Compl. ¶¶ 22-23, Dkt. No. 1.)

   Mrs. Bundy works in the English opera world. Nirvana, an American rock band active in the late 80s and early 90s, was never really on her radar.

   After several cease-and-desist letters (*see* Dkt. Nos. 1-5, 1-7, 1-9, 1-11, 1-12, 1-14, 1-16), Defendants now allegedly stopped selling Infringing Products. However, they still refuse to account for the profits they made from their infringement, leaving Plaintiff with no other option than to file suit.

### b) *The Defendants*

Defendant Nirvana L.L.C. ("Nirvana") is a U.S. company formed in 1997 that has its principal office in Encino, CA. (De Bruyn Decl. ¶ 41, Ex. 31.)

Defendant Silva Artist Management ("SAM") is a U.S. company formed in 1999 that has its principal office in Los Angeles, CA. (Id. ¶ 44, Ex. 33.)

Defendants Live Nation Merchandise ("LNM") and Merch Traffic ("Merch Traffic") (jointly, "Live Nation") are American companies licensed by Nirvana to manufacture, sell, and otherwise exploit Nirvana-branded merchandise and to contract with a multitude of sublicensees worldwide to do the same. They also manage Nirvana's direct-to-consumer sales via www.nirvana.com and fulfill those orders. (Dkt. No. 18-1 [Bennett Declaration], ¶¶ 1-8.) Both entities are subsidiaries of Live Nation Entertainment, Inc., an American global entertainment company founded in 2010 with headquarters in Beverly Hills, CA (Dkt. No. 19), and both entities have a place of business in this district (De Bruyn Decl. ¶¶ 45-46, Exs. 34-35).

### c) *Plaintiff's Claims for Relief*

Given the global scale of Defendants' wrongful conduct, Mrs. Bundy seeks relief under the laws of the United States and, to the extent necessary – *i.e.,* insofar U.S. copyright laws cannot provide relief for the harm caused by Defendants' infringing activities abroad[1] – under the laws of England and Germany.

Specifically, Mrs. Bundy alleges (*see* Compl., Dkt. No. 1):

1) Copyright Infringement under 17 U.S.C. § 501 for Defendants' various and repeated violations in the United States of her exclusive copyrights in the

---

[1] Traditionally, U.S. courts have retained jurisdiction over and have applied U.S. copyright law on copyright infringement claims alleging so-called "predicate acts" in the United States that permitted further infringing acts to be accomplished abroad. *See, e.g, Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1095 n.9 (9th Cir. 1994) ("[I]f and to the extent a part of an 'act' of infringement occurs within the United States, then, although such act is completed in a foreign jurisdiction, those parties who contributed to the act within the United States may be rendered liable under American copyright law.").

Illustration under U.S. law, resulting in harm both in the U.S. and abroad.

2) Repeated violations of 17 U.S.C. § 1202 for, *inter alia*, knowingly affixing false copyright notices to the Illustration with the intent to induce, enable, facilitate, or conceal infringement.

3) Copyright infringement under English and German copyright laws for Defendants' wrongful conduct in those countries insofar this conduct and the damages therefrom did not flow from predicate acts in the U.S.A.

   d) *Defendants' forum non conveniens argument*

Defendants base their entire motion on the allegation that Plaintiff's claims under U.S. law are "frivolous" and "easily dispensed with" so that her claims under foreign law "predominate" this action, making England a more appropriate forum. (Mot., 2:18-19, 5:20-24, 13:9-15, 19:1-24:28.) Defendants even go as far as to state that "[t]he only significant U.S. connection to this action is that some of the Defendants reside in California." (Mot., 12:24-26.). This is a bold statement.

First, it bears repeating that *all* Defendants reside in California, not just some, and can all be found in this district. (De Bruyn Decl. ¶¶ 41-46, Exs. 31-35.)

Second, as the Complaint sufficiently alleges, the crux of this action is (a) Defendants' conduct in the U.S. in violation of U.S. laws, and (b) the executive decisions made in the U.S. that resulted in knowing violations of foreign laws.

Third, the fact that Defendants devote ten pages of their motion on "public domain" and "reliance" arguments to contest the subsistence and validity of Mrs. Bundy's U.S. copyright in the Illustration only highlights the complex and technical issues of *U.S.* law that will need to be determined to resolve this case on its merits. (Mot., 4:6-7:21, 19:5-24:28.)

Defendants, however, are asking this Court to simply accept their affirmative defense as fact, or, equally problematic, to determine these substantive issues of fact and law on a motion to dismiss for *forum non conveniens*.

Defendants misunderstand the scope of this motion.

If Plaintiff's U.S. claims would be that "frivolous" and so "easily dispensed with," Defendants could have dispensed with them via a motion to dismiss under Rule 12(b) for failure to state a claim or for lack of subject matter jurisdiction, or they could have filed a motion for summary judgment, which would have mooted the controversy entirely. The fact that they did not speaks volumes.

## II.   LEGAL STANDARD

Courts have discretion to dismiss a case for *forum non conveniens* "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience.'" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (citation omitted).

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Id.* at 254 n. 22.

"An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011).

An alternative forum is not adequate if it does not "permit litigation of the subject matter of the dispute." *See Piper*, 454 U.S. at 254 n. 22. Even when an adequate alternative forum exists, "a plaintiff's choice of forum will [ordinarily] not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in a foreign country." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

"Federal courts are unanimous in concluding that the defendant bears the burden of persuasion on all elements of the *forum non conveniens* analysis." *Tatung Co. v. Hsu*, 43 F. Supp. 3d 1036, 1052 (C.D. Cal. 2014). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Id.* (citation omitted). It is "an exceptional tool to be employed sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

## III.   ARGUMENT

### A.   DEFENDANTS DO NOT ESTABLISH THE EXISTENCE OF AN ADEQUATE ALTERNATIVE FORUM

As a threshold matter, Defendants bear the burden of proving the existence of an adequate alternative forum. *See Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983). "An alternative forum is only available if *the entire case and all parties* can come within the jurisdiction of that forum." *Doe v. Exxon Mobil Corp.*, 69 F. Supp.3d 75, 88 (D.D.C. 2014) (emphasis added).

This involves a two-part inquiry: availability and adequacy.

(a) **Availability** requires a clear showing that *all* Defendants are amenable to process and are within the foreign forum's jurisdiction. *See Piper*, 454 U.S. at 255 n.22. Defendants fail to make that showing. As U.S. business entities with a U.S. domicile and no known presence in the U.K.,[2] Defendants cannot be served in England and are not subject to personal jurisdiction there. And while they could have easily stipulated to service of process in England, they did not.

In fact, Defendants do not even properly allege that they are amenable to process in England. All they offer is a declaration from John Silva, claiming that "Nirvana and the other companies with which [he is] associated would be willing to defend those claims in legal proceedings in the United Kingdom." (Mot., 12:27-28.) Yet, Defendants do not establish that Mr. Silva has any legal authority to bind Nirvana or the other defendants, and the evidence suggests that he does not. (De Bruyn Decl. ¶ 7.) Nirvana and the Live Nation Defendants, for their part, are dead silent on the issue. If anything, Merch Traffic is already disclaiming *all* liability in the matter, suggesting that it is not willing to appear *anywhere*.[3]

---

[2] *See, e.g., Exxon Mobil*, 69 F. Supp.3d at 88 ("Exxon's argument that Indonesia is available as an alternative forum because [a foreign Exxon subsidiary] is amenable to service there is incorrect.")

[3] *See* Dkt. No. 18-1 [Bennett Decl.], ¶ 8. Obviously, there would have been no need to send Merch Traffic a cease-and-desist letter on March 15, 2021 (*see* Dkt. No. 1-13) if Mrs. Bundy had not noticed that Merch Traffic was engaging in the sale of Infringing Products at that time. The question, therefore, is not *if* it did, it is *how*

Defendants also do not allege, much less establish, that English courts can base personal jurisdiction upon consent, and the lengthy declaration of their "expert" (*see* fn. 4 and 7) does not provide any insight on this crucial question either.

By contrast, Defendants' merchandising activities involve a vast network of sublicensees in the U.S. that also created, manufactured, marketed, sold, and/or distributed Infringing Products. As such, discovery in this action will likely reveal other U.S. parties that Mrs. Bundy may want to join. Those parties, out of reach for any U.K. court, will probably not be amenable to suit in a foreign forum thousands of miles away with which they have no connection at all.

(b) **Adequacy** requires a showing that the foreign forum permits litigation of the dispute. Dismissal is not warranted if there is any danger that the plaintiff will be deprived of a remedy. *See Piper*, 454 U.S. at 254-255.

The gravamen of Mrs. Bundy's Complaint is copyright infringement and other wrongful conduct by Defendants *in the U.S. under U.S. federal laws*. Not surprisingly, neither Defendants nor its U.K. "expert"[4] even contend that an English court would exercise jurisdiction over those claims, and, like Mrs. Bundy, they have every reason to believe that it would not.

In the landmark case *Lucasfilm Ltd. v. Ainsworth*, the U.K. Supreme Court ruled that jurisdiction of U.K. courts over foreign intellectual property claims turns on whether the dispute involves the *validity* of the asserted rights or the alleged *infringement* thereof. (De Bruyn Decl. ¶¶ 4-5, Exs. 1-2.) The Court held that U.K. courts can only exercise jurisdiction over foreign copyright infringement claims when the validity of the right is not in dispute. Or, put differently, "there is no

---

*long* it did and *how much profit* it made from it, which are questions that discovery *in the U.S.* will be able to answer.

[4] In fact, Mr. Skrein completely ignores Mrs. Bundy's U.S. claims, as if they do not exist. As such, his conclusion that this is "so English a dispute" and that "it would be more economical and speedy and far less cumbersome to have the case tried in England" lacks any reliable basis and is nothing more than biased attorney argument. It certainly does not meet the standards set out in Fed. R. Evid. 702 to constitute an "expert opinion." Dkt. No. 18-1 [Skrein Decl.], ¶¶ 51-52.

jurisdiction in proceedings for infringement of rights in foreign land where the proceedings are 'principally concerned with a question of the title, or the right to possession, of that property.'" *Lucasfilm* at 105. While the Court held that "this can rarely, if ever, apply to copyright" (*Lucasfilm* at 108) because copyright exists automatically without formalities, this is, in fact, such a rare case. Defendants' entire defense against Mrs. Bundy's U.S. infringement claims concerns the subsistence and alleged invalidity of the U.S. copyright in the Illustration due to non-compliance with the formalities imposed by the Copyright Act of 1909. Since this is a dispute that is "principally concerned with a question of the title," it is almost guaranteed that a U.K. court will decline to exercise jurisdiction over Mrs. Bundy's U.S. claims.

Because of such limitations, caution is warranted when deciding on a motion for *forum non conveniens* in copyright cases. *See, e.g., Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366, 1371 (Fed. Cir. 2016) (emphasis added):

> Territoriality is always of concern in intellectual property disputes. It cannot be assumed that a foreign court would adjudicate an intellectual property dispute where the alleged infringement occurred elsewhere [...] United States copyright law, for example, generally admits of no remedy for extraterritorial infringement unless a predicate act of infringement was first committed within the United States [...] It is particularly important that a *forum non conveniens* movant demonstrate the adequacy of an alternative forum when the dispute implicates the enforcement of intellectual property rights. The policies underlying United States copyright, patent, and trademark laws would be defeated if a domestic forum to adjudicate the rights they convey was denied without a sufficient showing of the adequacy of the alternative foreign jurisdiction. It is largely for this reason that district courts have routinely denied motions to dismiss on *forum non conveniens* grounds when United States intellectual property rights form the crux of the dispute."

Therefore, unless Defendants are willing to stipulate to the validity of the U.S. copyright in the Illustration, the U.K. will not permit litigation of Plaintiff's U.S. infringement claims and, thus, cannot be considered an adequate forum.

Defendants bear the burden of proof on both the adequacy of the foreign forum and their availability to that forum as a threshold matter. Defendants fail to establish either. Dismissal should be denied on this basis alone.

**B.**     **PLAINTIFF'S FORUM CHOICE IS NOT OPPRESSIVE OR VEXATIOUS**

Even more baffling than Defendants' purported inconvenience in being sued on their doorstep, is their proposition that Mrs. Bundy "filed suit here rather than in her native England for forum shopping purposes." (Mot., 8:14-19.)

All Defendants are U.S. companies who were sued in what is likely the *only* forum where they are subject to personal jurisdiction: the Central District of California. How this would ever amount to "forum shopping" is a mystery.

Any inconvenience that results from cross-border litigation *for all parties involved* hardly stems from Mrs. Bundy's forum choice but is a consequence of Defendants' multi-territorial infringements.

Defendants further argue that Mrs. Bundy's choice of a U.S. forum is entitled to "little" weight and "not important to the *forum non conveniens* analysis." (Mot., 8:5-19.) Defendants misstate the law. While a foreign plaintiff's choice of forum is generally given "less" deference than a U.S. plaintiff's choice, that is quite different from according that choice little weight or, as Defendants suggest here, no weight at all. *See, e.g., Ravelo*, 211 F.3d at 514 ("[L]ess deference is not the same thing as no deference."). Courts agree that "[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001).

"One of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit." *Id.* at 72. "A plaintiff should not be compelled to mount a suit in a district where she cannot be sure of perfecting jurisdiction over the defendant, if by moving to another district, she can be confident of bringing the defendant before the court." *Id.* at 73. *See also Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1141 (C.D. Cal. 2005) (applying the logic of *Iragorri* to a foreign plaintiff's choice of a U.S. forum to obtain

personal jurisdiction over the U.S. defendant). Courts also agree that "a plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant 'as to be out of proportion to plaintiff's convenience.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) (quoting *Ravelo*, 211 F.3d at 514).

Defendants do not make the slightest showing that Mrs. Bundy's choice of the Central District of California is "oppressive and vexatious" to them, much less that their inconvenience would be out of proportion to Mrs. Bundy's convenience of proceeding in this district, where she has counsel, access to documents and witnesses, can perfect jurisdiction over all defendants, and where the Court is familiar with the law on which most of her claims are based. In these circumstances, Mrs. Bundy's choice of forum should not be disturbed. *See Ravello*, 211 F.3d at 514.

## C.     THE PRIVATE INTEREST FACTORS DO NOT STRONGLY FAVOR TRIAL IN THE U.K.

To assess if trial in the chosen forum would be unnecessarily burdensome for the defendants, courts consider the following private interest factors: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Lueck*, 236 F.3d at 1145 (citations omitted). Defendants argue that these factors favor dismissal. A proper and complete analysis shows that they do not.

### C.1.     Residence of the parties and witnesses

Defendants claim inconvenience because the following parties and alleged witnesses reside in England: (1) Mrs. Bundy, (2) Penguin Books Ltd., (3) Dorothy Sayers' successor-in-interest, (4) Barbara Reynolds' successor-in-interest, (5) The Dorothy L. Sayers Society, and (6) Live Nation's U.K. employees. (Mot., 9-10.)

Defendants seem to have lost sight of the basic rule that a witness can only testify to matters of which he has personal knowledge. Fed. R. Evid. 701. It is hard to imagine that any successors-in-interest of Ms. Sayers or Ms. Reynolds, or any current employees or representatives of the DLS Society or Penguin Books Ltd., would have any first-hand knowledge about events that happened 70 years ago.

It appears that what Defendants are looking for are documents that those parties may have, notably "a series of letters and drawings translator Dorothy L. Sayers sent to Scott-Giles in 1946" that purportedly "raise doubts about Scott-Giles' contributions to and copyright ownership of the Illustration." (Mot., 3:7-11.) There are more appropriate and cheaper ways of obtaining documents than through testimony.

As for Mrs. Bundy, by filing suit in California, she has clearly indicated her willingness to travel to the United States for trial. *See Carijano*, 643 F.3d at 1230.

And as for Live Nation's own employees in England, Defendants cannot credibly argue that they would suffer any burden in obtaining their testimony or accessing their business records in England. If U.S. principals and employees can travel to the U.K. and produce U.S. documents for trial there, they can certainly compel their own U.K. employees and documents for a trial held here. *See Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 343 (8th Cir. 1983) ("[M]any of the witnesses work for the [defendant] and compulsory process probably would not be necessary to produce its own employees for an appearance at trial."). Also, any information these U.K. employees are alleged to have pertains to elements on which Mrs. Bundy bears the burden of proof at trial. As such, it would be Plaintiff, not Defendants, who would be burdened by any inconvenience.

Since Defendants cannot identify a single competent witness who would be unavailable to them in this forum, Defendants' alleged burden is largely fictional. Moreover, as the global pandemic has illustrated, any such testimony can also be

given remotely — *should the need actually arise.*[5] Even long before the pandemic, courts already opined, and Defendants even agree, that remote testimony is just as acceptable as live testimony. *See, e.g., Federal Trade Commission v. Swedish Match North America*, 197 F.R.D. 1, 2 (D.D.C. 2000); Dkt. No. 21 [Joint Rule 26(a) Report] at ¶ 5.

Moreover, while Defendants complain of the restrictions that an English court could impose if a deposition would be sought from a U.K. citizen for use in U.S. proceedings – which would indeed prevent them from going on a fishing expedition – they seem to forget that deposition testimony would not be available to them *at all* in any U.K. proceeding because England does not permit depositions as part of its pre-trial discovery procedures. *See In re Application for an Order for Judicial Assistance in a Foreign Proceeding in High Court of Justice, Chancery Div., England*, 147 F.R.D. 223, 226 (C.D. Cal. 1993). So, this argument falls flat too.

Finally, any theoretical inconvenience alleged by Defendants pales in comparison to the real-life burden and expense that Plaintiff is guaranteed to suffer

---

[5] Even if Defendants were to identify any material witnesses or documents that are not yet under their control, their gloom and doom about getting access to that evidence (Mot., p. 11:2-12:10) is also exaggerated. The Supreme Court held in *Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987), that the Hague Convention does not provide exclusive procedures for obtaining foreign documents and that parties to U.S. litigation are free to use the procedures set out in the Federal Rules of Civil Procedure instead.

Fed. R. Civ. P. 30(b)(4) permits depositions of U.K. witnesses to be taken by telephone or other remote electronic means in the same way that this is possible for U.S. witnesses. *See, e.g., Leeson v. Wright Trucking Co.*, CV 19-0086 WJ/JHR, at *6-7 (D.N.M. Jan. 28, 2020) (allowing the taking of a deposition in the U.K. via videoconference). Section 1 of the UK's Oaths and Evidence (Overseas Authorities and Countries) Act of 1963 even allows for foreign judicial officers to administer an oath to U.K. deponents. The Federal Rules also permit the recording of videotaped depositions for later use at trial. Fed. R. Civ. P. 32. *See also, e.g., U.S. v. Matus-zayas*, 655 F.3d 1092, 1100 (9th Cir. 2011).

Similarly, Fed. R. Civ. P. 43(a) permits presentation of testimony in open court by contemporaneous transmission from a different location. Contemporaneous transmission includes videoconferencing and testimony by telephone. *See, e.g., Norris v. Shiley, Inc., No. Civ.A. 97-1953*, 1999 WL 1487499 (W.D. Pa., 1999) (permitting testimony by expert in California at a trial in Pennsylvania via videoconference); *Dagen v. CFC Group Holdings LTD*, 00 Civ. 5682 (CBM), 89306 (S.D.N.Y. Nov. 7, 2003 (allowing five witnesses to give testimony by telephone from Hong Kong at a trial in New York).

in having to bring *actual* U.S. witnesses to trial in the U.K. Defendants already identified at least two individuals, John Silva and Joel Bennett, who purport to have material information about Defendants' infringing conduct and who are both in California. *See* Dkt. No 18-1. Discovery is likely to reveal more.

In sum, the residence of the parties and witnesses does not "strongly favor" trial in the U.K., and, on balance, this factor weighs against dismissal.

### C.2.   Access to physical evidence and other sources of proof

Here again, Defendants only focus on *their* theoretical inconvenience and completely ignore Mrs. Bundy's access to evidence in the U.S. if litigation were to proceed before a U.K. court – *if she would ever make it there*. In fact, it is hard to see what evidence and sources of proof exist in the U.K. that Defendants would have trouble accessing.

**First**, it appears that few of the U.K. sources of potential evidence identified by Defendants actually have the information that they are looking for:

(a)   **Penguin Books** provided a sworn declaration that, after a diligent search, it has not been able to locate any documents in its possession relating to the Illustration or any contracts, licenses, or other arrangements with C.W. Scott-Giles. Penguin also confirmed that C.W. Scott-Giles was never a Penguin employee, and that it does not claim any right or title in the Illustration other than the right and license to reproduce and publish it in the context of the Dante translations. Penguin further confirmed that it is unlikely that there was a simultaneous publication of the Sayers Translation in the U.S. in 1949. (De Bruyn Decl. ¶ 36, Ex. 29 [Evans Decl.] at ¶¶ 5-8.)

(b)   Research revealed that, in 1985, **Ms. Sayers' successor-in-interest** sold her entire archive (the "Fleming Archive") to the Marion E. Wade Center at Wheaton College in Illinois. This includes all correspondence, including her letters to and from C.W. Scott-Giles. (De Bruyn Decl. ¶ 6, Ex. 3.) Those documents are thus in the U.S., not in the U.K.

(c)   It appears that the Marion E. Wade Center also acquired most, if not all, of **Barbara Reynolds'** archive and at least part of the archive of the **Dorothy L. Sayers Society**. (Id.)

**Second**, it may be assumed that Defendants do not have to rely on the Hague Convention to get access to documents held in the U.K. by parties under their own control, such as **Live Nation's U.K. employees**, Defendants' subsidiaries, sister and parent companies, and even their sublicensees and commercial partners.

**Third**, Defendants fail to show that they are actually experiencing even the slightest difficulties in getting access to witnesses or documents in England. So far, Plaintiff's counsel has not encountered any problems at all obtaining answers and materials from both American and English sources alike.

While videoconferencing tools allow for depositions to be taken remotely at minimal cost, email, cloud services, and other digital means guarantee cheap and easy access to documents located abroad. Courts agree that advances in technology have eradicated most of the inconvenience that Defendants are alleging and, as a result, have attached markedly less significance to the access-to-evidence factor in recent years. *See, e.g., Reid-Walen v. Hansen*, 933 F.2d 1390, 1397 (8th Cir. 1991) (holding that "[t]he time and expense of obtaining the presence or testimony of foreign witnesses is greatly reduced by commonplace modes of communication and travel"); *Calavo Growers of California v. Belgium*, 632 F.2d 963, 969 (2d Cir. 1980) (pointing out that "[i]t will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit").

In his case also, the access-to-evidence factor is of limited importance. Defendants' alleged burden in securing evidence under the Hague Convention would only arise if third parties were unwilling to voluntarily testify or produce relevant evidence. Defendants do not make any showing of this. They also fail to establish that it would be easier for Mrs. Bundy to obtain witness testimony or documentary evidence from unwilling Americans for use in U.K. proceedings. Moreover, Mrs.

Bundy agreed to a fact discovery period of *fourteen months*, which she believes sufficiently compensates for any inconvenience that Defendants may suffer, should they need to take evidence under the Hague Convention after all.

In comparing the ease-of-access to evidence in both jurisdictions and the parties' relative inconvenience, Defendants do not carry the burden to show that this factor "strongly favors" dismissal. And it is far more burdensome for Mrs. Bundy to transfer the lawsuit to the U.K. than for Defendants to obtain some hypothetical evidence from a hypothetical unwilling witness under the Hague Convention. As such, this factor also weighs against dismissal.

### C.3.   <u>The forum's convenience to the litigants</u>

Defendants do not discuss this factor for obvious reasons.

Courts generally frown upon Defendants seeking dismissal for *forum non conveniens* of an action brought in their home forum. *See, e.g., Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 608 (3d Cir. 1991) ("This case is puzzling … [Defendant], which is headquartered in Wilmington, Delaware […] seeks to move the action against it to a forum more than 3,000 miles away. It is, as Alice said, 'curiouser and curiouser.'"). Courts regularly hold that resident defendants carry a heavy burden to justify such a dismissal. *See, e.g., Reid-Walen*, 933 F.2d at 1395 (quoting *Piper*, 454 U.S. at 256).

> A significant factor in this case is that the defendants are U.S. citizens and the action was transferred to their home district […] In this unusual situation, where the forum resident seeks dismissal, this fact should weigh strongly against dismissal […] Keeping in mind that the central purpose of the *forum non conveniens* doctrine 'is to ensure that the trial is convenient,' it will be the rare case indeed when a case filed in the federal district where the defendant resides […] is dismissed on the ground of *forum non conveniens*.

This is especially so when, as is the case here, the wrongful conduct was committed in the chosen forum or flowed from decisions made in that forum. *See, e.g., Stangvik v. Shiley Inc.*, 54 Cal.3d 744, 760 (Cal. 1991) (emphasis added):

> We hold above that a presumption of convenience to defendants arises from the fact that [defendant] is incorporated in California and

has its principal place of business here. Another aspect of defendants' connection with this state is that alleged wrongful conduct was committed here, and there is a close connection between such conduct and plaintiffs' causes of action. We agree with plaintiffs that defendants' cumulative connection with California is an appropriate matter for consideration in deciding a forum non conveniens motion. <u>The significance of such a connection is that […] it is not unfair to a defendant to hold the trial in a state where a substantial part of the wrongful conduct was committed.</u>

In her Complaint, Mrs. Bundy adequately alleged that Defendants' conduct in the U.S. constitutes infringement under 17 U.S.C. § 501 and violates 17 U.S.C. § 1202. Defendants' opinion that they have a valid defense against these claims under U.S. law does not mean they can simply ignore them, nor ask this Court to do so. Since all Defendants reside in this forum and the Complaint concerns their wrongful conduct here, this forum is presumptively convenient to the litigants. Defendants certainly do not meet the heavy burden of showing that it is not.

### C.4.    <u>Whether unwilling witnesses can be compelled to testify</u>

Defendants' tale of horror about taking witness testimony via the Hague Evidence Convention (Mot., p. 11:2-12:10) is not only exaggerated but also not at issue here, since Defendants have not identified a single unwilling U.K. witness whose testimony they would need to compel. As *Carijano* makes clear, "the initial question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify." *Carijano*, 643 F.3d at 1231. *See also Raynes v. Davis*, CASE NO.: CV 05-6740 ABC (CTx), at *9 (C.D. Cal. Nov. 19, 2007) (holding that when no unwillingness has been shown a district court should not attach much weight to this factor).

Absent any affirmative showing of unwillingness, Defendants also fail to carry their burden to show that this factor favors dismissal. Most allegations and anticipated defenses turn on the conduct of Defendants' officers, principals, and employees in the U.S. and on decisions made in the U.S. by American citizens that resulted in infringements in the U.S. and abroad. Most, if not all, of these witnesses reside in California and are subject to compulsory process here. So, on balance, the

1   factor of compulsory process also weighs against dismissal.

2         **C.5.**    <u>**The cost of bringing witnesses to trial**</u>

3         Here also, Defendants only focus on the cost of bringing U.K. witnesses to

4   trial in the U.S. and completely ignore the other side of the ledger. Every dollar saved

5   on bringing hypothetical U.K. witnesses to trial in the U.S. would have to be spent

6   many times over on bringing <u>*actual*</u> U.S. witnesses to trial in the U.K. *See Carijano*,

7   643 F.3d at 1230. All of Defendants' "persons most knowledgeable" under Fed. R.

8   Civ. P. 30(b)(6) reside in California, or, if not there, in the United States. Litigation

9   in this district would, in any event, save the time and expense of having to bring

10  those U.S. witnesses to trial overseas. So, this factor also weighs against dismissal.

11        **C.6.**    <u>**The enforceability of the judgment**</u>

12        The same can be said for the enforceability of the judgment. While Mrs.

13  Bundy does not refute that "English judgments […] are routinely enforced in

14  California," enforcement is not guaranteed. The United States is not a party to any

15  international treaties about the recognition of foreign country judgments. The only

16  body of U.S. law is that applied by various states.

17        In California, the enforceability of foreign judgments is governed by the

18  Foreign-Country Money Judgments Recognition Act. First, the FCMJRA does not

19  cover judgments for relief other than monetary damages; it does not cover injunctive

20  relief. Second, the recognition of money judgments is subject to several exceptions

21  listed in section 4 of the Act. Third, section 6 provides that the prevailing plaintiff

22  must file a legal action seeking recognition of the foreign judgment rather than

23  simply file the judgment with the clerk. So, although enforcement of a U.K.

24  judgement in California is theoretically possible, it is always easier to enforce a U.S.

25  judgment against a U.S. defendant on his U.S. assets. *See, e.g., Mujica*, 381 F. Supp.

26  2d at 1152. Therefore, this factor does not favor litigation in a U.K. court either.

27        **C.7.**    <u>**Other issues making trial easy, expeditious and inexpensive**</u>

28        Defendants' motion to dismiss for *forum non conveniens* is an excellent

example of "reverse forum shopping" where multinational Defendants spend substantial resources on a *forum non conveniens* motion with the sole purpose of avoiding liability altogether. As Justice Doggett sharply noted in *Castro Alfaro*:

> [W]hat is really involved is not convenience but connivance to avoid corporate accountability … the doctrine is favored by multinational defendants because *forum non conveniens* dismissal is often outcome-determinative, effectively defeating the claim and denying the plaintiff recovery … A *forum non conveniens* dismissal is often … a complete victory for the defendant … Empirical data available demonstrate that less than four percent of cases dismissed under the doctrine of *forum non conveniens* ever reach trial in a foreign court. A *forum non conveniens* dismissal usually will end the litigation altogether, effectively excusing any liability of the defendant.

*Dow Chemical Co. v. Castro Alfaro*, 786 S.W.2d 674, 683 (Tex. 1990) (Doggett, J. concurring)).

Defendants understand this all too well. From day one, they made clear that they have no intention whatsoever to answer for their wrongful conduct, either here or in the U.K. When baseless threats with "motions for sanctions" and "malicious prosecution claims" (*see* Dkt. Nos. 1-6, 1-8, 1-10) failed to bring about the desired results, the next logical step is to try to dispose of Mrs. Bundy's claims this way.

Defendants are simply banking on the financial and practical barriers that Mrs. Bundy would meet if she were required to refile suit in the U.K. Mrs. Bundy would lose her counsel and may be unable to find legal representation in the U.K. that she can afford.[6] More resources would also need to be spent on discovery in the U.S., which could make trial cost-prohibitive altogether.

"The court must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum." *Lehman*, 713 F.2d at 346. "It is almost a perversion of the *forum non conveniens* doctrine to remit a plaintiff, in the name of expediency, to a forum

---

[6] Defendants' own Exhibit 7 confirms that in U.K. courts "[t]he proportion of parties to a hearing or trial who are unrepresented has risen in recent years in all types of court, which is likely to be a result of reforms to legal aid." Defs' Ex. 2 at p. 4, Dkt. No. 18-8.

in which, realistically, it will be unable to bring suit when the defendant would not be genuinely prejudiced by having to defend at home in the plaintiff's chosen forum." *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir. 1981).

If the ultimate inquiry is where trial will best serve the parties' convenience and the ends of justice, dismissal of this action in favor of Defendants can only prompt these questions: "who's convenience?" and "who's justice?"

## D. THE PUBLIC INTEREST FACTORS DO NOT STRONGLY FAVOR TRIAL IN THE U.K.

"Courts consider the following public interest factors: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147 (citations omitted).

### D.1. Local interest of lawsuit

Here again, Defendants expect this Court to accept as fact that Plaintiff's U.S. claims are frivolous to then adopt their conclusion "that the local California interest in the present suit is limited." (Mot., p. 13:9-12.)

Mrs. Bundy has properly alleged that her claims involve a work protected by U.S. copyright law and that Defendants' actions in the U.S. infringed her rights both under U.S. and foreign laws. If Defendants want to challenge the merits of Mrs. Bundy's U.S. claims, they will have an opportunity to do so in a U.S. court via the proper routes. "The doctrine of *forum non conveniens* is intended to avoid trial in inappropriate forums, not to avoid meritless suits. If this is such a suit, […] much of [Plaintiff]'s action may be dismissible on motion for summary judgment. But the *forum non conveniens* route, appealing as it is to busy trial judges, is not the proper way to go about this." *Manu*, 641 F.2d at 68 (2d Cir. 1981).

Defendants also undervalue the interests of both the U.S. and California in providing a forum for those harmed by the actions of their corporate residents, no

matter where the harm occurred. *See, e.g., Mujica*, 381 F. Supp. 2d at 1153 (holding that "the United States has an interest because the Defendants are American corporations."); *Carijano*, 643 F.3d at 1232-33 (holding that California has an interest in deciding actions against resident corporations whose conduct in this state causes injury to persons in other jurisdictions).

The U.S. surely has an interest in preventing copyright infringement and the use of false copyright notices on products sold within its borders, especially when that conduct also produces harm abroad. This factor also weighs against dismissal.

### D.2. <u>The costs of resolving a dispute unrelated to this forum & the burden on local courts and juries</u>

These factors are not applicable because this dispute is not "unrelated" to this forum. Calling Mrs. Bundy's U.S. claims "frivolous" does not make them so, and this will be a matter for this Court and a jury to decide. Superfluously, the Defendants are U.S. entities that have a place of business in this district and are orchestrating their wrongful conduct from within this district, causing harm both in the U.S. and abroad. The inquiry is not whether there *is* a burden on local Court and juries – there always is when having a trial versus no trial at all – the inquiry is whether that burden and those costs are unjustified. Defendants do not make that showing. Therefore, this factor weighs also against dismissal.

### D.3. <u>Congestion in the Court</u>

Defendants argue that "relative judicial congestion favors dismissal of this action." (Mot.,13:21-14:2.) They claim statistics indicate that the caseload in this district has increased, while in English courts it has not. Defendants' exhibits do not stand for this proposition. More importantly, this is not the correct inquiry. "As to court congestion, courts in this district consider the median time from filing to disposition or trial." *Am. Civil Liberties Union of N. Cal. v. Burwell*, No. 16-cv-03539-LB, at *10 (N.D. Cal. Apr. 28, 2017) "[T]he pertinent issue is whether a trial will be speedier in the Central District of California." *Adidas Am., Inc. v. Athletic*

*Propulsion Labs, LLC*, No. 3:16-cv-00415-HZ, at *11 (D. Or. July 18, 2016). The median time from filing to trial turns out to be more than double in an English court (De Bruyn Decl. ¶ 80), thus clearly weighing against dismissal. In any event, because relative court congestion often comes down to comparing apples with oranges, this factor does not play an important role in a *forum non conveniens* analysis. *See, e.g., In re Air Crash Over the Taiwan Strait on May 25*, 331 F. Supp. 2d 1176, 1203 (C.D. Cal. 2004) (holding that congestion is afforded little weight in assessing the public interest factors). In any event, this court's congestion is definitely not aided by the filing of frivolous motions to dismiss. *See Gulf Oil*, 330 U.S. at 516 (1947) (Mr. Justice Black, dissenting) (stating that *forum non conveniens* inquiries "will ... clutter the very threshold of federal courts with a preliminary trial of fact concerning the relative convenience of forums").

### D.4.   The Court's familiarity with governing law

Plaintiff agrees that resolution of this dispute will require the application of *some* foreign law, but it is well-settled that the need to apply foreign law is not a conclusive factor. *See, e.g., Piper*, 454 U.S. at 260 n. 29 ("[T]his factor alone is not sufficient to warrant dismissal."). With the help of its two "experts,"[7] Defendants

---

[7] As Judge Posner points out in his opinion in *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 631 (7th Cir. 2010), caution is warranted when the law is explained by an "expert" who is paid for his testimony:

> "Lawyers who testify to the meaning of foreign law, whether they are practitioners or professors, are paid for their testimony and selected on the basis of the convergence of their views with the litigating position of the client, or their willingness to fall in with the views urged upon them by the client. These are the banes of expert testimony. When the testimony concerns a scientific or other technical issue, it may be unreasonable to expect a judge to resolve the issue without the aid of such testimony. But judges are experts on law, and there is an abundance of published materials, in the form of treatises, law review articles, statutes, and cases, all in English (if English is the foreign country's official language), to provide neutral illumination of issues of foreign law. I cannot fathom why in dealing with the meaning of laws of English-speaking countries that share our legal origins judges should prefer paid affidavits and testimony to published materials."

also grossly overstate both the scope and the complexity of this task. While U.K. law does govern the issue of copyright ownership,[8] *neutral* published materials show that this query is not particularly difficult. (De Bruyn Decl. ¶ 10.)

In fact, U.S. courts have already held that determining copyright ownership under English law does not involve complex issues of foreign law. *See Argus Media Ltd. v. Tradition Financial Services Inc.*, 09 Civ. 7966 (HB) at *8 (S.D.N.Y. Dec. 29, 2009). Unless the Illustration is an engraving, photograph, or portrait, or was created by an employee, the author is the original owner of the copyright therein.[9]

By contrast, Defendants' *entire* defense against Mrs. Bundy's U.S. claims turns on a resolution of hyper-technical questions of U.S. copyright law, such as: (a) whether the Illustration constitutes a foreign work or a U.S. work, (b) whether it ever fell into the U.S. public domain for failure to comply with the formalities imposed by the 1909 Copyright Act, (c) if so, whether the copyright in it was restored by the enactment of the URAA and the amendment of 17 U.S.C. § 104A, (d) whether, in that scenario, any of the Defendants have "reliance party status" under 17 U.S.C. § 104A, (e) if so, whether that would shield them from all liability for all infringing acts or only for certain acts, (f) whether a reliance party can create additional derivative works and/or grant licenses to third parties with respect to the copyrighted work after copyright was restored, (g) whether Defendants' U.S. conduct constitutes a predicate act that allows for recovery of damages under U.S. copyright law for the further infringements committed abroad, (h) what liability Defendants have incurred

---

[8] U.S. courts apply the *lex loci originis*, to determine the issue of copyright ownership. *See Itar-Tass Russian News v. Russian Kurier*, 153 F.3d 82, 90 (2d Cir. 1998). The parties agree that this is U.K. law. Defendants then confound matters with a declaration about what German courts would do. The relevance of what a German court would do is unclear, when this case will not be put before a German court either way. Moreover, Defendants' argument is hard to grasp, since German law could not be easier: (a) only natural persons can be owners of copyright, (b) work made for hire does not exist, (c) the individual indicated as such on the work is presumed to be its author, and (d) transfer of copyright is only possible upon the death of the author to his/her legal heirs. So, under German law, C.W. Scott-Giles would indisputably be considered the author and original owner, and Plaintiff the current owner as the author's legal heir. (De Bruyn Decl. ¶¶56-57, Exs. 41-42.)

[9] *See* Section 5 of the 1911 Copyright Act. (De Bruyn Decl. ¶ 21, Ex. 22.)

1      under the DMCA for their placement of false copyright notices on the work, etc.

2          Although well beyond the scope of this motion to dismiss, Mrs. Bundy felt

3 obliged to curb Defendants' boundless speculations and conclusory allegations by

4 submitting ample evidence to further substantiate her claims. That evidence shows,

5 *inter alia*, (a) that the Illustration is not an engraving but a simple drawing (De Bruyn

6 Decl. ¶¶ 27-28), (b) that Mr. Scott-Giles did not create it in the course of any

7 employment, either for Ms. Sayers (Id. ¶¶ 22-26) or for Penguin (Id. ¶ 36), (c) that

8 Mrs. Bundy acquired proper legal title to it (Id. ¶ 56), and (d) that C.W. Scott-Giles

9 was the sole author of the Illustration (Id. ¶¶ 29-34). The evidence also shows that,

10 even if Ms. Sayers would have been a joint author, the issue would likely be moot

11 and certainly does not affect Mrs. Bundy's standing to file suit but, at most, the

12 damages she would be entitled to (Id. ¶ 35).

13          With respect to Mrs. Bundy's U.S. claims, the evidence further shows that

14 they are anything but frivolous. Various documents support her allegation that there

15 was no simultaneous publication of the Illustration in the U.S. in 1949 (Id. ¶¶ 11-20,

16 36) and that, as a result, any allegedly "lost" copyright in the Illustration has long

17 been restored (Id. ¶ 39). The evidence also shows that neither Nirvana nor any of the

18 other Defendants qualify as reliance parties under 17 U.S.C. § 104A because (a) they

19 did not exist on the date that reliance party status was assessed (Id. ¶¶ 40-47), and

20 (b) they never relied on the alleged public domain status of the work but on false

21 claims of authorship and ownership (Id. ¶¶ 50-55). In addition, it is doubtful that

22 reliance party status would allow that party to also authorize *third parties* to exercise

23 the exclusive rights of the copyright owner of the work, since this would lead to

24 completely absurd results. (Id. ¶¶ 48-49.) And it is even more doubtful that reliance

25 party status would confer onto that party the right to affix false copyright notices to

26 the restored work naming itself as the owner.

27          If Defendants truly believe that Mrs. Bundy's U.S. copyright infringement

28 claims are "easily dispensed with," she kindly invites Defendants to have these

claims decided on an early motion for summary judgment, so as to streamline the case, eliminate the burden and expense of discovery on this topic, and simplify the issues for the trier of fact.

**E.    SUPPLEMENTAL JURISDICTION OVER THE FOREIGN INFRINGEMENT CLAIMS IS APPROPRIATE**

In the alternative, Defendants request this Court to decline jurisdiction over Mrs. Bundy's copyright infringement claims under English and German law by alleging that those claims (a) "predominate" over Mrs. Bundy's U.S. claims and (b) "raise complex issues" of law and fact. (Mot., 15:2-5.).

First, the Court will appreciate that, compared to the issues of law and fact that need to be decided under U.S. law, Mrs. Bundy's claims of infringement under English and German law are remarkably straightforward. Both countries abolished copyright formalities ages ago and there is no dispute that the Illustration is still protected by English and German copyright until 2052. There is also no dispute that Defendants have infringed upon these foreign copyrights by blatantly copying the Illustration on Nirvana-branded merchandise manufactured and/or sold in the U.K. and Germany. The reason that Defendants would like to see these claims dismissed is not because they are so difficult to adjudicate, but quite the opposite—because the infringement is so blatantly obvious. In fact, Defendants do not even deny the infringement, they merely hope to escape liability by convincing this Court to decline jurisdiction over them. *See* Dkt. No. 1-10 ("[W]e find your threats of copyright infringement claims under the laws of the United Kingdom, Germany, or other foreign countries unpersuasive. You have not provided us with evidence to support a viable copyright infringement claim under US law, and absent a viable US claim, a US court is unlikely to accept jurisdiction to resolve such exclusively foreign disputes.")

Second, Mrs. Bundy's foreign copyright claims do not predominate her U.S. claims. In fact, Mrs. Bundy intends to show that Defendants' infringements abroad

result from predicate acts committed in the United States and thus entitle her to worldwide damages under U.S. copyright law. *See Subafilms*, 24 F.3d at 1095 n.9; De Bruyn Decl. ¶ 9, Ex. 7.

## IV.    CONCLUSION

The U.S. Supreme Court has stated that "[f]ederal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'" *Bean v. Matteucci*, 986 F.3d 1128, 1136 (9th Cir. 2021) (quoting *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 817 (1976)). Considering that obligation, Courts should not use *forum non conveniens* to relinquish that jurisdiction without good cause.

"Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum. And the greater the degree to which the plaintiff has chosen a forum where the defendant's witnesses and evidence are to be found, the harder it should be for the defendant to demonstrate inconvenience." *Iragorri*, 274 F.3d at 75.

As set out above, Defendants did not make a showing that Mrs. Bundy's chosen forum, the Central District of California, is so inconvenient and unrelated to the subject matter of this litigation that trial in this forum would be adverse to the best interests of justice. *See Carlenstolpe v. Merck Co., Inc.*, 638 F. Supp. 901, 903 (S.D.N.Y. 1986). Defendants have a substantial burden to persuade this Court to invoke the "exceptional tool" of *forum non conveniens* and deny Plaintiff access to a U.S. court. *See Ravelo Monegro*, 211 F.3d at 514; *Carijano*, 643 F.3d at 1236. Defendants failed to meet that burden and a proper balance of all relevant factors clearly demonstrates that this lawsuit should proceed in the Central District of California. Therefore, Defendants' motion to dismiss this action for *forum non*

*conveniens* should be denied.

Defendants' alternative motion to decline jurisdiction over Mrs. Bundy's foreign copyright infringement claims should equally be denied. As Professor J. Ginsburg points out, "[w]here the United States was the nerve center for multiterritorial infringements – that is, when the defendant is a U.S. entity that has commenced or directed the commission of unauthorized copyright exploitation overseas […] it is more than appropriate for the court to retain jurisdiction over the entire action, even if it does not apply U.S. law to the entire action" and that "under jurisdictional principles in force abroad, the United States, as the defendant's home forum, may be the only forum in which it is possible to consolidate all the infringement claims." (De Bruyn Decl. ¶ 9, Ex. 7 at p. 600.)

Should the Court decide to dismiss the action after all, Plaintiff respectfully requests that dismissal is made without prejudice and conditioned upon (a) Defendants stipulating to the validity of the U.S. copyright in the Illustration, (b) Defendants' consent to suit and service of process in England, (c) their waiver of any statute of limitations defense that they could not have asserted here, (c) their agreement to produce documents or witnesses in the U.K. action, (d) their consent to pay any foreign judgment obtained by Plaintiff – all stipulations and consents to be made within 10 days of dismissal – and (e) the exercise of jurisdiction by a U.K. court over Mrs. Bundy's U.S. copyright infringement claims.

Respectfully submitted,

DATED: September 13, 2021            MODO LAW, P.C.

By:   */s/ Inge De Bruyn*

Inge De Bruyn

*Attorney for Plaintiff, Jocelyn Bundy*