| | |
|---|---|
| Mark S. Lee (SBN: 94103)<br>RIMON, P.C.<br>2029 Century Park East, Suite 400N<br>Los Angeles, CA 90067<br>Telephone/Facsimile: 310.561.5776<br>mark.lee@rimonlaw.com<br><br>Attorneys for Defendant NIRVANA, L.L.C. | Zia F. Modabber (SBN: 137388)<br>Leah E.A. Solomon (SBN: 275347)<br>KATTEN MUCHIN ROSENENMAN LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>Telephone:  310.788.4400<br>zia.modabber@katten.com<br>leah.solomon@katten.com<br><br>Attorneys for Defendants LIVE NATION MERCHANDISE LLC, MERCH TRAFFIC LLC, AND SILVA ARTIST MANAGEMENT, LLC |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOCELYN SUSAN BUNDY, an individual,<br><br>         Plaintiff,<br><br>   v.<br><br>NIRVANA, L.L.C. a Washington Limited Liability Company; LIVE NATION MERCHANDISE LLC, a Delaware Limited Liability Company; MERCH TRAFFIC LLC, a Delaware Limited Liability Company; SILVA ARTIST MANAGEMENT, LLC, a California Limited Liability Company,<br><br>         Defendants. | Case No. 2:21-cv-03621-DSF (MAAx)<br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER:**<br><br>1) DISMISSING COMPLAINT FOR *FORUM NON CONVENIENS* (F.R.C.P. 12(B)(3); AND THE COMMON LAW); AND<br><br>(2) ALTERNATIVELY, DECLINING SUPPLEMENTAL JURISDICTION OVER ENGLISH AND GERMAN COPYRIGHT INFRINGEMENT CLAIMS (28 U.S.C. § 1367(C))<br><br>Date:   October 18, 2021<br>Time:   1:30 p.m.<br>Courtroom:  Courtroom 7D<br>The Honorable Dale S. Fischer |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................ 1

II. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS. ...................................................... 1

III. ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFF'S ENGLISH AND GERMAN COPYRIGHT INFRINGEMENT CLAIMS. ............................................................................................................. 7

IV. CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayco Farm, Inc. v. Ochoa*,
  862 F.3d 945 (9th Cir. 2017) ............................................................................. 7

*Chappell & Co. Ltd and Others v. Redwood Music Ltd.*,
  [1981] ................................................................................................................ 9

*Estes v. Kaiser Found. Health Plan, Inc.*,
  No. EDCV 10-00807 ......................................................................................... 1

*Fahmy v. Hogge*,
  No. CV 08-1152 PSG, 2008 WL 461432 (C.D. Cal. Oct. 14, 2008) ................ 1

*Gaylord v. United States*,
  777 F.3d 1363 (Fed. Cir. 2015) ......................................................................... 6

*Lucasfilm Ltd. v. Ainsworth*
  (2011) ............................................................................................................ 1, 2

*Murray v. British Broad. Corp.*,
  81 F. 3d 287 (2d. Cir. 1996) .............................................................................. 3

*Ranza v. Nike, Inc.*,
  793 F. 3d 1059 (9th Cir. 2015) ......................................................................... 7

*Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*,
  24 F.3d 1088 (9th Cir. 1994) ........................................................................... 10

*United Feature Syndicate, Inc. v. Koons*,
  817 F. Supp. 370 (S.D.N.Y. 1993) .................................................................... 7

*Vivendi SA v. T-Mobile USA, Inc.*,
  586 F. 3d 689 (9th Cir. 2009) ............................................................................ 7

**Statutes**

17 U.S.C. §101 ........................................................................................................ 2, 6

17 U.S.C. § 104A(d)(3) ............................................................................................. 7

17 U.S.C. § 104A(h)(4)(a)-(c) ................................................................................. 11

## I. INTRODUCTION

Plaintiff's opposition proves what it purports to dispute, which is that her claims are more properly decided by an English court because they require determination of complex English and German copyright law issues based on decades-old documents and witnesses in England. Defendants' motion should be granted for the reasons described below.[1]

## II. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

Plaintiff's various arguments opposing *forum non conveniens* dismissal lack merit for many reasons.

First, Plaintiff is incorrect that an English court would decline jurisdiction over her U.S. copyright infringement claims based on *Lucasfilm Ltd. v. Ainsworth*, (2011) UKSC 39. (Opp. 11). The question in *Lucasfilm* was whether an English court could adjudicate a claim involving the alleged infringement abroad of a *foreign copyright* (i.e., a copyright originating outside the United Kingdom). *Lucasfilm* held that such claims are almost always justiciable by English courts, unless there is a question as to the copyright's existence under the laws of its country of origin. *See supra*, paras. 52, 108.

*Lucasfilm* has no application here because the parties agree that the copyright in the Illustration originated in the United Kingdom. (*See* Dkt. No. 1 ¶ 25 ("As a work created by a British citizen and first published in the United Kingdom, the Illustration is a 'foreign work' for the purposes of U.S. copyright laws.").) Nothing in *Lucasfilm* prohibits an English court from adjudicating a claim for infringement

---

[1] The Court should also refuse to consider Plaintiff's counsel's 23-page declaration, which consists largely of legal argument in an obvious and unfair attempt to circumvent the page limit imposed by Local Rule 11-6. *See Estes v. Kaiser Found. Health Plan, Inc.*, No. EDCV 10-00807 VAP(DTBx), 2010 WL 115957113, at *2, n.3 (C.D. Cal. Aug. 6, 2010); *Fahmy v. Hogge*, No. CV 08-1152 PSG (SHx), 2008 WL 461432, at *2 (C.D. Cal. Oct. 14, 2008).

of a U.K. copyright under U.S. law, including where the validity of the U.K. copyright is challenged.

In any event, resolution of Plaintiff's U.S. copyright claims would not require an English court to adjudicate the validity of a U.S. copyright in the Illustration. Although the alleged copyright at issue never existed in the United States due to the universal failure to comply with the manufacturing, publication, copyright notice, registration, renewal, and other former requirements of U.S. copyright law, which Plaintiff does not meaningfully dispute (Mot. 19-22),[2] Plaintiff claims she can enforce her U.K. copyright in the United States thanks to the Berne Convention Implementation Act and the URAA, which eliminated former copyright formalities and allow for the restoration of copyright in certain foreign works formerly in the public domain. (Dkt. No. 1 ¶¶ 23, 39.)[3] Plaintiff's U.S. copyright claims thus hinge on whether she complied with the URAA. Such claims are justiciable in England under *Lucasfilm*.[4]

Second, Plaintiff's argument that this Court should be "cautious" about dismissing copyright infringement claims for *forum non conveniens* (Opp. 12) also

---

[2] Those uniform failures were why Defendants, correctly, advised Plaintiff that her U.S. copyright infringement claims, which initially were the only ones she asserted, were frivolous. Plaintiff claims U.S. copyright in a work that was in the public domain in the United States 40 years before Nirvana began using it. Her invocation of the copyright-restoring URAA does not resuscitate her claims because they are both premature and impossible on the facts of this case. (*See* Mot. 19-24). By any objectively reasonable standard, "frivolous" is what her U.S. copyright infringement claims are.

[3] *See* 17 U.S.C. §101 (definitions of "Berne Convention" and "United States" works); *id.* §104A (describing when and how to restore copyright to formerly public domain foreign works under the URAA); *id.* § 411(a) (limiting registration prerequisite to a copyright infringement suit to "United States" works).

[4] For this reason, and since Plaintiff does not seek to enforce a U.S. copyright, her suggestion that Defendants must stipulate to her ownership of a valid U.S. copyright (Opp. 12) is nonsense.

lacks merit. Courts commonly do so where, as here, an English citizen seeks to bring copyright infringement claims that are more properly decided in England. *See Murray v. British Broad. Corp.*, 81 F. 3d 287, 292-95 (2d. Cir. 1996) (affirming *forum non conveniens* dismissal of U.S. copyright infringement claims by a British national because plaintiff's choice of forum and unavailability of contingent fee arrangements for copyright infringement in the United Kingdom were entitled to little weight.)

Third, that Defendants are located in and subject to personal jurisdiction in the United States (Opp. 13-14) is unimportant to the *forum non conveniens* analysis. Defendant Live Nation Merchandise, LLC, which sold allegedly infringing merchandise in the United Kingdom and Germany from its offices in London is obviously subject to personal jurisdiction in the United Kingdom (*see* Joel M. Bennett Decl. ("Bennett Decl.") ¶ 4, Dkt. No.18:1), and all Defendants have agreed to personal jurisdiction in England should this Court dismiss this action on *forum non conveniens* grounds. (John Silva Decl. ¶ 9, Dkt. No.18:1.)[5]  Further, the need for discovery from the U.S. Defendants on the U.S. copyright infringement claims is minimal. Defendants do not dispute that Nirvana sold merchandise bearing the allegedly infringing Illustration beginning in 1989 (*see* Mot. 7), and that the other Defendants assisted Nirvana in those efforts (except for Merch Traffic LLC, which had no involvement in sales of the allegedly infringing merchandise in any country, *see* Bennett Decl. ¶¶ 1, 3, 5, 8) (*See* Mot. 5).  The volume of those prior U.S. sales is irrelevant, as Plaintiff's only basis to allege U.S. copyright infringement is under the URAA as described above, and only sales occurring after February 2022 can even arguably support a copyright infringement damage recovery under that statute. (*See* Mot. 22-24.)

---

[5] Defendants have no objection to the Court's conditioning its order of dismissal on Defendants' agreement to personal jurisdiction in England for purposes of this litigation.

Fourth, the "private interest factors" involving witnesses and evidence relevant to a *forum non conveniens* analysis (Opp. 14-17) favor resolution in England, because that is where the witnesses and other important evidence on liability and damages from European sales are located.

Plaintiff's own opposition proves this. The only declaration she provides to "support" her arguments against dismissal and transfer is of a witness associated with third party publisher Penguin, Solicitor Nicola Evans. (*See* Opp. 24-30.) Where is that witness located? England. (Declaration of Nicola Evans ("Evans Decl.") ¶ 1, Dkt. No. 24:30.)[6]

That English witness's testimony contains curious omissions and purports to dispute binding admissions in Plaintiff's Complaint's Exhibits. For example, Ms. Evans' declaration acknowledges that *The Divine Comedy* was first published in 1949 (Evans Decl. ¶ 3, Dkt. No. 24:30), but does not say when *The Divine Comedy* was first published in the United States, and thus does not dispute that it was published here no later than 1950. (Evans Decl. ¶¶ 7-8.)  She does not dispute that U.S.-published editions of *The Divine Comedy* were printed in England, as Complaint Exhibit 6, page 9 establishes, in violation of the manufacturing clause in the U.S. Copyright Act of 1909.  And she does not dispute that Dorothy L. Sayers was the copyright owner of *The Divine Comedy*, including the Illustration, as stated in the copyright notice of the U.S. Penguin edition of that book.

She does dispute that Penguin was fully functional in the United States in 1949 (Evans Decl. ¶ 8), but page 6 of Exhibit 4 to Plaintiff's Complaint, a Penguin publication that summarizes its worldwide history and book sales, states that "[a]n American branch of Penguin Books Ltd. was established in 1939," and page 5 of that same Exhibit 4 lists "1.86 million" total book sales by Penguin in 1949,

---

[6] Ms. Evans says she is a solicitor working for Penguin in England, but does not state where she resides. Her "LinkedIn" page, however, states that she is located in London, England. *See* https://www.linkedin.com/in/nicola-evans-8a222416/.

"including U.S.A." Page 9 of Exhibit 6 to the Complaint is a copy of the copyright notice page of a U.S. paperback edition of *The Divine Comedy* which states, "first published 1949" and "Copyright 1949 by Dorothy L. Sayers," indicating a U.S. publication in 1949 of copies printed in England. Even Ms. Evan's denial that Penguin has any copyright interest in the Illustration apart from its use in *The Divine Comedy* (Evans. Decl. ¶ 6) is belied by Exhibit 3 to Plaintiff's Complaint, which shows Penguin using that Illustration in a different translation of *The Divine Comedy* by Mark Musa published in the 1971. (Complaint Ex. 3, Dkt. No. 1-3.) The Evans declaration at least underscores the need for investigation and discovery of and from Penguin and other English witnesses and documents as to Penguin's right to use the Illustration, further weighing in favor of resolution of this dispute in England.

      Fifth, while noting that documents possessed by the Estate of Dorothy L. Sayers' son are now located at Wheaton College in the United States (Opp. 18), the listing of documents provided identifies only "files" in a cursory fashion (Opp. Ex. 3). The contents of those files are unknown, and from the summary descriptions provided, most of them appear to have nothing to do with the present dispute. (*See* Opp. Ex. 3)

      Even if copies of some relevant documents are in those files, however, Plaintiff's opposition provides no basis to dispute that other documents are in the possession of the Dorothy L. Sayers Society in the United Kingdom, which published the multi-volume *Letters of Dorothy L. Sayers*; the Estate of Barbara Reynolds in the United Kingdom, who compiled and edited the *Letters of Dorothy L. Sayers*[7]; and/or Penguin in the United Kingdom, which published the first U.K. and U.S. editions of *The Divine Comedy*, which Nicola Evans' declaration confirms.

      Sixth, public interest factors favor resolution of this dispute in an English

---

[7] Plaintiff argues that Barbara Reynolds' documents are also in the United States, but the cited evidence does not support the claim. (Opp. 18.)

forum, as described in Defendants' motion. That witnesses can, in theory, be deposed or give testimony remotely (Opp. 18-19) does not meaningfully favor denial of the motion; if it did, no *forum non conveniens* motion related to any other technologically modern country based on witness availability would ever be granted. If anything, this weighs just as much in favor of dismissal of this U.S. action so that this English law-centered dispute may be resolved in the United Kingdom, as U.S. Defendants can be remotely examined there just as easily as English witnesses can be remotely examined here. Further, witness convenience remains an important factor because in-person deposition and trial testimony is superior to remote testimony for evaluating demeanor and determining truth.

Seventh, Plaintiff's argument that California would not recognize an English judgment that included injunctive relief (Opp. 21) is a red herring, because Plaintiff can never obtain injunctive relief in the U.S. on the claims stated. Regarding the U.S. infringement claims, Defendants voluntarily stopped selling the allegedly infringing merchandise after learning of Plaintiff's complaints and do not plan to resume such sales, as stated in their Motion. (*See* Mot. 24.) Further, Plaintiff can **never** obtain injunctive relief against Defendants on the URAA-based claims, because Nirvana's "Circles of Hell" t-shirt qualifies as an "existing derivative work" under U.S. copyright law, consisting of an original combination of the Nirvana name, the "Circles of Hell" image, and original text on the back. (Cf. Complaint ¶ 20 and Ex. 1 thereto.)[8] As a matter of law, under the URAA, Plaintiff can only

---

[8] "A 'derivative work' is a work based upon one or more preexisting works … such as a[n] … art reproduction … or any other form in which a work may be recast, transformed or adapted." 17 U.S.C. §101(definition of "derivative work"). T-shirts that reproduce art are derivative works pursuant to this definition, especially if they are combined with other elements that "recast, transform or adapt" them. 17 U.S.C. § 101 (definition of "derivative work"); *Gaylord v. United States*, 777 F.3d 1363, 1370 (Fed. Cir. 2015) (copyright owner negotiated license for "derivative works incorporating" the artwork in dispute "with a per unit royalty of revenue on t-

obtain reasonable compensation for Nirvana's sales of its "Circles of Hell" derivative works that continue more than 12 months after Plaintiff's service of an arguable NIE in February 2021. 17 U.S.C. § 104A(d)(3). Any injunctive relief available on the English and German copyright law claims, meanwhile, would apply to and be enforceable in England and Germany, and thus would not involve a U.S. court or U.S. judgment.

Finally, *forum non conveniens* dismissal is proper under Ninth Circuit case law Defendants cited but that Plaintiff's Opposition does not even attempt to address. *See Ayco Farm, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) (affirmed *forum non conveniens* dismissal of a California suit between a Florida-based plaintiff and Mexican defendant because the crux of the dispute was in Mexico, many witnesses were in Mexico, and Mexican law would likely apply); *Ranza v. Nike, Inc.*, 793 F. 3d 1059, 1078-79 (9th Cir. 2015) (private and public factors favored dismissal of an Oregon suit against an Oregon defendant by a U.S. plaintiff residing in the Netherlands, because the Netherlands was a more convenient forum for trial and Netherlands law would govern); *Vivendi SA v. T-Mobile USA, Inc.*, 586 F. 3d 689, 695-96 (9th Cir. 2009) (affirmed dismissal of a complaint by a foreign plaintiff on *forum non conveniens* grounds because plaintiff engaged in forum shopping, and international discovery and other factors favored dismissal).

### III. ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFF'S ENGLISH AND GERMAN COPYRIGHT INFRINGEMENT CLAIMS.

Plaintiff's argument that the English and German law issues are "straightforward" (Opp. 28) is demonstrably incorrect. For example, resolution of Plaintiff's claim under English law will require resolution of the following complex issues: whether, under England's Copyright Act of 1911, Ms. Sayers qualifies as the

---

shirts…"); *United Feature Syndicate, Inc. v. Koons,* 817 F. Supp. 370, 382 (S.D.N.Y. 1993) (artist licensed artwork for use in "T-shirts, calendars and other derivative works").

first copyright owner of the Illustration because she ordered it from Mr. Scott-Giles; whether Mr. Scott-Giles' possible inking of a drawing supplied to him by Ms. Sayers was sufficiently creative and original to qualify for copyright protection; whether the drawing intended for publication would qualify as an "engraving," copyright in which would be owned by Ms. Sayers; whether Mr. Scott-Giles was "employed" by Ms. Sayers when he made whatever contribution he made to the Illustration; and whether Ms. Sayers' identification as the only copyright owner in the first U.S. edition of *The Divine Comedy* means that she is presumptively the first copyright owner of the Illustration under English law. (Motion 3; Declaration of Michael Skrein ("Skrein Decl.").) As discussed in Defendants' moving papers, these issues are hardly "straightforward," and Plaintiff's Opposition does not meaningfully address them.

      Other copyright issues arising under English law that Plaintiff's Opposition does not mention include issues involving equitable versus legal title in the Illustration (Skrein Decl. ¶¶ 22-27); separation of ownership interests in the Illustration (Skrein Decl. ¶¶ 28-37); liability for infringement on the facts presented (Skrein Decl. ¶ 28); and, given Plaintiff's decades of delay in asserting her purported rights, acquiescence and laches, which remain vital aspects of English copyright law (Skrein Decl. ¶¶ 40-45).[9]

      Plaintiff's invocation of English copyright law's "reversion" doctrine (Inge De Bruyn Decl. ¶ 37) serves only to raise yet another complex English law issue that weighs in favor of resolution of this dispute by an English Court. Under English law, whether "reversion" benefits Plaintiff depends on whether: i) C.W. Scott-Giles' contribution to the Illustration would qualify as copyrightable under English

---

[9] Plaintiff's argument that the Court should not accept Defendants' foreign law experts because they are paid to give their opinions (Opp. 25, fn. 7) merits little response. Accepting this argument would have the Court disregard all attorney and expert opinion, rather than do what any trier of fact does—independently evaluate the legal opinions presented to it.

law; (ii) if it did, whether Mr. Scott-Giles qualified as the original author or one of the original authors; and (iii) if he did qualify with Ms. Sayers as one of two original authors, whether he and Ms. Sayers were "joint" or "non-joint" authors, because while "joint works" could be subject to reversion under English law, non-joint or "collective works" could not. *See* England's Copyright Act of 1911, Section 5(2); *Chappell & Co. Ltd and Others v. Redwood Music Ltd.*, [1981] R.P.C. 337 (no reversion under Section 5(2) of the 1911 Act because the copyrighted musical work at issue was a collective work).

A brief review of relevant statutory language illustrates the complexity of this issue. Under England's Copyright Act of 1911, Section 16(3), a "joint work" was "a work produced by the collaboration of two or more authors in which the contribution of one author is not distinct from the contribution of the other author or authors." A non-joint, or "collective work," on the other hand, involved "any work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated." Copyright Act of 1911, Section 35(1)(c). If, as seems likely, C.W. Scott-Giles inked over a pencil drawing of the Illustration made by Dorothy L. Sayers (*see* Mot. 3), would the fact that it was "written in distinct parts by different authors," or consisted of a work "in which works or parts of works of different authors are incorporated" make it a collective work not subject to reversion under the Copyright Act of 1911, copyright in which would thus remain with the sole copyright claimant, Dorothy L. Sayers' Estate? *See Chappell & Co. Ltd and Others v. Redwood Music Ltd.*, *supra* (finding no reversion of musical work because it was a collective work.) Plaintiff does not meaningfully discuss this issue, as it is not "straightforward."

Finally, Plaintiff does not even attempt to dispute that the German law copyright infringement issues are complex, instead arguing that this Court should not consider them because ownership is determined by English law. (Opp. 26, fn. 8.) However, while English law governs in England, and in the U.S. pursuant to the

Berne Convention and URAA, it does not govern a claim brought under German law, which instead evaluates copyright ownership, validity, and infringement pursuant to its own laws regardless of the country of origin of the work. (Klett Decl. ¶¶ 5-8.) Having invoked German law and claimed that Defendants have infringed it, Plaintiff asks this Court to determine whether she owns and Defendants have infringed a valid copyright under German law. And as Plaintiff has not substantively disputed, there are complex German copyright law issues, including: 1) the creativity and protectability of C.W. Scott-Giles' contribution to the Illustration under German law; 2) the share of creative contribution between Mr. Scott-Giles and Ms. Sayers, and thus the share of entitlement plaintiff Bundy has in this matter; 3) whether and to what extent an employment relationship between Mr. Scott-Giles and Ms. Sayers or Penguin may alter the rights to use and exploit the Illustration, as opposed to copyright ownership itself; and 4) questions regarding estoppel and the statute of limitations applicable to the wrongs alleged. (Klett Decl. ¶¶ 9-23.) Other complex issues unique to German copyright law involving whether informal rights of use or exploitation were granted by Mr. Scott-Giles are also present. (Klett Decl. ¶¶ 24-27.) Finally, other German copyright law issues involving the availability of relief to Plaintiff herein are complex.[10] (Klett Decl. ¶¶ 28-32.)

In contrast to the English and German copyright law issues described above and in Defendants' Motion, the U.S. copyright law issues really are

---

[10] Plaintiff disingenuously asserts that her English and German copyright infringement claims are only asserted "to the extent" that U.S. copyright law does not apply to allegedly infringing activity that occurred abroad. Indeed, U.S. copyright law does *not* apply to extraterritorial acts alleged to constitute infringement. *See Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994). And, contrary to the proposition for which Plaintiff cites it, *Subafilms* makes clear that the Ninth Circuit has not adopted extraterritorial application of U.S. copyright law even where acts occurring in the United States permit further reproduction abroad. *Compare* Opp. 7 fn.1 and 28-29 with *Subafilms*, 24 F.3d at 1094.

"straightforward," as Defendants' Motion demonstrates. (Mot. 19-24.) They are not the subject of a Rule 12(b)(6) motion only because Plaintiff changed her pleading to avoid one.[11] They are not made less so because Plaintiff mischaracterizes them as "hyper-technical." (Opp. 26.) Plaintiff's Complaint does not allege and her Opposition has not argued that she or her predecessors complied with the manufacturing, publication, registration, copyright notice, renewal and other former requirements of U.S. copyright law, because they did not do so. And, those failures injected *The Divine Comedy* into the public domain in the United States no later than 1950, when a U.S. paperback edition printed in England was published here. (Mot. 19-22.)[12]

Finally, Plaintiff's attempt to dispute Nirvana and the other Defendants' status as "reliance parties" under the URAA (Opp. 27) ignores the plain language of the statute. That the present Nirvana, L.L.C. was created in 1997 as the successor to and assignee of the former Nirvana partnership and Nirvana Inc. that began selling the "Circles of Hell" t-shirt and merchandise in 1989 does not affect Nirvana's status as a "reliance party" under the URAA. The statutory definition of "reliance party" includes "a successor, assignee, or licensee of" the Nirvana entity that commenced those continuous sales in 1989. 17 U.S.C. § 104A(h)(4)(a)-(c). Live Nation also qualifies as a "licensee" of Nirvana because it sold those goods pursuant to a license from Nirvana. (Bennett Decl. ¶¶ 7-8.) Since, under the URAA, Nirvana and Live

---

[11] *See* Mot. 6, 19 fn. 9, and Ex. 5 thereto.

[12] Plaintiff's attempt to dispute U.S. publication in 1949 (Opp. 27) is unpersuasive and unimportant. She has not disputed and her own Complaint's exhibits and other undisputed evidence establish U.S. publication no later than 1950 of books printed in England with no copyright notice in the name of C.W. Scott-Giles as described above. Those undisputed failures alone are enough to establish U.S. copyright public domain status upon U.S. publication as described above. (Mot. 20-22.) Plaintiff's only basis to claim a U.S. copyright is pursuant to the URAA, as her Opposition admits. (Opp. 27; *see* Dkt. No. 1 ¶ 39.) And, Plaintiff's URAA claims are both premature and impossible as described at length in Defendants' Motion. (Mot. 22-25.)

Nation had the legal right to sell that merchandise as reliance parties before and for one year after receipt of an NIE from Bundy, the other Defendants' actions as agents of Nirvana and Live Nation to facilitate those legal sales also cannot be actionable.[13]

## IV. CONCLUSION

Plaintiff's complaint should be dismissed, or alternatively, Plaintiff's English and German law copyright infringement claims should be dismissed, for the reasons described in Defendants' Motion and above.

Dated: October 4, 2021        RIMON, P.C.

By: /s/ Mark S. Lee

Attorneys for Defendant Nirvana, L.L.C.

Dated: October 4, 2021        KATTEN MUCHIN ROSENENMAN LLP

By: /s/ Zia F. Modabber

Attorneys for Defendants Live Nation Merchandise, LLC, Merch Traffic LLC, and Silva Artist Management, LLC

---

[13] Defendant Merch Traffic LLC ("Merch Traffic") disclaims any involvement in the manufacture or sale of the allegedly infringing merchandise. (*See* Bennett Decl. ¶ 8.) However, even if Plaintiff's allegations proved true, the claims against Merch Traffic would not be actionable. (*See* Compl. ¶¶ 19, 44, 49.)

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-4(a)(2)(i), I, Mark S. Lee, attest that concurrence in the filing of this document has been obtained.

/s/ Mark S. Lee
Mark s. Lee