# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOCELYN SUSAN BUNDY,<br>     Plaintiff,<br><br>                    v.<br><br>NIRVANA L.L.C., et al.,<br>     Defendants. | CV 21-3621 DSF (MAAx)<br><br>Order GRANTING Defendants'<br>Motion to Dismiss for *Forum Non Conveniens* or, Alternatively Declining Supplemental Jurisdiction Over Plaintiff's Foreign Copyright Claims (Dkt. 18) |

Defendants Nirvana L.L.C., Live National Merchandise LLC, Merch Traffic LLC, and Silva Artist Management, LLC move to dismiss Plaintiff Jocelyn Susan Bundy's complaint under Rule 12(b)(3) or in the alternative, for an order declining supplemental jurisdiction over Bundy's English and German copyright claims pursuant to 28 U.S.C. § 1367(c). Dkt. 18 (Mot.). Bundy opposes. Dkt. 24 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The motion is GRANTED.

## I. BACKGROUND

Bundy, a U.K. citizen, is the granddaughter of the late C.W. Scott-Giles, who was also a U.K. citizen. Dkt. 1 (Compl.) ¶¶ 9, 14. Scott-Giles created a drawing of "Upper Hell" (the Illustration) as described in Italian philosopher and poet Dante Alighieri's The Divine Comedy. Id. ¶ 15. In 1949, Scott-Giles drew the Illustration to accompany an English translation of the first volume of the Trilogy (Hell) by his friend Dorothy L. Sayers (Sayers Translation). Id. ¶ 16.

Bundy is Scott-Giles's sole surviving relative, successor-in-title, and the alleged legal owner of the copyright in the Illustration. Id. ¶¶ 14, 30.  The Illustration as it appears in the Sayers Translation is as follows:



Id. ¶ 1, Ex. 1.

Nirvana is alleged to be a Washington limited liability company that handles the licensing and sale of Nirvana-branded merchandise. Id. ¶ 10.  Silva Artist Management is alleged to be a California limited liability company that "handles the careers, estates, and business interests of both active and 'legacy' musical acts," including Nirvana. Id. ¶ 11.  Live Nation Merchandise and Merch Traffic, subsidiaries of Live Nation Entertainment, Inc., are alleged to be Delaware limited liability companies that sell garments, apparel, and "other music-related merchandize" that "do business in this judicial district." Id. ¶¶ 12-13.

On November 16, 1949, the Sayers Translation containing the Illustration was first published in the U.K., without a U.S. copyright notice.  Id. ¶ 17.  "On information and belief, there was no U.S. publication in 1949."  Id.

On January 20, 2021, Bundy discovered Nirvana and Live Nation Merchandise were licensing, promoting, selling, manufacturing, and distributing vinyl records, t-shirts, sweaters, hoodies, key fobs, mugs,

patches, buttons, and other merchandise items depicting an image "virtually identical to the Illustration (the "Infringing Products") both in the U.S. and abroad." Id. ¶ 18. On March 11, 2021, Bundy discovered that "sometime after February 13, 2021," Merch Traffic also started promoting, licensing, selling, and distributing Infringing Products in the U.S. and abroad. Id. ¶ 19. Bundy alleges Defendants "are selling the Infringing Products on a global scale," but notes, "the bulk of their infringing activities outside of the U.S. appears to be concentrated in the United Kingdom and Germany." Id. ¶ 33.

Bundy contends that "over the years, the band Nirvana and parties acting on its behalf have routinely made false claims of ownership of the copyright in the Illustration by placing false copyright notices on the Infringing Products," as depicted by the following examples:



Id. ¶ 22.

As a result of Defendants' alleged conduct, Bundy brought copyright infringement claims under U.S., U.K., and German law. See Compl. at 14-20.

## II. LEGAL STANDARD

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Carijano v. Occidental Petrol. Corp., 643 F.3d 1216, 1224 (9th Cir. 2011) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)). Courts apply this principle "where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001). Because of the harshness of *forum non conveniens* –

application of the doctrine results in dismissal rather than transfer – the Court may impose conditions when applying this doctrine. Carijano, 643 F.3d at 1124.

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." Id. at 1224. The "strong presumption in favor of the plaintiff's choice of forum" may be overcome "only when the private and public interest factors clearly point towards trial in the alternative forum." Carijano, 643 F.3d at 1227 (internal quotation marks omitted). Moreover, "[w]hen a domestic plaintiff initiates litigation in [her] home forum, it is presumptively convenient." Id. A foreign plaintiff's choice of forum, however, "deserves less deference." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 236 (1981).

## III. DISCUSSION

### A.   Deference to Bundy's Forum Choice

Although a plaintiff is generally entitled to deference in [her] choice of forum, especially if the plaintiff is a U.S. citizen or resident, that deference is "far from absolute." Ranza v Nike, Inc., 793 F.3d 1059, 1076 (9th Cir. 2015) (quoting Lockman Found. v. Evangelical All. Mission, 930 F.2d 764, 767 (9th Cir. 1991)). "While there is normally a strong presumption in favor of honoring the plaintiff's choice of forum, a foreign plaintiff's choice is afforded less deference." Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 703 (9th Cir. 1995). Moreover, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice of forum commands." Ayco Farms, Inc. v. Ochoa, 862 F.3d 945, 950 (9th Cir. 2017) (citation omitted). Less deference, however, "is not the same thing as no deference." Id. (citation omitted).

It is undisputed that Bundy is a U.K. citizen. Compl. ¶ 9; Mot. at 8. Therefore, the Court affords less deference to Bundy's forum choice.

## B.     Adequate Alternative Forum

"An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." Carijano, 643 F.3d at 1225.  "[A]n alternate forum offering a 'clearly unsatisfactory' remedy is inadequate." Id. (quoting Piper Aircraft, 454 U.S. at 254 n.22); see also Lueck, 236 F.3d at 1144 ("The effect of Piper Aircraft is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong.").

Defendants argue the U.K. serves as an adequate alternative forum because (1) Bundy is a U.K. citizen and the U.K. provides adequate due process and legal remedies for the allegations in her complaint; (2) private and public interest factors favor the U.K.; and (3) Defendants are amenable to service in the U.K and are amenable to a condition imposed by the Court that Defendants agree to personal jurisdiction in the U.K. for purposes of this litigation.  Mot. at 8-14; Dkt. 25 (Reply) at 3 n.5.

### 1.     U.K.'s Jurisdiction

Defendants' amenability to service of process in the U.K. "is a *sine qua non* in determining a foreign forum's adequacy." Leetsch v. Freedman, 260 F.3d 1100, 1105 (9th Cir. 2001).  Bundy disputes whether Defendants have sufficiently agreed to service in the U.K. Opp'n at 10-11.  Defendants, however, have indicated that they are willing to submit to personal jurisdiction in the U.K. for all claims raised in Bundy's complaint as a condition of dismissal for *forum non conveniens*.  Mot. at 12 n.6; Reply at 3 n.5; see Carijano, 643 F.3d at 1125 (holding that defendant was "amenable to process" in Peru based in part on its "stipulation to service of process and consent to jurisdiction there."); Lueck, 236 F.3d at 1143 (holding that alternative forum was available because all defendants had indicated that they would be amenable to service of process in New Zealand); Van Schijndel v. Boeing Co., 434 F. Supp. 2d 766, 775 (C.D. Cal 2006), aff'd sub nom. Schijndel v. Boeing Co., 263 F. App'x 555 (9th Cir. 2008) (holding that

defendants' willingness to submit to personal jurisdiction in Singapore established amenability to service of process there).  Therefore, the Court requires Defendants to waive any argument they may have regarding their amenability to service, including any statute of limitation issues that would not be available in this Court. See Leetsch, 260 F.3d at 1103-04; Paper Operations Consultants Int'l, Ltd. v. S.S. Hong Kong Amber, 513 F.2d 667, 672-73 (9th Cir. 1975) (affirming trial court's condition requiring defendant to consent to Canadian jurisdiction and waive any defense of statute of limitations that would have been available to it).

### 2.    Adequacy of Remedy

"The *forum non conveniens* doctrine does not guarantee the plaintiff [her] choice of law, or even that United States law will be applied in the alternative forum."  Creative Tech., 61 F.3d at 701 (citation omitted).  "A court may dismiss on *forum non conveniens* grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum.  However, the alternative forum must provide some potential avenue for redress." Id. at 701-02 (citation omitted).  "[I]t is only in rare circumstances where the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory, that it is no remedy at all, that this requirement [of adequacy] is not met."  Lueck, 236 F.3d at 1143 (internal quotation marks and citations omitted); see also Carijano, 643 F.3d at 1225 ("the requirement that the alternative forum provide 'some remedy' for plaintiff's complaint of wrong is easy to pass . . . .") (internal quotation marks and citation omitted).

The face of Bundy's complaint makes clear that the U.K. offers adequate relief for her copyright claims.  Indeed, Bundy states, pursuant to Chapter VI of the U.K. Copyright, Designs, and Patents Act of 1988, she is entitled to "compensatory and additional damages or recovery of Defendants' profits attributable to Defendants' infringing conduct in the U.K. . . . as well as permanent injunctive relief enjoining Defendants' ongoing infringing conduct."  Compl. ¶ 65.  Though the scope of potential relief available in a U.K. court may not be what

Bundy envisioned when she filed her claim in the United States district court, clearly there is "some remedy" for the alleged wrong. See Carijano, 643 F.3d at 1225.

Bundy's basis for contending the U.K. is an inadequate forum is her concern that an English court would not exercise jurisdiction over her U.S. copyright claims.  Opp'n at 11-12.  Bundy cites Lucasfilm Ltd. v. Ainsworth [2011] UKSC 39 (Eng.), a U.K. copyright case concerning the enforcement of a judgment entered by a U.S. district court, in which she alleges the U.K. Supreme Court "held that U.K. courts can only exercise jurisdiction over foreign copyright infringement claims when the validity of the right is not in dispute."  Opp'n at 11 (emphasis omitted).  Bundy's interpretation and reliance on Lucasfilm is misguided for two reasons.

First, the U.K. Supreme Court held that assuming the court had jurisdiction over the defendant, the U.S. copyright claims were "justiciable" in English proceedings.  Id. [105] ("We have come to the firm conclusion that, in the case of a claim for infringement of copyright of the present kind, the claim is one over which the English court has jurisdiction, provided that there is a basis for *in personam* jurisdiction over the defendant, or, to put it differently, the claim is justiciable.").  Elsewhere, the court in Lucasfilm recognized "the modern trend is in favour of the enforcement of foreign intellectual property rights" and found "no issues of policy which militate against the enforcement of foreign copyright."  Id. [108]-[109].

Second, the court in Lucasfilm did not hold that jurisdiction can *never* be established when the validity of a copyright is at issue, only that U.K. courts will not entertain suits that are primarily concerned with "determination of the title to, or the right to possession of, *foreign* land, or the recovery of damages for trespass to such land."  Id. [51] (emphasis added).  In other words, a U.K. court will not concern itself with determining the validity or registration of a foreign copyright for purposes of evaluating any infringement of the foreign copyright. This distinction makes sense, as the court in Lucasfilm recognized, "States have an interest in the international recognition and

7

enforcement of their copyrights." Id. [109].  Permitting a U.K. citizen to haul a foreign defendant into a U.K. court to have the U.K. court determine whether the foreign defendant's foreign copyright is valid would violate the principle of "international recognition and enforcement." Id.

The registration and validity of Bundy's copyright does not appear to be an issue here.  The parties agree that copyright in the Illustration originated in the U.K.  See Mot. at 1; Compl. ¶¶ 17, 25 ("As a work created by a British citizen and first published in the United Kingdom, the Illustration is a 'foreign work' for the purposes of U.S. copyright laws."), 55 ("Since the Illustration is a foreign work, Plaintiff can file suit for infringement in the U.S. without having been issued a U.S. copyright registration certificate for the work.").  In any event, the basis for Bundy's U.S. copyright infringement claims hinge on the Illustration's status as a "foreign work," any dispute about the ownership of the U.K. copyright in the Illustration can be resolved by a U.K. court.

In sum, because Defendants are amenable to suit in the U.K. and the U.K. can fashion "some remedy" for the alleged wrongdoing, the Court finds the U.K. is an adequate alternative forum for resolution of Bundy's claims.

## C.   Balance of Private and Public Interest Factors

Having determined the U.K. is an adequate alternative forum for Bundy's claims, the Court next weighs the public and private interest factors.

### 1.   Public Interest Factors

"Courts consider the following public interest factors: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." Lueck, 236 F.3d at 1147.

**Local interest of lawsuit.** There is a split of authority in the Ninth Circuit as to what can be considered in evaluating this factor. See Carijano, 643 F.3d at 1233 n.3 ("There appears to be a difference of opinion about whether it is appropriate to compare the state interests, or whether this factor is solely concerned with the forum where the lawsuit was filed."). Under the first view, the Court need "ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1182 (9th Cir. 2006). Conversely, under the latter view, the Court should balance the foreign forum's interest in the litigation with the domestic forum's. See Lueck, 236 F.3d at 1147 (comparing effects on litigation in New Zealand and Arizona).

Defendants contend "[t]he only significant U.S. connection to this action is that some of the Defendants reside in California." Mot. at 12. Bundy asserts for the first time in her opposition that "all Defendants reside in California, not just some, and can all be found in this district." Opp'n at 8. Bundy further asserts that Nirvana's principal place of business is Encino, California, Silva Artist Management was incorporated under the laws of California, and Merch Traffic and Live Nation Merchandise are subsidiaries of Live Nation Entertainment, Inc., which is headquartered in Beverly Hills, California. Id. at 7. Bundy states both the U.S. and California have an interest in "providing a forum for those harmed by the actions of their corporate resident, no matter where the harm occurred." Id. at 23-24 (citing cases).

The Court agrees that California citizens have an interest in the sale and consumption of copyright-infringing products in their forum. However, the U.K. also has a strong interest because this suit involves a U.K. citizen and Bundy asserts copyright infringement claims under U.K. law, as well as U.S. and German law. Given that one of the core disputes in this case concerns ownership of the copyright in the Illustration, which is governed by U.K. law, the U.K. likely has a stronger interest, on balance, in this case.

Because Ninth Circuit authority is unclear whether the Court should consider only California's interest or if the Court should compare California and the U.K.'s interest, the first factor slightly favors dismissal.

**Familiarity with governing law.** "Many *forum non conveniens* decisions have held that the need to apply foreign law favors dismissal." Piper Aircraft, 454 U.S. at 260 n.29 (collecting cases). The parties do not dispute the Court would need to apply U.K. law, and perhaps German law as well. Bundy concedes that "U.K. law does govern the issue of copyright ownership," Opp'n at 26, and as Defendants point out, there appears to be a number of potential issues concerning title to the U.K. copyright, see Mot. at 15-17; Reply at 7-8. A U.K. court is surely more familiar with and readily able to apply U.K. law to U.K. copyright ownership disputes. See, e.g., Leetsch, 260 F.3d at 1105 (familiarity with the law that governs "particular[ly]" weighed in favor of a German forum).

The Court is not persuaded by Bundy's contention that "neutral publishing materials show that [the application of U.K. law] is not particularly difficult" and "U.S. courts have already held that determining copyright ownership under English law does not involve complex issues of foreign law." Opp'n at 26 (citing Argus Media Ltd. v. Tradition Fin. Servs., Inc., No. 09 Civ. 7966(HB), 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009)). In particular, Argus is inapposite because the court determined that English law was not applicable and therefore the case did "not involve complex issues of foreign law." 2009 WL 5125113 at *6. That is not the case here, where the parties concede the court will have to apply foreign law.

The second factor heavily favors dismissal.

**Burden on local courts and juries.** Dismissing this case would eliminate the need to impanel a California jury with little connection to this case. See Gulf Oil, 330 U.S. at 508-09 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.").

10

The third factor favors dismissal.

**Court congestion.**  Though the Court is undoubtedly burdened with heavy caseloads and a number of judicial vacancies, Bundy is correct that "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."  Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984).

Defendants offers statistics from the Central District of California and the first 9 pages of a 2020 briefing paper authored by the House of Commons on Court Statistics for England and Wales to show that the Central District of California is more burdened than courts in the U.K.  See Mot. at 13-14, Dkt. 18-1 (Defs.' Decl.), Exs. 6 (Central District of California Statistics), 7 (English Court Statistics).

The Central District of California Statistics show that for civil cases between April 1, 2018 and March 31, 2019, the median time from filing to disposition was 5.2 months and the median time from filing to trial was 21.8 months.  See Central District of California Statistics at 2.  More recently, from April 1, 2020 to March 31, 2021, the median time from filing to disposition was 4.8 months and the median time from filing to trial was 17.4 months.  Id.

Bundy erroneously asserts "[t]he median time from filing to trial turns out to be more than double in an English court."  Opp'n at 25.  In support of this assertion, Bundy's counsel declares that the English Court Statistics show that "[f]or fast-track and multiple claims" in the U.K., the average time to trial was 59 weeks, or almost 15 months, compared to 21.8 *weeks* in the Central District of California. Dkt. 24-1 (De Bruyn Decl.) ¶ 8 (emphasis added); id., Ex. 6 at 8.[1]
As demonstrated above, from 2018-2019, the median time from filing to

---

[1] Both Defendants and Bundy provide incomplete excerpts of the English Court Statistics.  See Defs.' Decl., Ex. 7; De Bruyn Decl., Ex. 6.  The complete briefing report is available at https://researchbriefings.files.parliament.uk/documents/CBP-8372/CBP-8372.pdf.

trial in the Central District of California was 21.8 *months* or 87.2 weeks, and from 2020-2021, the median time was 17.4 months or 69.6 weeks.  <u>See</u> Central District of California Statistics at 2 (emphasis added).  The statistics provided by Defendants and Bundy clearly show a trial would likely be speedier in the U.K.

The fourth factor favors dismissal.

**Costs of resolving a dispute unrelated to this forum.** Neither party addressed this factor with sufficient specificity for the Court to assess it meaningfully.  Therefore, the fifth factor is neutral.

### 2.   Private Interest Factors

Courts consider the following private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive."  <u>Lueck</u>, 236 F.3d at 1145 (quoting <u>Gulf Oil</u>, 330 U.S. at 508).

**Residence of the parties and witnesses.**  Bundy and Defendants each find a different forum to be more convenient because each party focuses on different evidence and witnesses.  Bundy focuses on the witnesses and evidence related to infringement in the U.S. so she argues California is a more convenient forum.  Opp'n at 17. Defendants, on the other hand, focus primarily on the witnesses and evidence relating to ownership of the Illustration so they contend the U.K. is a more convenient forum.  Mot. at 9-11.

The Ninth Circuit has held, "a court's focus should not rest on the number of witnesses or quantity of evidence in each locale . . . [r]ather, a court should evaluate the materiality and importance of the anticipated evidence and witnesses' testimony and then determine their accessibility and convenience to the forum."  <u>Lueck</u>, 236 F.3d at 1146 (cleaned up) (citation omitted).

Though both parties purport to have identified witnesses located in the U.K. and U.S., on balance the Court finds that material and important witnesses are likely to reside in the U.K. or outside the U.S. First, Defendants identify a number of witnesses located in the U.K. that purportedly relate to the ownership of the Illustration, including Bundy, Penguin Books Ltd., and Sayers' successors-in-interest.  Mot. at 9-10.  Defendants, however, acknowledge that many of those potential witnesses are deceased.  See id.  Second, Defendants identify Live Nation's U.K. employees as potential witnesses for purposes of Bundy's U.K. and German copyright infringement claims.  Mot. at 10-11.

For her part, Bundy identifies two individuals located in California who allegedly have information regarding Defendants' infringing conduct. [2]  Opp'n at 17.  Bundy does not assert that the two witnesses have any information about the ownership of the Illustration. Id.  On the other hand, Bundy obtained and submitted a declaration from Nicola Evans, an English third party witness at Penguin – the U.K. publishing house responsible for publishing the Sayers Translation – that bears on the ownership of the Illustration question. See id.; see also De Bruyn Decl. ¶ 36, Ex. 29.  This suggests that material and important witnesses may and likely do reside in the U.K.

The first factor favors dismissal.

**Forum's convenience to the litigants.**  Bundy suggests this forum is convenient to Defendants because they are "resident defendants."  Opp'n at 19-20 (citing cases).  On the other hand, Defendants have identified Live Nation employees located in the U.K. with knowledge of and direct involvement with the marketing and sale of Infringing Products in the U.K. and Germany.  Mot. at 10-11. In addition, although Bundy is a U.K. citizen – which undoubtedly makes the U.K. a more convenient forum – in bringing suit in this

---

[2] Bundy does not specify whether these individuals have knowledge of Defendants' alleged infringing conduct in each of the countries named in her complaint – England, Germany, and the U.S. – or just the U.S.  See id.

Court, she has clearly consented to litigating this suit here.  <u>See</u> Opp'n at 15.

Therefore, when all of the evidence is considered, the second factor is neutral.

**Access to physical evidence and other sources of proof.** Defendants identify a number of potential documents from sources located in the U.K. that relate to ownership of the Illustration. <u>See</u> Mot. at 4, 9-11.  Defendants also argue that the process to obtain discovery in the U.K. for use in U.S. litigation is "difficult, time-consuming, and expensive . . . with an uncertain result."  Mot. at 11. According to Defendants, they would be required to follow the procedures set forth in the <u>Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters</u> to undertake discovery from third parties in the U.K., and then petition a U.K. court to actually obtain the discovery.  Mot. at 11-12.

Bundy contends that relevant documents, including correspondence between Sayers and Scott-Giles, can be found in Illinois.  Opp'n at 17-18.  Bundy does not otherwise dispute that there are relevant documents located in the U.K.  <u>See id.</u>  Bundy also asserts that Defendants primarily focus on the costs and difficulties associated with obtaining discovery and deposing unwilling witnesses based in the U.K., but do not address the same difficulties Bundy would face in the U.S.  <u>Id.</u> at 18-19.  As stated above, the access to evidence inquiry focuses not on the quantity of evidence, but rather the "materiality and importance of the anticipated evidence."  <u>Lueck</u>, 236 F.3d at 1146 (cleaned up) (citation omitted).  Based on the parties' briefs and supporting declarations, the Court finds material and important evidence on the issue of ownership of the Illustration and Defendants' alleged infringing conduct in the U.K. and Germany is likely located in the U.K.

The third factor favors dismissal.

The Court recognizes the hardship Bundy may face in obtaining discovery in the U.S. – particularly with respect to Bundy's U.S.

copyright claims – if she is required to refile in the U.K.  To help alleviate Bundy's difficulty, the Court will condition dismissal on (1) Defendants' agreement that Bundy may utilize the discovery procedures set forth in the Federal Rules of Civil Procedure and (2) Defendants' agreement to voluntarily produce documents and witnesses under their control in the U.S. for use in the U.K. suit. See Carijano, 643 F.3d at 1235-36 (citing cases that did not find an abuse of discretion where the trial court conditioned dismissal on a defendant's agreement to (1) conduct discovery pursuant to the Federal Rules of Civil Procedure or (2) produce documents and make available witnesses based in the U.S.).

**Whether unwilling witnesses can be compelled to testify.** Defendants argue English witnesses cannot be compelled to testify at trial in the U.S.  Mot. at 12, 14.  Bundy counters that Defendants have failed to carry their burden on this factor because they have not identified any unwilling witness.  Opp'n at 20.  The Court agrees.

"The proponent of a *forum non conveniens* dismissal is not required to identify potentially unavailable witnesses in exact detail." Carijano, 643 F.3d at 1231.  However, a defendant must show or represent that a witness is unwilling to testify.  Id.  Here, Defendants have not shown or even represented that any witness is unwilling to testify.

The fourth factor weighs against dismissal.  Because the Court has determined that Defendants have not identified any unwilling witness, the Court finds the factor related to the cost of bringing witnesses to trial also weighs against dismissal.

**Enforceability of judgment.**  California generally enforces foreign judgments, as long as they are issued by impartial tribunals that have afforded the litigants due process.  See Cal. Civ. Proc. Code § 1716(a)-(d).  Judgments rendered by U.K. courts meet this standard. See, e.g., Soc'y of Lloyds v. Blackwell, 127 F. App'x 961 (9th Cir. 2005). Bundy does not dispute that English judgments are enforced in California, but is concerned that a California court will not enforce

15

injunctive relief ordered by a U.K. court.  Opp'n at 21.  Defendants
state – and Bundy does not dispute – that they have already ceased
selling the allegedly Infringing Products and "do not plan to resume
such sales."  Mot. at 24; Reply at 6.  In any event, neither party cites
any authority in which an injunction entered by an English court
sought to be enforced in California.

The sixth factor favors dismissal.

**All other practical problems or other facts that contribute
to an efficient resolution.**  Neither party presents any persuasive
evidence or compelling arguments regarding the enforceability of the
judgment factor. Therefore, the court finds the seventh factor to be
neutral.

### 3.    Summary of Public and Private Interest Factors

For the reasons set forth above, the Court concludes that the
likelihood that this Court will have to apply or interpret U.K. and
German law greatly favors dismissal.  The factors relating to the
burden on the local courts and juries and court congestion favors
dismissal.  The factor relating to local interest of the lawsuit slightly
favors dismissal.  The factor relating to costs of resolving a dispute
unrelated to this forum are neutral.  Therefore, the public interest
factors favor dismissal.

The Court also concludes that factors relating to the residence of
the parties and witnesses, access to physical evidence and other sources
of proof, and enforceability of the judgment weigh in favor of dismissal.
The factors relating to whether unwilling witnesses can be compelled to
testify and the cost of bringing witnesses to trial weigh against
dismissal.  The factors relating to the forum's convenience to the
litigants and all other practical problems that make trial of a case easy,
expeditious, and inexpensive are neutral.  Therefore, the private factors
favor dismissal.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss on the grounds of *forum non conveniens* and to dismiss this action without prejudice on that basis.[3]

Dismissal is contingent on the following conditions:

1.  Defendants must agree to:

    a.  Submit themselves to the jurisdiction of a U.K. court if this action is filed by Bundy in the U.K.;

    b.  Waive any statute of limitations defense that would not be available in this Court for a period of 120 days after dismissal;

    c.  Satisfy any judgment obtained in the U.K., subject to applicable appellate rights;

    d.  Permit Bundy to utilize the discovery procedures set forth in the Federal Rules of Civil Procedure and produce or make available any evidence and witnesses within their control in the U.S. related to ownership of the Illustration or Defendants' alleged copyright infringement in the U.S.; and

2.  A U.K. court's acceptance of jurisdiction over Bundy's claims, including her U.S. copyright claims.

---

[3] Because the Court dismisses Bundy's complaint on *forum non conveniens* grounds, the Court need not address Defendants' alternative request to have the Court decline supplemental jurisdiction over Bundy's U.K. and German law claims.

On or before November 1, 2021, Defendants should file a brief, non-argumentative notice indicating whether they accept conditions (1)(a)-(d).  A final order on Defendants' motion will issue thereafter.

IT IS SO ORDERED.

Date: October 21, 2021

Dale S. Fischer
United States District Judge