Inge De Bruyn (SBN 327912)
inge.debruyn@modo-law.com
MODO LAW, P.C.
4218 Via Padova
Claremont, CA 91711
Phone: 323-983-2188
Fax: 323-693-0881

*Attorney for Plaintiff, Jocelyn Susan Bundy.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOCELYN SUSAN BUNDY, an individual,<br><br>        Plaintiff.<br><br>        vs.<br><br>NIRVANA L.L.C., a Washington Limited Liability Company; LIVE NATION MERCHANDISE, LLC, a Delaware Limited Liability Company; MERCH TRAFFIC LLC, a Delaware Limited Liability Company; SILVA ARTIST MANAGEMENT, LLC, a California Limited Liability Company,<br><br>        Defendants. | Case No. 2:21-cv-03621-DSF-MAA<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59 OR, ALTERNATIVELY, FOR RELIEF FROM A JUDGMENT OR ORDER UNDER FED. R. CIV. P. 60, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>The Honorable Dale S. Fischer<br><br>Hearing Date: February 28, 2022<br>Hearing Time: 1:30 pm<br>Courtroom: 7D<br><br>*(Filed concurrently with Declaration of Inge De Bruyn; [Proposed] Order)* |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD;

PLEASE TAKE NOTICE THAT, on February 28, 2022 at 1:30 pm, in the courtroom of the Honorable Dale S. Fischer, located at 350 W 1st Street, Los Angeles, CA 90012, Courtroom 7D, Plaintiff Jocelyn Susan Bundy ("Ms. Bundy") will and hereby does move for reconsideration under Rule 59 or, alternatively, under Rule 60 of the Federal Rules of Civil Procedure and under Rule 7-18 of the Central District of California of this Court's Final Judgment of November 4, 2021 dismissing Plaintiff's action without prejudice on the grounds of *forum non conveniens*.

Reconsideration is warranted on two grounds. First, there is significant new evidence that was not available to Plaintiff at the time this Judgment was issued and that would likely have changed the disposition of the case. Second, in any event, the Judgment and underlying Order were legally erroneous with respect to (a) the application of the legal standard that applies in the Ninth Circuit to *forum non conveniens* dismissals, (b) the determination that England is an adequate alternative forum, and (c) the consideration and balancing of some of the public and private interest factors in the *forum non conveniens* analysis and the allocation of the burden of proof on those factors.

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support thereof, the declaration of Inge De Bruyn and the exhibits submitted therewith, and upon such other and further matters as may be presented at any hearing on this motion.

This motion is made pursuant to Local Rule 7-3. Counsel met and conferred on November 16, 2021.


DATED: December 1, 2021          MODO LAW, P.C.

                              By:   */s/ Inge De Bruyn*

                                    Inge De Bruyn

                                    *Attorney for Plaintiff, Jocelyn Susan Bundy*

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

3
## TABLE OF CONTENTS

4   I.   INTRODUCTION ...................................................................................7

5
6   II.  LEGAL STANDARD .............................................................................7

7   III. ARGUMENT ..........................................................................................8

8       A.  Plaintiff has discovered new evidence that likely would have changed
9           the disposition of the case ...........................................................8

10          A.1.   New evidence conclusively settles the copyright ownership
                   issue ...................................................................................8

11          A.2.   New evidence identifies additional U.S. infringers and shows
12                 ongoing infringement in the U.S. .....................................9

13      B.  The court misunderstood the legal standard for *forum non conveniens*
            dismissals and understated Defendants' burden .........................10

14      C.  The court erroneously held that England is an adequate alternative
15          forum. 11

16          C.1.   The Court did not hold Defendants to their burden that they
                   were all amenable to process in England ......................12

17          C.2.   The Court misinterpreted *Lucasfilm* and erroneously held that
18                 England permits litigation of Plaintiff's U.S. copyright claims .....13

19      D.  The court's consideration and balancing of the private and public
            interest factors was not reasonable .............................................18

20          D.1.   The Court failed to give *any* deference to Plaintiff's choice of
21                 forum ................................................................................18

22          D.2.   The Public Interest Factors overwhelmingly weigh against
                   dismissal .........................................................................20

23                 (1) California's interest in the action weighs against dismissal .....20

24                 (2) The need to apply U.S. law on the main claims and defenses
25                     weighs against dismissal ............................................21

26                 (3) The remaining factors relating to the burdens and cost of
                       resolving actions "unrelated" to this forum weigh against
27                     dismissal ...................................................................23

28          D.3.   The Private Interest Factors also weigh against dismissal ............23

(1) The court correctly held that the factors whether unwilling witnesses can be compelled to testify and the cost of bringing witnesses to trial weigh against dismissal ..................23

(2) The court overemphasized the location of *potential* U.K. witnesses and ignored the U.S. residence of the Defendants and of *actual* witnesses ...........................................................24

(3) The court failed to properly balance the access-to-evidence factor ....................................................................................26

(4) The court erred that the enforceability factor favors dismissal ..................................................................................28

(5) The convenience-to-litigants factor clearly favors California since all four Defendant corporations reside in California ................................................................................29

(6) The court failed to consider "all other practical problems or other facts that contribute to an efficient resolution," which weigh against dismissal .........................................................29

IV. CONCLUSION ...............................................................................31

1
2

# TABLE OF AUTHORITIES

3

**Cases**

4

*Argus Media Ltd. v. Tradition Financial Services Inc.*, 09 Civ. 7966 (HB) (S.D.N.Y.
5
  Dec. 29, 2009) ........................................................................................22
6

*Beijing iQIYI Sci. & Tech. Co. v. iTalk Glob. Commc'ns, Inc.*, CIVIL No. 6-19-CV-
7
  00272-ADA (W.D. Tex. Dec. 17, 2019) ......................................................22, 27
8

*Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201 (9th Cir. 2009) ...........21, 26
9

*Carijano v. Occidental Petroleum Corp.*, 626 F.3d 1137 (9th Cir. 2010) .......passim
10

*Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983) ...........................10, 11, 13, 18
11

*City of Almaty v. Khrapunov,* No. 15-56627 (9th Cir. Mar. 30, 2017) .............13, 21
12

*Clipper Exxpress, v. Rky. Mount. Motor Tariff*, 674 F.2d 1252 (9th Cir. 1982).......8
13

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208 (9th Cir. 1987) 8
14

*Creative Technology, Ltd. v. Aztech System Pte, Ltd.*, 61 F.3d 696 (9th Cir. 1995)
15
  ..............................................................................................................15
16

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) .................................passim
17

*Ellis v. AAR Parts Trading, Inc.*, 357 Ill. App. 3d 723 (Ill. App. Ct. 2005)............20
18

*Elmore v. Henderson*, 227 F.3d 1009 (7th Cir. 2000)...............................................17
19

*Gutierrez v. Advanced Medical Optics, Inc.*, 640 F.3d 1025 (9th Cir. 2011) .........12
20

*Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366 (Fed. Cir.
21
  2016)........................................................................................................12
22

*Lucasfilm Ltd. v. Ainsworth* [2011] UKSC 39 ...............................11, 14, 17
23

*Miller v. Calotychos*, 03 Civ. 4273 (S.D.N.Y. Jan. 29, 2004)................................20
24

*Neelon v. Bharti*, 596 F. App'x 532 (9th Cir. 2014) ...............................................27
25

*Neuralstem v. Reneuron,* 365 F. App'x 770 (9th Cir. 2010) ..........................21, 27
26

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005).............20
27

*O'Donnell v. Vencor Inc.*, 466 F.3d 1104 (9th Cir. 2006).......................................17
28

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) .................................................22

*Ransom v. Lee*, No. CV 14-600-DSF (KK) (C.D. Cal. June 15, 2018)....................7

*Ravelo Monegro v. Rosa,* 211 F.3d 509 (9th Cir. 2000) ...............................passim

*Reid-Walen v. Hansen*, 933 F.2d 1390 (8th Cir. 1991) ...........................................26

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006) .21, 22, 28, 31

*Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058 (9th Cir. 2003) .............8

*Zhao v. Ye*, No. 15-35428 (9th Cir. Aug. 31, 2018) ................................................7

*Zimmerman v. City of Oakland*, 255 F.3d 734 (9th Cir. 2001) ................................7

**Statutes**

17 U.S.C. § 101 .......................................................................................................15

17 U.S.C. § 507 .......................................................................................................17

28 U.S.C. § 1291 .......................................................................................................7

Cal. Code of Civ. Proc. §1715(a) ...........................................................................28

**Rules**

Federal Rule of Civil Procedure 59(e) ................................................................7, 8

Federal Rule of Civil Procedure 60(b) ....................................................................8

**Treatises**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (2d ed.
   1992)....................................................................................................................7

## I.     **INTRODUCTION**

In a final judgment issued on November 4, 2021, this Court dismissed this action for *forum non conveniens*, finding England to be an adequate alternative forum for all of Plaintiff's claims and holding that the private and public interest factors make it a more convenient one. Plaintiff is filing this motion to respectfully urge the Court to reconsider its decision because material errors of law and fact appear to have guided the dismissal and because new evidence has been discovered that would likely have changed the disposition had it been known to the Court before.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 59(e) permits a court to alter or amend a judgment previously entered upon a motion of a party made within 28 days of the entry of judgment. Rule 59(e) offers relief from final, appealable orders within the meaning of 28 U.S.C. § 1291. *See Ransom v. Lee*, No. CV 14-600-DSF (KK), at *3 (C.D. Cal. June 15, 2018). A dismissal for *forum non conveniens* is considered a final, appealable judgment, even when it is a conditional dismissal without prejudice. *See Zhao v. Ye*, No. 15-35428, at *2-3 (9th Cir. Aug. 31, 2018); 15A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3914.12 (2d ed. 1992) ("Finality is not destroyed by the fact that the dismissal is subject to specific conditions"). "Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law. *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (citation omitted).

"To prevail on a Rule 59(e) motion because of newly discovered evidence, the movant must show the evidence: (1) is truly 'newly discovered'; (2) could not have been discovered through the exercise of 'due diligence'; and (3) is of such a magnitude that production of it earlier would have likely changed the disposition of the case. *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208, 211 (9th

Cir. 1987). A district court also has considerable discretion when considering a motion to amend a judgment under Rule 59(e) where the movant demonstrates that the previous disposition was clearly erroneous. *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). "Rule 59(e) provides an efficient mechanism by which a trial court judge can correct an otherwise erroneous judgment without implicating the appellate process." *Clipper Exxpress, v. Rky. Mount. Motor Tariff*, 674 F.2d 1252, 1260 (9th Cir. 1982). A motion made under Rule 59(e) thus enables the trial judge to reconsider the validity of her judgment and vacate or alter it as she sees fit. *Id.*

In addition, Fed. R. Civ. P. 60(b) provides for reconsideration of a final judgment, order, or proceeding upon a showing of, *inter alia*, mistake or inadvertence, newly discovered evidence, misrepresentation by an opposing party, or some other reason that justifies relief.

"A district court abuses its discretion by identifying an incorrect legal standard, or by applying the correct standard illogically, implausibly, or in a manner without support in inferences that may be drawn from facts in the record." *Carijano v. Occidental Petroleum Corp.*, 626 F.3d 1137, 1144 (9th Cir. 2010) (citation omitted). "In the *forum non conveniens* context, a 'district court may abuse its discretion by relying on an erroneous view of the law, by relying on a clearly erroneous assessment of the evidence, or by striking an unreasonable balance of relevant factors.'" *Id.* (quoting *Ravelo Monegro v. Rosa,* 211 F.3d 509, 511 (9th Cir. 2000)).

## III.   ARGUMENT

### A.   PLAINTIFF HAS DISCOVERED NEW EVIDENCE THAT LIKELY WOULD HAVE CHANGED THE DISPOSITION OF THE CASE

#### A.1.   New evidence conclusively settles the copyright ownership issue

In balancing the private and public interest factors, the Court attached great importance to the "potential issues" that Defendants raised regarding Plaintiff's title.

1   The Court's finding that those issues are governed by U.K. law and that some
2   witnesses and documents on that topic may be found in the U.K. permeated its
3   opinion that this case belongs in a U.K. court. Newly discovered evidence, however,
4   conclusively settles any alleged issues and allows this Court to shift its focus back
5   to what this case is really about — Defendants' wrongful conduct.

6        Defendants acknowledge that there can only be three potential copyright
7   owners: (a) Plaintiff, as the successor-in-interest to C.W. Scott-Giles, (b) Penguin
8   Books, Ltd., and/or (c) the successors-in-interest to Dorothy L. Sayers. Earlier,
9   Plaintiff submitted a sworn declaration from Penguin Books confirming that Penguin
10  does not own the copyright in the Illustration. [Dkt. 24-30.] Plaintiff is now also able
11  to present a declaration from a representative of the Sayers trustees, in which they
12  too disclaim ownership. [De Bruyn Decl. ¶ 8, Ex. 1.] While Defendants' contentions
13  that anyone other than Plaintiff may be the rightful owner of the copyright in the
14  Illustration were tenuous to begin with, they are no longer entitled *any* weight, much
15  less should they continue to dominate this Court's *forum non conveniens* analysis.

16  **A.2.    New evidence identifies additional U.S. infringers and shows ongoing**
17  **infringement in the U.S.**

18        In addition, when this Court assessed the enforceability-of-judgment factor,
19  it discounted Plaintiff's concern that injunctive relief ordered by a U.K. court cannot
20  be enforced in California. [Order, Dkt. 27, p. 15-16.] It did so primarily based on
21  Defendants' allegation that they have already ceased the infringing conduct and do
22  not plan to resume it. However, Plaintiff has now learned that Infringing Products
23  are still being sold in the U.S. Several "officially licensed" third parties continue to
24  sell t-shirts and vinyl albums depicting the Illustration to the apparent benefit of
25  some or all Defendants. [De Bruyn Decl. ¶¶ 11-17, Exs. 2-8.]

26        Not only does this new evidence underscore the need for enforceability of
27  an injunction to stop Defendants from authorizing third-party use of the Illustration
28  and benefiting from that use (*see* D.3(4), it also highlights a vital issue that Plaintiff

1   raised in her opposition but that this Court has failed to address – that discovery will
2   reveal other U.S. infringers that cannot be joined or called before a U.K. court.

3   **B.**   **THE COURT MISUNDERSTOOD THE LEGAL STANDARD FOR *FORUM NON***
4   ***CONVENIENS* DISMISSALS AND UNDERSTATED DEFENDANTS' BURDEN**

5           Further adding to the injustice of the dismissal of this action is the Court's
6   application of an incorrect legal standard in its analysis. The Court seems to have
7   lost sight of the basic principle that a plaintiff – even a foreign one – may freely
8   decide where to bring her claims. So long as the chosen forum has personal
9   jurisdiction over the defendant, a plaintiff's choice is presumed rightful and will only
10  be disturbed in extraordinary circumstances. *Carijano*, 643 F.3d at 1224*; Ravelo*
11  *Monegro,* 211 F.3d at 514. *Forum non conveniens* is "'an exceptional tool to be
12  employed sparingly,' and not a 'doctrine that compels plaintiffs to choose the
13  optimal forum for their claim.'" *Carijano*, 643 F.3d at 1224 (quoting *Dole Food Co.*
14  *v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)).

15          The heavy burden of justifying a dismissal for *forum non conveniens* rests
16  on the defendant. *Dole Food*, 303 F.3d at 1118. To prevail, the defendant is required
17  to demonstrate (1) that there is an adequate alternative forum, and (ii) that the
18  balance of private and public interest factors "strongly" favors dismissal. *Id.* "'[T]he
19  standard to be applied . . . is whether . . . defendants have made a clear showing of
20  facts which . . . establish such **oppression and vexation** of a defendant as to be out
21  of proportion to plaintiff's convenience, which may be shown to be slight or
22  nonexistent.'" *Id.* (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)
23  (emphasis added)). Absent such a showing, the plaintiff's choice of forum should
24  not be disturbed. *Id.*

25          Defendants did not even come close to meeting that heavy burden here.
26  Regarding the availability of England as an adequate forum, Defendants presented
27  virtually no evidence that they would be amenable to service there. Worse yet, they
28  misrepresented to this Court the U.K. Supreme Courts' ruling in *Lucasfilm Ltd. v.*

*Ainsworth* [2011] UKSC 39 and its fatal consequences for their motion. Since Defendants did not, and cannot, establish that England is an adequate forum for *all* of Plaintiff's claims, their motion should have been denied as a matter of law, without this Court even needing to reach the private and public interest factors. In addition, the evidence presented by Defendants on essential factors of the interest analysis fell far short of the "clear showing" of exceptional circumstances that Defendants were required to make.

The Court of Appeals in this circuit has repeatedly held that the harsh and exceptional measure of dismissal for *forum non conveniens* can only be justified if a defendant demonstrates disproportionate "oppression and vexation" – including in actions brought by foreign plaintiffs. *See, e.g., Carijano*, 643 F.3d at 1227; *Dole Food*, 303 F.3d at 1118; *Ravelo Monegro*, 211 F.3d at 514. Nowhere did the Court mention this well-established standard, much less apply it. The Court neglected to appreciate the heavy burden that Defendants bore in establishing their disproportionate inconvenience. Instead, it considered for itself which forum it thought most appropriate and, in some instances, even flipped the burden onto Plaintiff to *dis*prove the convenience of the alternative forum. In doing so, the Court also failed to strike a balance of the private and public interest factors that would be deemed reasonable under the correct legal standard. The Court's dismissal of this case, which centers on copyright infringement by U.S. and/or California residents in California, the U.S., and the rest of the world, resulting from decisions that were made in California, was an abuse of discretion.

**C.   THE COURT ERRONEOUSLY HELD THAT ENGLAND IS AN ADEQUATE ALTERNATIVE FORUM.**

To prevail on their motion to dismiss for *forum non conveniens* Defendants were required to prove, as a threshold matter, that England is an adequate alternative forum for Plaintiff's claims. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983) ("The defendant bears the burden of proving the existence of an adequate

alternative forum."). Making this showing is considered "particularly important" when the dispute implicates the enforcement of intellectual property rights.[1]

Defendants' burden of proof was two-fold. On the one hand, they needed to establish that they were *all* "amenable to process" in England; on the other hand, they needed to show that Plaintiff would be able to obtain a satisfactory remedy for *all* her claims in an English court. *See Carijano*, 643 F.3d at 1225; *see also Gutierrez v. Advanced Medical Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011) (quoting *Dole Food*, 303 F.3d at 1118) ("'An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum' and 'when the *entire case and all parties* can come within the jurisdiction of that forum.'") (emphasis in original).

Defendants did not carry their burden on either prong. In addition, they deliberately misled this Court about the correct interpretation of the U.K. Supreme Court's ruling in *Lucasfilm*, causing it to erroneously conclude that a U.K. court will exercise jurisdiction over Plaintiff's U.S. copyright claims.

## C.1. The Court did not hold Defendants to their burden that they were all amenable to process in England

As a first step, Defendants needed to demonstrate that they were all amenable to process in the U.K. Although an easy burden to meet, it did require *all* Defendants to agree *on the record* to submit to the jurisdiction of the English courts. Yet, only one Defendant did. Even after Plaintiff raised this issue, Defendants still did not make any effort to supplement the record with affidavits or a stipulation to support

---

[1] *See, e.g., Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366, 1373 (Fed. Cir. 2016) ("It is particularly important that a *forum non conveniens* movant demonstrate the adequacy of an alternative forum when the dispute implicates the enforcement of intellectual property rights. The policies underlying United States copyright, patent, and trademark laws would be defeated if a domestic forum to adjudicate the rights they convey was denied without a sufficient showing of the adequacy of the alternative foreign jurisdiction. It is largely for this reason that district courts have routinely denied motions to dismiss on *forum non conveniens* grounds when United States intellectual property rights form the crux of the dispute.")

1     their contention with respect to the other Defendants. Defendants' amenability to

2     service of process in the U.K. was a "*sine qua non* in determining [the] foreign

3     forum's adequacy," [Order, Dkt. 27, p. 5] and it was an element on which the burden

4     of proof fell squarely on Defendants. *See Cheng*, 708 F.2d at 1411. Defendants did

5     not meet that burden when "they failed to present evidence on this issue." *City of*

6     *Almaty v. Khrapunov*, No. 15-56627, at *3 (9th Cir. Mar. 30, 2017) (holding that it

7     was Defendants' burden "in the first instance" to establish their amenability to

8     service).

9          Not only was the record void of evidence that *all* Defendants would accept

10    service in the U.K., but Defendants also misrepresented the situation when they

11    claimed that "Defendant Live Nation Merchandise, LLC, which sold allegedly

12    infringing merchandise in the United Kingdom and Germany from its offices in

13    London is obviously subject to personal jurisdiction in the United Kingdom." [Reply,

14    Dkt. 25, p. 3:10-13.] There is nothing obvious about this, it is not supported by any

15    evidence, and this statement is moreover false. The fact that an English Live Nation

16    subsidiary (Live Nation Merchandise **Ltd.**) may be involved in the infringement of

17    Plaintiff's copyrights in the U.K. as a sublicensee, may make *that* subsidiary subject

18    to personal jurisdiction in England, but not the American company. And Plaintiff

19    would certainly not be able to hold the U.K. subsidiary liable for infringement in the

20    U.S. by any of the American Live Nation entities, which are admittedly Nirvana's

21    main licensees and the ultimate instigators and beneficiaries of the infringement.

22         Conditioning the dismissal for *forum non conveniens* on acceptance of U.K.

23    jurisdiction *post facto* is not a substitute for the burden that Defendants bore "in the

24    first instance." The Court abused its discretion when it did not hold Defendants to

25    that burden and simply relied on their bare allegations.

26   **C.2.**   **The Court misinterpreted *Lucasfilm* and erroneously held that England**

27          **permits litigation of Plaintiff's U.S. copyright claims**

28        In addition, Defendants misstated the U.K. Supreme Court's ruling in

---

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59    - 13 -
OR, ALTERNATIVELY, FOR RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60

*Lucasfilm*, understanding full well that this ruling completely erodes their position that England is an adequate forum for *all* of Plaintiff's claims.

Defendants are represented by seasoned copyright attorneys who are intimately familiar with the distinction between a "foreign ***work***" and a "foreign ***copyright***." Yet, in their Reply, they deliberately conflate these two vastly different notions, thereby misrepresenting to this Court not only the meaning of *Lucasfilm* and its significance for this case, but also the nature of Ms. Bundy's claims. Specifically, Defendants state:

> "The question in *Lucasfilm* was whether an English court could adjudicate a claim involving the alleged infringement abroad of a foreign copyright (i.e., a copyright originating outside the United Kingdom). *Lucasfilm* held that such claims are almost always justiciable by English courts, unless there is a question as to the copyright's existence under the laws of its country of origin. […] *Lucasfilm* has no application here because the parties agree that the copyright in the Illustration originated in the United Kingdom. […] Nothing in *Lucasfilm* prohibits an English court from adjudicating a claim for infringement of a U.K. copyright under U.S. law, including where the validity of the U.K. copyright is challenged. In any event, resolution of Plaintiff's U.S. copyright claims would not require an English court to adjudicate the validity of a U.S. copyright in the Illustration. […] Plaintiff claims she can enforce her U.K. copyright in the United States thanks to the Berne Convention Implementation Act and the URAA, which eliminated former copyright formalities and allow for the restoration of copyright in certain foreign works formerly in the public domain." [Reply, Dkt. 25, 1:10-2:12].

Above all, <u>Plaintiff does not "agree" in any way, shape, or form that the ***copyright*** in the Illustration originated in the United Kingdom</u>. It is the ***work*** that "originated" in England. Copyright is the protection offered to a work, regardless of its origin, under the laws of the country where protection against infringement is sought. As such, the copyright that Plaintiff is seeking to enforce against Defendants *with respect to their misconduct in the U.S.* "originated" in the U.S.; it is a right created under the laws of the United States. <u>Defendants' allegation that Lucasfilm is inapposite because Ms. Bundy is seeking to enforce her *U.K.* copyright in the United States is nothing short of dishonest</u>. Defendants know perfectly well that it is impossible to enforce a U.K. copyright against infringement in the U.S. Only a U.S.

1   copyright can protect against infringement in the U.S., just as only a U.K. copyright

2   can protect against infringement in the U.K. So, <u>equally dishonest is Defendants'</u>

3   <u>further contention that "resolution of Plaintiff's U.S. copyright claims would not</u>

4   <u>require an English court to adjudicate the validity of a U.S. copyright in the</u>

5   <u>Illustration," as this is exactly what an English court would be required to do.</u>

6          To be clear, a foreign ***work*** – from the perspective of a U.K. court – is a work

7   created by a non-U.K. national and/or first published outside the U.K.[2] A foreign

8   ***copyright***, on the other hand, is the copyright protection granted to a work – whether

9   it be a U.K. work or a foreign work – under the laws of another nation, in this case

10  under the laws of the United States. Copyright laws are national laws. No country

11  can provide copyright protection to a work outside of its own borders. In other words,

12  **<u>there is no such thing as a U.K. copyright that would be enforceable throughout</u>**

13  **<u>the world</u>**. To mitigate this problem and widen the scope of protection granted to

14  the works of its citizen-authors, most countries have adhered to the Berne

15  Convention. Through the principle of "national treatment," the Berne Convention

16  aims to provide not *extra*-territorial protection but *multi*-territorial protection — i.e.,

17  protection of the work under the various national laws of its member states. [3] As such,

18  _____

19  [2] Similarly, vis-à-vis a U.S. court, a foreign work is a work that is not a U.S. work under the definition of 17 U.S.C. § 101. Foreign works are thus, generally, "works created by author(s) who are not U.S. citizens or U.S. nationals and/or works that were first published abroad." U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 2002.1 (3d ed. 2021).

20

21  [3] Just as U.S. copyright (law) does not apply to infringing acts that take place entirely outside the U.S., U.K. copyright (law) does not reach infringing conduct that takes place entirely outside the U.K. This principle of "national treatment" is explained at length in the *Subafilms* decision cited by Defendants [Reply, Dkt. 25, 10:22-28] and a plethora of other cases since. *See, e.g., Creative Technology, Ltd. v. Aztech System Pte, Ltd.*, 61 F.3d 696, 700-701 (9th Cir. 1995) ("[T]he principle of national treatment implicates a rule of territoriality in which [t]he applicable law is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national or in which the work was first published.").

22

23

24

25

26  Prof. Ginsburg also illustrates this point: "U.S. copyrights can be owned by non-U.S. residents. Not only may a foreigner acquire a U.S. copyright by transfer from a U.S. author or copyright owner, but by virtue of international copyright agreements such as the Berne Convention, to which the United States is a party, a foreigner from a treaty country who creates a work of authorship abroad is automatically a U.S. copyright owner." *See* Dkt. 24-8 at p. 592-593. **It is precisely this "automatic" ownership of a *U.S.* copyright in the U.K. Illustration that**

27

28

**a U.K. *work* will enjoy multiple *copyrights***, such as a U.K. copyright (i.e., protection under U.K. laws against infringements in the U.K.), a German copyright (i.e., protection under German laws against infringements in Germany), a French copyright (i.e., protection under French laws against infringements in France), etc.

Most relevant here, of course, is the U.S. copyright covering the Illustration, i.e., the protection that the Illustration enjoys under U.S. copyright laws against infringements in the U.S. As a result of Defendants' misrepresentations, this Court mistakenly held that the ruling in *Lucasfilm* is inapposite here, finding that "[t]he registration and validity of Bundy's copyright does not appear to be an issue here." [Order, Dkt. 27, p. 8.] The opposite is true; it is *precisely* the registration and validity of Ms. Bundy's U.S. copyright in the Illustration – a foreign copyright from the perspective of an English court – that is at issue here.

In fact, Defendants' entire defense against Plaintiff's U.S. copyright claims rests on the allegation that she does not have a valid *U.S.* copyright in the Illustration for an alleged failure to comply with registration and other formalities in force under the 1911 U.S. Copyright Act. Indeed, Defendants' main argument has always been that an alleged simultaneous publication of the Illustration in the U.S. without proper registration or copyright notice permanently ejected the Illustration in the U.S. public domain and, thus, forever deprived it of protection against infringement in the U.S. [Mot., Dkt. 18, 20-21; Reply, Dkt. 25, 11:4-10.]. In the alternative, Defendants argue that, even if they are wrong about the simultaneous publication, Plaintiff would still not have a valid and enforceable U.S. copyright *vis-à-vis Defendants* because they would all qualify as "reliance parties" under 17 U.S.C. § 104(A), and it would be "premature" for Ms. Bundy to enforce her U.S. copyright in the Illustration against *them*. [Reply, Dkt. 25, 11:11-12:3.]

It cannot reasonably be disputed that both those arguments turn on an

---

**Defendants are challenging** based on registration and other formalities imposed by U.S. copyright laws that were in effect at the time the Illustration was created.

1   evaluation of the subsistence, validity, and scope of the copyright protection that the

2   Illustration enjoys under *U.S.* copyright law – i.e., on the validity and enforceability

3   of the *U.S.* copyright in the Illustration – and that this is precisely the sort of

4   evaluation that an English court will not engage in.[4] As this Court correctly noted,

5   *Lucasfilm* clearly held that "a U.K. court will not concern itself with determining the

6   validity or registration of a foreign copyright *[here a U.S. copyright granted to a*

7   *U.K. work]*[5] for purposes of evaluating any infringement of the foreign copyright."

8   [Order, Dkt. 27, p. 7.] Therefore, the Court's conclusion that *Lucasfilm* does not

9   apply here and that the U.K. court is an adequate alternative forum for all of

10   Plaintiff's claims, including her U.S. copyright claims, constitutes clear error.

11       Defendants' inability to establish that U.K. courts are available and adequate

12   to provide a remedy for Plaintiff's U.S. copyright claims is detrimental to its motion.

13   It forecloses dismissal for *forum non conveniens* and calls for this Court to alter its

14   judgment and deny Defendants' motion to dismiss as a matter of law.[6]

15   _____

16   [4] The fact that Defendants, while having an alleged expert on deck to advise
     on all other issues of U.K. law, chose not to rely on that expert to support their false
     contentions regarding the meaning of *Lucasfilm* speaks volumes.

17   [5] In fact, *Lucasfilm* also involved an attempt to enforce, in a U.K. court, the
     *U.S.* copyright of works created in the U.K. by U.K. nationals. *See* Dkt. 24-2, at ¶ 2
18   ("These events all took place in England."). So, the facts in *Lucasfilm* are similar to
     the facts here, the only difference being that in *Lucasfilm* the existence and validity
19   of the *U.S.* copyright was not in dispute; only the existence of a U.K. copyright was.

     [6] As noted in Plaintiff's opposition, the only other option to overcome the
20   jurisdictional obstacle presented by *Lucasfilm* would be to condition the dismissal
     on Defendants' acceptance of the validity of the U.S. copyright in the Illustration,
21   and its enforceability against all of them. To merely make the dismissal "subject to
     a U.K. court's acceptance of jurisdiction over Bundy's claims, including her U.S.
22   copyright claims," as the Court did here, is insufficient. Not only does it invert
     Defendants' burden, but it also works to shield them from liability for their U.S.
23   misconduct altogether. Indeed, under 17 U.S.C. § 507, civil actions for copyright
     infringement need to be commenced within three years after the claim accrued.
24   Although disputed, Defendants allege that they stopped selling Infringing Products
     in the U.S. in March 2021. While filing suit in this Court tolled the statute of
25   limitations, the dismissal of this action, even if without prejudice, "[wiped out] the
     tolling effect of the filing of the suit […] and the statute of limitations is deemed to
26   have continued running from whenever the cause of action accrued, without
     interruption by that filing." *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir.
27   2000). *See also O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006)
     (citation omitted) ("'In such cases, dismissal of the original suit, even though labeled
28   as without prejudice, nevertheless may sound the death knell for the plaintiffs
     underlying cause of action if the sheer passage of time precludes the prosecution of

**D.**     <u>THE COURT'S CONSIDERATION AND BALANCING OF THE PRIVATE AND</u>
        <u>PUBLIC INTEREST FACTORS WAS NOT REASONABLE</u>

Since the unavailability of the U.K. as an adequate alternative forum was sufficient to end the matter, the Court did not even need to reach the private and public interest factors. However, should a further analysis still be found relevant, Plaintiff requests that this Court re-evaluate and re-balance the factors with the new evidence and correct legal standard in mind. That standard required the Court to give deference to Plaintiff's choice of forum and put a heavy burden on Defendants to make a clear showing of facts that "establish such oppression and vexation … as to be out of proportion to Plaintiff's convenience" and that favor dismissal strongly enough to justify the use of this "exceptional tool." *Dole Food*, 303 F.3d at 1118; *Ravelo Monegro*, 211 F.3d at 514; *Cheng*, 708 F.2d at 1406.

**D.1.**     <u>The Court failed to give *any* deference to Plaintiff's choice of forum</u>

Although a foreign plaintiff's choice of forum may be given less deference than a domestic plaintiff's, it is still entitled to deference. *Ravelo Monegro*, 211 F.3d at 514 ("[L]ess deference is not the same thing as no deference"). While the Court acknowledged this principle, it proceeded with an analysis of the private and public interest factors without giving Ms. Bundy's choice of forum *any* deference.

The Complaint focuses on infringements in the U.S. by California residents in violation of U.S. laws. These U.S. infringements constitute the bulk of Defendants' worldwide misconduct. As such, it does not seem reasonable to conclude, as the Court did here, that California has but "little connection to the case." [Order, p.10.]

It is well-settled that an action brought by a foreign plaintiff should not be dismissed for *forum non conveniens* when the domestic forum has a "substantial

a new action.'"). Likewise, the eventual dismissal of Plaintiff's U.S. copyright claims by a U.K. court, which is virtually guaranteed, will cancel out any tolling during the pendency of that U.K. action. So, by the time a U.K. ruling can realistically be expected, the statute of limitations on Plaintiff's U.S. claims will likely have run, thus effectively barring her from all relief. While this is certainly a speedy resolution of Ms. Bundy's claims, it can hardly be considered a just one.

relation" or "strong connection" to the action and the plaintiff is not just forum shopping. *See Carijano*, 643 F.3d at 1229; *Ravelo Monegro*, 211 F.3d at 514. As both *Ravelo Monegro*[7] and *Carijano*[8] illustrate, a case can have a substantial relation to the action even where the Plaintiffs are foreigners and all alleged misconduct occurred elsewhere. Here, Plaintiff's choice of the Central District of California is even more substantially related to the action. <u>Not only are all Defendants U.S. entities that reside and do business in California, Plaintiff's two main claims for relief involve misconduct on U.S. soil, specifically in California, in violation of U.S. laws, while her other two claims are for infringing conduct overseas resulting from decisions made in California, even in this district.</u> Like the plaintiffs in *Carijano*, Ms. Bundy "did not strategically choose a random or only tangentially relevant forum"; she sued Defendants in their home forum. *Carijano*, 643 F.3d at 1229. And, as in *Carijano*, all her claims are "based on decisions made in and policies emerging from [Defendants'] corporate headquarters in Los Angeles." *Id.*

Also unfounded was the Court's suggestion that Ms. Bundy brought suit in the U.S. for an improper purpose,[9] when it is clear that she simply sued the Defendants in the only forum where they were all subject to personal jurisdiction. *See id.* ("Concerns about forum shopping, while appropriately considered in the *forum non conveniens* analysis, are muted in a case such as this where Plaintiff's chosen forum is both the defendants' home jurisdiction, and a forum with a strong

---

[7] *Ravelo Monegro* involved a suit filed in California by 13 baseball players from the Dominican Republic against the San Francisco Giants and its Latin America coach and Minor League Coordinator. Although all plaintiffs resided overseas and all alleged misconduct occurred overseas, the Court still reversed the dismissal of the action for *forum non conveniens*, finding that California had a "substantial relation to the action" because the players' contracts provided for a potential transfer to a U.S. based team and such a transfer was their common goal.

[8] Similarly, in *Carijano*, the Court reversed a dismissal for *forum non conveniens* of an action brought in California by 25 Peruvian indigenous people and a U.S. non-profit against Occidental Petroleum Corporation, a U.S. corporation, for pollution in the Peruvian rainforest.

[9] *See* Order, Dkt. 27, p. 6-7: "Though the scope of potential relief available in a U.K. court may not be what Bundy envisioned when she filed her claim in the United States district court…"

connection to the subject matter of the case."). Since Ms. Bundy had legitimate reasons for filing the action in this district, her forum choice was entitled to substantial deference. *Id. See also, e.g., Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155-56 (2d Cir. 2005) (finding that "substantial deference" is due when a foreign plaintiff sues a defendant in his home forum). The Court's failure to give Plaintiff's choice any weight at all was an abuse of discretion.

**D.2.**   **The Public Interest Factors overwhelmingly weigh against dismissal**

In its further analysis, the Court first concentrated on the public interest factors and considered (1) the local interests of the lawsuit, (2) the court's familiarity with governing law, (3) the burden of this suit on local courts and juries, (4) court congestion, and (5) the costs of resolving a dispute unrelated to this forum. [Order, Dkt. 27, p. 8.] The Court held that the first four factors favored dismissal and found the fifth to be neutral. However, when viewed under the correct legal standard, all factors except for court congestion[10] weigh *against* dismissal. Therefore, the Court's conclusion that, on balance, "the public interest factors favor dismissal" cannot stand.

*(1)*   ***California's interest in the action weighs against dismissal***

Citing *Carijano*, the Court found that there is a split of authority in this circuit as to what can be considered in evaluating this factor; whether the Court can compare state interests or whether it should "ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." [Order,

---

[10] Plaintiff apologizes for the error and agrees that, based on the statistics in the record, trial appears to be speedier in the U.K. than in this district. However, other factors than court congestion play into the equation, such as England's stricter discovery rules, the absence of a jury, motion practice, etc. Since such differences make comparing docket congestion a difficult exercise, this factor can never be a main consideration. *See, e.g., Ellis v. AAR Parts Trading, Inc.*, 357 Ill. App. 3d 723, 748 (Ill. App. Ct. 2005) "[t]he court congestion factor, by itself, is relatively insignificant … and is not sufficient to justify transfer of venue when none of the other relevant factors weigh strongly in favor of transfer."; *Miller v. Calotychos*, 03 Civ. 4273, at *23 (S.D.N.Y. Jan. 29, 2004) ("The Court is not prepared to make subjective or conclusory comparative assessments of docket congestion here as opposed to London, or of the relative speed with which the matter may be resolved in either venue. Suffice it to say that, with the parties' cooperation and good will, the Court can schedule a trial on the merits within a reasonable period following the completion of all discovery or rulings on any dispositive motions.").

1  Dkt. 27, p. 9.] The Court took the former approach, although most recent opinions
2  generally adopt the latter. *See, e.g., City of Almaty*, No. 15-56627 at *5 (9th Cir.
3  2017); *Neuralstem v. Reneuron,* 365 F. App'x 770, 772 (9th Cir. 2010); *Boston*
4  *Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009); *Tuazon v. R.J.*
5  *Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006). Regardless of the
6  approach, the Court erred in finding that this factor *favors* dismissal.

7  This Court recognized that California citizens have an interest in the sale and
8  consumption of copyright-infringing products in their forum. [Order, Dkt. 27, p. 9.]
9  It is also settled that California has a "significant interest" in providing a forum for
10  those harmed by the actions of its corporate citizens. *Carijano*, 643 F.3d at 1232-
11  1233. Here, all Defendants have their principal place of business in California and
12  the Complaint alleges misconduct in California that causes injury both here and
13  abroad. As such, there can be no dispute that California has a significant interest in
14  this case, separate from or in addition to any interest that an English court may have.

15  *Carijano* instructs that when both forums have a significant interest in the
16  litigation, "under the former view, this factor would tip against dismissal, while
17  under the latter it is neutral." *Id.* at 1233, n.3. In other words, in no event would this
18  factor *favor* dismissal for *forum non conveniens*, much less to a degree that would
19  justify the use of this exceptional tool.

20  **(2)** **_The need to apply U.S. law on the main claims and defenses weighs_**
21  **_against dismissal_**

22  Finding that English and German law govern some of the issues, the Court
23  concluded that this factor "heavily favors dismissals." [Order, Dkt. 27, p. 10.]
24  Entirely missing from the Court's analysis, however, is the other side of the ledger
25  – (1) the significant questions of U.S. copyright law that an English court would face
26  were it to exercise jurisdiction over Plaintiff's U.S. claims (which it will not) and (2)
27  a U.K. court's equal unfamiliarity with German law. The Court's failure to
28  acknowledge that Plaintiff's main claims require the application of U.S. copyright

1    laws and that a U.K. court is certainly not better equipped than a U.S. court to deal

2    with those or with any questions of German law was an abuse of discretion. *See also*

3    *Beijing iQIYI Sci. & Tech. Co. v. iTalk Glob. Commc'ns, Inc.*, CIVIL No. 6-19-CV-

4    00272-ADA, at *25 (W.D. Tex. Dec. 17, 2019) ("The public interest weighs heavily

5    in favor of adjudicating U.S. intellectual property disputes in domestic forums.").

6         Further adding to the need to reconsider this factor is the disproportionate

7    weight given to "potential issues" regarding Plaintiff's copyright ownership and to

8    the alleged complexity of the English law governing those issues [Order, Dkt. 27, p.

9    10]. While new evidence shows that these so-called issues were nothing more than

10    a smokescreen, the Court also erred in finding that *Argus Media Ltd. v. Tradition*

11    *Financial Services Inc.*, 09 Civ. 7966 (HB) (S.D.N.Y. Dec. 29, 2009) is inapposite

12    here. Its incorrect reading of *Argus* seems to stem from the same error that guided

13    its misinterpretation of *Lucasfilm* — a failure to distinguish between a work and a

14    copyright. As in *Lucasfilm* and here, *Argus* involved allegations of infringement of

15    the U.S. copyright in a U.K. work.[11] *Argus* did not hold that English law was not

16    applicable; it held that the plaintiff's claims arose under U.S. copyright law and that

17    whatever issues of foreign law that it needed to address to resolve those U.S. claims

18    (such as ownership of the copyright under U.K. law) were not complex.

19         While this Court cited *Piper Aircraft* for the position that "[m]any *forum non*

20    *conveniens* decisions have held that the need to apply foreign law favors dismissal,"

21    it seems to have missed the nuance that "this factor alone is not sufficient to warrant

22    dismissal." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 n.29 (1981). *See also*

23    *Tuazon*, 433 F.3d at 1182 ("This fact alone […] is not determinative."); *Argus*, 09

24    Civ. 7966 (HB), at *6 n.3 ("[W]hile the fact that the parties agreed to apply English

25    law […] may weigh in favor of dismissal to some degree, it does not dictate that

26

27    _____

      [11] "Although Defendants attempt to distinguish the *Lucasfilm* case by once

28    again casting this case as one involving solely UK facts and UK law, the Court
      cannot overlook the Plaintiffs having framed this case as one that also involves
      United States conduct and U.S. copyright law." *Argus*, 09 Civ. 7966 (HB), at *7..

result."). Given this nuance, the Court overstated the weight of this factor in its analysis, especially since the foreign law issues are clearly peripheral to the parties' claims and defenses governed by U.S. law. Because, as in *Argus*, U.S. law dominates those, this factor should have weighed *against* dismissal.

*(3)* ***The remaining factors relating to the burdens and cost of resolving actions "unrelated" to this forum weigh against dismissal***

Given California's significant interest in this action and its obvious connection with this district, it was an abuse of discretion for this Court to hold that "the need to impanel a California jury with little connection to this case" favors dismissal. This Court recognizes that California citizens have an interest in the sale and consumption of copyright-infringing products in their forum. So, there is no reason to deny those citizens the opportunity to evaluate the conduct of the local entities involved in that infringement. This factor as well as the fifth factor regarding the cost of resolving a dispute "unrelated to this forum" thus weigh against dismissal.

**D.3.     The Private Interest Factors also weigh against dismissal**

Next, the Court considered the following private interest factors: (1) the residence of the parties and witnesses, (2) the forum's convenience to the litigants, (3) access to physical evidence and other sources of proof, (4) whether unwilling witnesses can be compelled to testify, (5) the cost of bringing witnesses to trial, (6) the enforceability of the judgment, and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive." [Order, Dkt. 27, p. 12.]. In viewing these factors under an incorrect legal standard, the Court arrived at the erroneous outcome that, on balance, "the private factors favor dismissal." [Order, p. 16.]

*(1)* ***The court correctly held that the factors whether unwilling witnesses can be compelled to testify and the cost of bringing witnesses to trial weigh against dismissal***

Because Defendants failed to identify any U.K. witnesses unwilling to testify at trial in the U.S., the Court correctly found that the fourth factor weighs against dismissal.

---

For the same reason, the court also found the fifth factor to weigh against dismissal. Of course, that fifth factor pertains to costs for all witnesses, not merely unwilling U.K. ones. So, in holding that the cost of bringing witnesses to trial weighs against dismissal, the Court appears to agree with Plaintiff that there will be more U.S. than U.K. witnesses whose testimony will be material at trial. While this is a correct assessment, it does make the Court's next finding – that the residence of parties and witnesses weighs *in favor* of dismissal – all the more surprising.

### (2)   *The court overemphasized the location of potential U.K. witnesses and ignored the U.S. residence of the Defendants and of actual witnesses*

While this Court held that "[its] focus should not rest on the number of witnesses or quantity of evidence in each locale" but that it "should [rather] evaluate the materiality and importance of the anticipated evidence and witnesses' testimony and then determine their accessibility and convenience to the forum" [Order, Dkt. 27, p. 12], it seems to have proceeded without doing so. The Court's entire focus in analyzing this factor was on the locale of *potential* witnesses in the U.K. relating to copyright ownership (most of whom will admittedly be found deceased), while it discounted the location of all four Defendants and of all *actual* witnesses with first-hand knowledge regarding Defendants' misconduct in the U.S. that is the crux of the Complaint.[12]

Prompted by Defendants, this Court identified as potential U.K. witnesses:

---

[12] Plaintiff is also puzzled by the Court's comment that "Bundy does not specify whether [John Silva and Joel Bennett] have knowledge of Defendants' alleged infringing conduct in each of the countries named in her complaint – England, Germany, and the U.S. – or just the U.S." [Order, Dkt. 27, p. 13, fn. 2.] On several occasions, Plaintiff alleged that the overseas infringements resulted from decisions made and licenses granted in California. [*see, e.g.,* Opp'n, Dkt. 24, 8:17-19, 19:24-26.] It is undisputed that Messrs. Silva and Bennett are the individuals making those decisions and granting those licenses. As such, Plaintiff believes it to be clear that she considers these witnesses to have material information regarding *all* Defendants' infringing conduct, stateside and abroad. Why their testimony is considered less important than that of Defendants' alleged U.K. witnesses is hard to grasp. As in *Carijano*, Plaintiff's claims (as well as Defendants' defenses) "turn not on the physical location of the injury but on the mental state of [Defendants'] managers who actually made the business decisions that allegedly resulted in the injury," an element which was found to weigh against dismissal. *Carijano*, 643 F.3d at 1230.

Plaintiff, Penguin's senior counsel Nicola Evans, Dorothy Sayers' successors-in-right, and some employees at a Live Nation subsidiary in London who are alleged to have information regarding Defendants' misconduct overseas [Order, Dkt. 27, p. 13.] To be clear, Plaintiff does not intend to call any of these alleged potential witnesses at trial; and it also seems highly unlikely that Defendants will.

First, material to the litigation is not what facts these people have personally witnessed, if any, but the physical evidence they may possess. Witness testimony is not the proper vehicle for obtaining that evidence.

Second, Defendants failed to explain, and it is particularly hard to see, how the testimony of any of these individuals would aid in their defense. As for Ms. Evans, her sworn declaration [Dkt. 24-30], supported by documentary evidence, directly contradicts Defendants' two main allegations: (a) that Penguin Books rather than Plaintiff may own the copyright in the Illustration, and (b) that the Illustration was published in the U.S. within 30 days of its U.K. publication.[13] Similarly, the Sayers declaration [De Bruyn Decl. ¶ 8, Ex. 1] also confirms what Plaintiff has argued all along – that Defendants are manufacturing controversy where there is none. In any event, this declaration resolves any doubt that Defendants managed to cast on Plaintiff's title. Further, as for the Live Nation employees, Plaintiff certainly does not consider their testimony material to *her* claims, and Defendants failed to show how it would be material to *theirs*. And, lastly, whatever testimony Plaintiff has to offer will likely not advance Defendants' position either.

Third, Defendants made no showing of any inconvenience in bringing these people to trial here, should their testimony be required after all. None of the so-called witnesses that are outside of Defendants' control were shown to be inaccessible to

---

[13] There is no dispute that the Illustration was published in the U.K. in November of 1949. That it was also published in the U.S. sometime in 1950 – per definition more than 30 days after its U.K. publication – does not affect the restoration of the copyright in it pursuant to the URAA, assuming *arguendo* that it had been ejected in the U.S. public domain to begin with for failure to comply with any formalities. There would be no need for Ms. Evans' testimony about a later U.S. publication since there is documentary evidence on this fact and it is not contested.

this forum and their cooperation so far indicates quite the opposite. In addition, the parties agree "that remote testimony via videoconferencing is equivalent to live testimony." [Joint Report, Dkt. 21, p. 20:8-11]. The physical location of witnesses should therefore only be of minimal importance.

In *Boston Telecomms.* the Court of Appeals ruled that "the district court abused its discretion in holding that this private interest factor was neutral when [the defendant] provided very little information that would have enabled the district court to understand why various witnesses were material to his defense." *Boston Telecomms.*, 588 F.3d at 1210. In this case, where Defendants similarly neglected to explain how these U.K. residents were material to their defense, the Court did not just find this factor neutral, it even found that it *favored* dismissal. This was an abuse of discretion. Moreover, this factor also required the Court to consider the U.S. location of *actual* undisputed witnesses with material information about Defendants' misconduct in the U.S., such as Messrs. Silva and Bennett, as well as the U.S. residence of all four Defendants. Defendants' California residence alone should have strongly weighed against dismissal. *See, e.g., Carijano* at 1229 (9th Cir. 2011) (quoting *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991) ("In this unusual situation, where the forum resident seeks dismissal, this fact should weigh strongly against dismissal."). Here, it did not. Therefore, Plaintiff respectfully requests this Court to re-evaluate this first factor under the legal standard set out above and find that it weighs against dismissal.

*(3)* ***The court failed to properly balance the access-to-evidence factor***

Focusing almost exclusively on "potential documents from sources located in the U.K. that relate to ownership of the Illustration" [Order, Dkt. 27, p. 14], the Court held that the access-to-evidence factor also favored dismissal. However, other than vague assertions, Defendants did not provide any evidence to establish that there are such documents in the U.K., and the only evidence in the record cuts the other way: Plaintiff provided evidence that the entire Dorothy Sayers archives are

now located in Illinois [Dkt. 24-4] and that Penguin U.K. does not possess any documents either that support Defendants' claims [*see* Evans Declaration, Dkt. 24-30]. Further, as for any documents held by Plaintiff or by Live Nation's so-called "U.K. employees" no reasonable argument can be made that these would be difficult to compel or would require reliance on The Hague Convention. The Court should be mindful that "this factor does not turn on the location of the sources of proof, but relative ease of access to the sources." *Beijing*, CIVIL No. 6-19-CV-00272-ADA, at *19. Plaintiff is convinced that, had Defendants made even the slightest attempt to obtain the documents they claim to need, they would have found no difficulties at all. In *Neelon v. Bharti*, 596 F. App'x 532, 6 (9th Cir. 2014), the Court of Appeals held that "[by] disregarding the only record evidence on the location of documentary evidence and making a factual finding regarding the location of the documentary evidence not supported by the record, the district court abused its discretion in weighing the evidence." This case was no different.

The need to re-evaluate this factor is even more pressing now that Plaintiff has presented new evidence that conclusively settles the issue of copyright ownership. No longer can it be argued that the more material and more important evidence would be in England, much less that it would be difficult, time-consuming, or expensive for Defendants to obtain. With the ownership issue resolved, it is appropriate to steer the focus back to the evidence of Defendants' infringing conduct in the U.S. and abroad. That some of that evidence may (also) be in the hands of Defendants' U.K. licensees can hardly be considered a factor that favors dismissal. Most of it should already be in the U.S. in the form of contracts, sales reports, and other accounting documents that Defendants regularly receive from their worldwide licensees in the normal course of business. And to the extent that it is not, Defendants cannot credibly contend that obtaining it from their U.K. partners poses any real burden at all. *See Neuralstem v. Reneuron*, 365 F. App'x 770, 772 (9th Cir. 2010) (holding that the district court erred in not considering "the fact that most if not all

of the documentary evidence located in England is within [the defendant's] control,
and thus can be brought to court wherever the forum").

Therefore, reconsideration of this factor should also result in a finding that
it weighs *against* dismissal. *See also Tuazon*, 433 F.3d at 1181 ("Any court, whether
in the United States or in the [foreign forum], will necessarily face some difficulty
in securing evidence from abroad. The administrative challenges faced by the
[domestic forum] are not so great as to justify dismissal. Thus, the third and fourth
factors [concerning the location and availability of evidence and witnesses] weigh
in favor of [the domestic forum]."

### *(4)* ***The court erred that the enforceability factor favors dismissal***

Starting from the premise that "California generally enforces foreign
judgments" the Court also found that "the sixth factor favors dismissal." While it
noted Plaintiff's concern that California will not recognize injunctive relief orders
issued abroad, it felt justified to disregard that concern because (a) Defendants
contended that there is no more infringing conduct to be enjoined, and because (b)
"neither party cited authority in which an English injunction was sought to be
enforced in California." The Court's finding cannot stand. First, compared to a U.S.
judgment, enforcing a foreign judgment in the U.S. always involves extra steps
[Opp'n, Dkt. 24, 21:17-26.] So, vis-à-vis U.S. defendants, this factor can never *favor*
dismissal; it can at best be neutral. Second, new evidence shows that Defendants'
claim that all misconduct has ceased, is patently false. As such, Plaintiff's concern
can no longer be discounted and heavily weighs against dismissal. Third, here also,
the Court improperly flipped the burden onto Plaintiff. It was Defendants' burden to
demonstrate that an injunction can be enforced in California, especially since the
plain language of the California Civil Procedure Code makes clear that it cannot.
Both Chapter 2's header and section 1715(a) specify that recognition is limited to
foreign *money* judgments. If Defendants wished to dispute this, Defendants should
have cited authority in which an injunction ordered by an English court was enforced

in California. They did not. In any event, and regardless of whether an injunction is required, enforcement of a U.K. judgment against U.S. Defendants that do not have any assets in the U.K. should always weigh against dismissal.

(5)  ***The convenience-to-litigants factor clearly favors California since all four Defendant corporations reside in California***

Although all four Defendants have substantial ties to California and Plaintiff's chosen forum is presumed convenient to her, the Court placed significant emphasis on the presence of so-called Live Nation employees in England to find this factor neutral. However, the Court erred in considering these alleged witnesses under *this* factor, which does not concern itself with third-party-witness-convenience.[14]

As explained above, any U.K. subsidiaries of Live Nation Entertainment, Inc. that are allegedly involved in infringing Plaintiff's copyrights overseas are not parties to this action; they are merely sublicensees of Defendants Live Nation Merchandise LLC and/or Merch Traffic LLC, the American entities that are Nirvana's main licensees. Because such U.K. subsidiaries are not litigants here, the location of *their* employees is irrelevant when evaluating the convenience of the forum to the litigants. If the inquiry had been properly limited to litigant-convenience, this factor should have weighed against dismissal.

(6)  ***The court failed to consider "all other practical problems or other facts that contribute to an efficient resolution," which weigh against dismissal***

Lastly, the Court also found this seventh factor to be neutral because "neither party presents any persuasive or compelling arguments regarding the enforceability of the judgment factor." [Order, Dkt. 27, p. 16.] Enforceability of the judgment was already addressed as the sixth factor, and, with respect to this seventh factor, Plaintiff did, in fact, identify two problems that this Court failed to consider and that heavily

---

[14] *See, e.g., Carijano*, 643 F.3d at 1230 (holding that under this factor the court should have considered that local litigation would have saved witnesses affiliated with the Californian defendant and one of the Californian plaintiffs the time and expense of traveling to a foreign forum.)

weigh against dismissal.

First, Defendants' activities involve a vast network of (sub)licensees that also manufactured and sold Infringing Products in the U.S. and that Plaintiff may want to join. [Opp'n, Dkt. 24, 11:4-9.] In fact, new evidence shows that Infringing Products are still being sold by U.S. companies under Defendants' authority and to their benefit [*see* section A.2.] Those parties are not subject to personal jurisdiction in the U.K., and it is highly unlikely that they will voluntarily appear in a court thousands of miles away, either as a party or as a witness. In *Piper*, the Court justified dismissal because possible third-party defendants could not be made to appear in a U.S. forum. Here, the opposite problem exists: if this suit is dismissed in favor of an English forum, these U.S. parties cannot be compelled to appear in that forum.

Second, the Court also failed to address the financial barriers that Plaintiff would face if she had to pursue this action in England [Opp'n, Dkt. 24, 21:27-23:7.] Plaintiff does not have the deep pockets to hire counsel wherever she needs around the globe. Whereas Defendants can afford a 25-page "expert" opinion on U.K. law on a motion to dismiss, Plaintiff cannot even afford to retain an attorney at an hourly rate to represent her in a U.K. court regarding the merits of the case, much less could she afford to hire U.S. experts to educate a U.K. court on the technical issues of U.S. law that an English court would need to decide. In fact, Defendants already took issue with the one legal opinion that Plaintiff could afford – that of its chosen U.S. counsel. The fact that Defendants submitted a total of 45 pages of paid-for testimony on U.K. and German law on the substance of this case but shamelessly object to a 23-page declaration by Plaintiff's counsel that touched, *inter alia*, on the intricacies of U.S. and foreign copyright law that they themselves raised, speaks volumes as to their attitude. The Court cannot be blind to the obvious economic imbalance between the parties and the resulting situation, which makes trial in the U.S. affordable for everyone but cost-prohibitive for Plaintiff if she had to proceed in England. The Court abused its discretion in ignoring these concerns. Viewed under the correct

legal standard, these (undisputed) practical and financial problems that Plaintiff raised in her opposition should also be found to weigh against dismissal.

## IV.    **CONCLUSION**

The Court's dismissal of this action for *forum non conveniens* is contrary to well-settled law. The court misunderstood the U.K. Supreme Court's ruling in *Lucasfilm*, which contributed to an erroneous finding that England is an adequate alternative forum for Plaintiff's claims. Defendants' failure to establish that "the *entire case and all parties* can come within the jurisdiction" of an English court (*Dole Food*, 303 F.3d at 1118), required this Court to deny the motion as a matter of law. The Court also made several errors in weighing the private and public interest factors and misapprehended the identity of the party bearing the burden in a *forum non conveniens* inquiry. None of the factors clearly favors dismissal, certainly not strongly enough to overcome the deference owed to Plaintiff's choice of forum. Newly discovered evidence only further underscores this point. If the Court had applied the correct standard, it would have reached the same conclusion. "[A] Plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant 'as to be out of proportion to plaintiff's convenience.'" *Tuazon*, 433 F.3d at 1180 (quoting *Ravelo Monegro*, 211 F.3d at 514). Defendants did not shoulder their burden of showing oppressive and vexatious inconvenience in California litigation. Therefore, Plaintiff respectfully requests the Court to alter its judgment, to deny Defendants' motion to dismiss, and to exercise jurisdiction over all of Plaintiff's claims, including her foreign copyright claims.

Respectfully submitted,

DATED: December 1, 2021        MODO LAW, P.C.

By:    */s/ Inge De Bruyn*

Inge De Bruyn

*Attorney for Plaintiff, Jocelyn Susan Bundy*